**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| HARBOUR ANTIBODIES BV, HARBOUR ANTIBODIES HCAB BV, ERASMUS UNIVERSITY MEDICAL CENTER ROTTERDAM and DR. ROGER KINGDON CRAIG, )<br><br>Plaintiffs, )<br><br>v. )<br><br>TENEOBIO, INC. and AMGEN INC., )<br><br>Defendants. )<br>TENEOBIO, INC. and AMGEN INC., )<br><br>Counterclaim-Plaintiffs, )<br><br>v. )<br><br>HARBOUR ANTIBODIES BV, HARBOUR ANTIBODIES HCAB BV, ERASMUS UNIVERSITY MEDICAL CENTER ROTTERDAM, DR. ROGER KINGDON CRAIG, and HBM HOLDINGS LTD. )<br><br>Counterclaim-Defendants. ) | C.A. No. 21-1807 (MN)<br><br>**JURY TRIAL DEMANDED**<br><br>**PUBLIC VERSION** |

**[PROPOSED] PRETRIAL ORDER**

**TABLE OF CONTENTS**

Page

I.    NATURE OF THE CASE ................................................................................................. 3

II.   JURISDICTION ............................................................................................................ 7

III.  STATEMENT OF UNCONTESTED FACTS ..................................................................... 7

IV.   STATEMENT OF CONTESTED FACTS .......................................................................... 7

V.    ISSUES OF LAW .......................................................................................................... 7

VI.   TRIAL EXHIBIT LIST ................................................................................................... 7

VII.  WITNESSES ............................................................................................................... 10

      A.    DEPOSITION DESIGNATIONS ......................................................................... 12

      B.    IMPEACHMENT WITH PRIOR INCONSISTENT TESTIMONY ................... 14

      C.    OBJECTIONS TO EXPERT TESTIMONY ........................................................ 14

VIII. PLAINTIFFS' STATEMENT OF PROOF AND DAMAGES ........................................... 14

IX.   DEFENDANTS' STATEMENT OF PROOF AND DAMAGES ................................... 17

      A.    THE ASSERTED PATENTS ARE INVALID ................................................... 18

            1.    Anticipation ........................................................................................... 19

            2.    Obviousness .......................................................................................... 19

            3.    Enablement ............................................................................................ 19

            4.    Written Description ............................................................................... 19

            5.    Indefiniteness ........................................................................................ 19

      B.    THE '420 PATENT IS UNENFORCEABLE ...................................................... 19

      C.    DEFENDANTS DO NOT INFRINGE THE ASSERTED PATENTS ................ 20

      D.    AMGEN'S COUNTERCLAIMS ........................................................................ 21

      E.    REMEDIES ......................................................................................................... 22

            1.    Reasonable Royalty ............................................................................... 22

            2.    Enhanced Damages ............................................................................... 22

3.      Remedies for Amgen's Counterclaims ....................................................... 22

4.      Pre-Judgment and Post-Judgment Interest................................................. 23

5.      Exceptional Case........................................................................................ 23

6.      Attorneys' Fees, Costs, and Litigation Expenses...................................... 23

X.      AMENDMENTS OF THE PLEADINGS ........................................................................ 23

XI.     SETTLEMENTS.............................................................................................................. 24

XII.    MOTIONS IN LIMINE ................................................................................................... 24

XIII.   PRE-TRIAL DISCLOSURE SCHEDULE...................................................................... 24

A.      EXHIBITS AND DEMONSTRATIVES FOR OPENING STATEMENTS ....... 24

B.      NOTICE OF WITNESSES, EXHIBITS, AND DEMONSTRATIVES............... 25

1.      List of Witnesses........................................................................................ 25

2.      Prior Deposition Testimony....................................................................... 26

3.      Trial Exhibits For Direct Examination ...................................................... 29

4.      Demonstrative Exhibits.............................................................................. 30

5.      Witness Binders ......................................................................................... 33

6.      Cross Examination ..................................................................................... 34

C.      PARTY OPPONENT STATEMENTS............................................................... 35

D.      OBJECTIONS TO EXPERT TESTIMONY ...................................................... 35

E.      EXHIBITS AND DEMONSTRATIVES FOR CLOSING ARGUMENTS ........ 35

F.      NOTICE OF INTENT TO REST ...................................................................... 35

G.      FAILURE TO COMPLY.................................................................................... 36

XIV.    LENGTH OF TRIAL....................................................................................................... 36

XV.     OTHER MATTERS......................................................................................................... 37

A.      ORDER OF PROOF.......................................................................................... 37

B.      CONFIDENTIAL INFORMATION ................................................................. 38

C.   JUDGMENT AS A MATTER OF LAW ............................................................... 38

D.   AMGEN'S DAMAGES DEMAND FOR ITS COUNTERCLAIMS .................. 39

E.   PLAINTIFFS' USE OF AFFIRMATIVE DEPOSITION DESIGNATIONS
FROM PLAINTIFFS' WITNESSES ...................................................................... 41

**LIST OF EXHIBITS**

| Exhibit | Title |
|---|---|
| 1 | Joint Statement of Uncontested Facts |
| 2 | Plaintiffs' Statement of Contested Facts |
| 3 | Defendants' Statement of Contested Facts |
| 4 | Plaintiffs' Statement of Issues of Law |
| 5 | Defendants' Statement of Issues of Law |
| 6 | Joint Trial Exhibit List |
| 7 | Plaintiffs' Trial Exhibit List |
| 8 | Defendants' Trial Exhibit List |
| 9 | Plaintiffs' Witness List |
| 10 | Defendants' Witness List |
| 11 | Plaintiffs' Deposition Designations |
| 12 | Defendants' Deposition Designations |
| 13A | Plaintiffs' Motion *in Limine* No. 1 (including Defendants' Opposition and Plaintiffs' Reply) |
| 13B | Plaintiffs' Motion *in Limine* No. 2 (including Defendants' Opposition and Plaintiffs' Reply) |
| 13C | Plaintiffs' Motion *in Limine* No. 3 (including Defendants' Opposition and Plaintiffs' Reply) |
| 13D | Exhibits to Plaintiffs' Motions *in Limine*, Defendants' Oppositions, and Plaintiffs' Replies |
| 14B | Defendants' Motion *in Limine* No. 2 (including Plaintiffs' Opposition and Defendants' Reply)[1] |
| 14C | Defendants' Motion *in Limine* No. 3 (including Plaintiffs' Opposition and Defendants' Reply) |
| 14D | Exhibits to Defendants' Motions *in Limine*, Plaintiffs' Oppositions, and Defendants' Replies |

---

[1] The parties reached agreement on Defendants' Motion *In Limine* No. 1 (Exhibit 14A). *See* Section XII, *infra*. Accordingly, Exhibit 14(A) is not included with this filing.

On June 1, 2026, the Court will hold a pretrial conference pursuant to Federal Rule of Civil Procedure 16 in C.A. No. 21-1807-MN. *See* D.I. 336. Trial will begin on June 8, 2026. *Id.* The parties submit for the Court's approval this proposed Pretrial Order governing the trial pursuant to District of Delaware Local Rule 16.3 and the Court's Scheduling Order.

**Plaintiffs' Counsel:** Plaintiffs and Counter-Claim Defendants Harbour Antibodies BV, Harbour Antibodies HCAb BV, and Erasmus University Medical Center Rotterdam and Counter-Claim Defendant HBM Holdings Ltd. are represented by:

John M. Desmarais (admitted *pro hac vice*)
Tamir Packin (admitted *pro hac vice*)
Kyle G. Petrie (admitted *pro hac vice*)
Jordan N. Malz (admitted *pro hac vice*)
Michael E. Furrow (admitted *pro hac vice*)
Karl Mullen (admitted *pro hac vice*)
Jun Tong (admitted *pro hac vice*)
**DESMARAIS LLP**
230 Park Avenue
New York, NY 10169
Telephone: 212-351-3400
Facsimile: 212-351-3401

Adam D. Steinmetz (admitted *pro hac vice*)
**DESMARAIS LLP**
1899 Pennsylvania Avenue NW, Suite 400
Washington, D.C. 20006
Telephone: 202-451-4900
Facsimile: 202-451-4901

Maria Tartakovsky (admitted *pro hac vice*)
**DESMARAIS LLP**
101 California Street
San Francisco, CA 94111
Telephone: 415-573-1900
Facsimile: 415-573-1901

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Andrew M. Moshos (#6685)
Malisa C. Dang (#7187)
**POTTER ANDERSON & CORROON LLP**
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000

Plaintiff and Counter-Claim Defendant Dr. Roger Kingdon Craig is represented by:

Kathleen M. Williams (admitted *pro hac vice*)
**NUTTER MCCLENNAN & FISH LLP**
155 Seaport Boulevard
Boston, MA 02210
(617) 439-2294

Amir Naini (admitted *pro hac vice*)
**NAINI P.C.**
2632 Wilshire Blvd., Suite 268
Santa Monica, CA 90403
(310) 592-3030

Andrew Colin Mayo (#5207)
**ASHBY & GEDDES**
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19801
Tel: (302) 654-1888

**Defendants' Counsel:** Defendants and Counter-Claim Plaintiffs Teneobio, Inc. and Amgen Inc. are represented by:

| | |
|---|---|
| Nicholas Groombridge | Jeremy A. Tigan (#5239) |
| Eric Alan Stone | Megan E. Dellinger (#5739) |
| Peter Sandel | Cameron P. Clark (#6647) |
| Rebecca Fett | **MORRIS, NICHOLAS, ARSHT** |
| Naz E. Wehrli | **& TUNNELL LLP** |
| Stephen A. Maniscalco | 1021 North Market Street |
| Eliza P. O'Connor | P.O. Box 1347 |
| Chih-Wei Wu | Wilmington, DE 19899 |
| Jessica Zhao | Tel: (302) 658-9200 |

**GROOMBRIDGE, WU, BAUGHMAN**
    **& STONE LLP**
565 Fifth Avenue, Suite 2900
New York, NY 10017
(332) 269-0030

Philip S. May
Christopher M. Keller
**GROOMBRIDGE, WU, BAUGHMAN**
    **& STONE LLP**
801 17th Street NW, Suite 1050
Washington, DC 20006
(202) 505-5830

Joseph E. Lasher
J. Drew Diamond
Gwen Hochman Stewart
Steven Tang
Wendy A. Whiteford
**AMGEN INC.**
One Amgen Center Drive
Thousand Oaks, CA 91320-1799
(805) 447-1000

2

## I.    NATURE OF THE CASE

1.    This is a patent infringement lawsuit arising under the patent laws of the United States, Title 35, Section 271 *et seq*.

2.    Plaintiffs are Harbour Antibodies BV ("HBV"), Harbour Antibodies HCAb BV ("HBAB"), and Erasmus University Medical Center Rotterdam ("Erasmus") (collectively, "Harbour" or "Harbour Plaintiffs") and Dr. Roger Kingdon Craig ("Dr. Craig") (collectively with Harbour, "Plaintiffs").  Counter-Claim Defendants are the Plaintiffs and HBM Holdings Ltd. ("HBM").

3.    Defendants and Counter-Claim Plaintiffs are Teneobio, Inc. and Amgen Inc. ("Defendants").

4.    Plaintiffs allege that Defendants infringed claims 1, 4, 5, and 8 of United States Patent No. 9,346,877 (the "'877 Patent"), claims 1, 4, 5, and 8 of United States Patent No. 9,353,179 (the "'179 Patent"), claim 2 of U.S. Patent No. 10,906,970 (the "'970 Patent"), claims 2 and 3 of U.S. Patent No. 10,993,420 (the "'420 Patent), and claims 1, 4, and 8 of U.S. Patent Publication No. 2013/0344057 (the "'057 Publication") (collectively, the "Asserted Claims"). Plaintiffs allege that Defendants infringed the Asserted Claims under 35 U.S.C. §§ 271(a) and (g), literally and/or under the doctrine of equivalents, either alone or in conjunction with and through the direction and control of third parties.  Plaintiffs further allege that Defendants' infringement has been willful.  Plaintiffs seek damages to compensate them for Defendants' alleged acts of infringement in the form of a reasonable royalty.  With respect to the Asserted Claims of the '057 Publication, under 35 U.S.C. §154(d), Plaintiffs seek damages in the form of provisional rights covering Defendants' infringement from their knowledge of the '057 Publication through the issuance of the '877 Patent.  Plaintiffs also seek an accounting of damages from the last date of financial discovery provided by Defendants through at least to the date of judgment.  Plaintiffs

3

also seek enhanced damages against Defendants, including increased damages up to three times the amount of compensatory damages found.  Plaintiffs also seek both pre-verdict and post-verdict damages up to the time of judgment and the payment of a post-judgment ongoing enhanced reasonable royalty.  Plaintiffs also seek pre- and post-judgment interest and costs pursuant to 35 U.S.C. § 284 and Federal Rule of Civil Procedure 54 and Local Rule 54.1.  Plaintiffs also contend that this is an exceptional case that merits attorneys' fees pursuant to 35 U.S.C. § 285.  Plaintiffs also seek such other relief as the Court deems just and proper.

5.      Defendants deny all allegations of infringement of any of the Asserted Claims and contend that the Asserted Claims are invalid.  Defendants further contend that the '420 Patent is unenforceable due to inequitable conduct.  To the extent any Plaintiff is able to prove liability, Defendants dispute that Plaintiffs are entitled to the amount of damages they seek, including any enhanced damages, running royalty, or further accounting.  Defendant Amgen also contends that Plaintiff/Counterclaim-Defendant HBAB is liable for breach of contract, breach of warranty, and fraud in the inducement.  Defendant Amgen further contends that Plaintiffs/Counterclaim-Defendants HBM and/or HBV are liable for tortious interference.  Defendant Amgen seeks damages with respect to its counterclaims.  Defendants seek costs pursuant Federal Rule of Civil Procedure 54 and D. Del. L. Civ. R. 54.1.  Defendants further contend that this is an exceptional case pursuant to 35 U.S.C. § 285 and that Defendants are accordingly entitled to an award of attorneys' fees.  Plaintiffs deny all of Defendants' allegations above.

6.      On December 23, 2021, Plaintiffs filed a Complaint for patent infringement of the '877, '179, '970, and '420 Patents against Teneobio.  D.I. 1 ¶ 17.  On March 4, 2022, Teneobio filed its Answer to the Complaint.  D.I. 9.

7.      On February 16, 2023, this Action was stayed while Dr. Craig and Harbour litigated a dispute in the Rotterdam District Court of the Netherlands (the "Dutch Proceedings"). D.I. 121. The court in the Dutch Proceedings issued its decision on August 14, 2024. *See* D.I. 157. The stay was lifted on October 3, 2024 following the court's decision in the Dutch Proceedings. D.I. 159.

8.      On January 28, 2025, the Court granted Plaintiffs' motion for leave to file an amended complaint to add Amgen as a defendant. D.I. 212. On February 25, 2025, Defendants filed their Answer to Plaintiffs' First Amended Complaint and asserted counterclaims for breach of contract, breach of warranty, tortious interference, and fraud in the inducement against Harbour and HBM. D.I. 228. On March 25, 2025, Harbour, Dr. Craig, and HBM filed their Answer to Defendants' counterclaims. D.I. 248.

9.      On June 18, 2025, the Court granted Defendants' request for leave to file an amended answer and counterclaims. *See* Minute Entry (June 18, 2025). On June 18, 2025, Defendants filed their first Amended Answer and asserted a counterclaim of unenforceability of the '420 Patent for inequitable conduct. D.I. 332. On July 2, 2025, Harbour, HBM, and Dr. Craig filed their Answer to Defendants' counterclaim of unenforceability. D.I. 343; D.I. 344.

10.     The Parties submitted the Joint Claim Construction Brief on September 9, 2025. D.I. 366. A Markman Hearing was held on September 24, 2025, where the Court issued its opinion for six of the eight disputed terms. *See* D.I. 385 at 82:14–92:7.

11.     A supplemental Markman Hearing regarding definiteness for the remaining two disputed terms was held on November 10, 2025. *See* D.I. 411. The parties submitted supplemental briefing regarding these terms on November 17, 2025. *See* D.I. 405, 406. The Court has not yet ruled on these terms.

5

12.    On November 5, 2025, Dr. Craig filed an unopposed motion to correct inventorship of the '420 Patent.  D.I. 392.  Harbour filed a statement of non-opposition.  D.I. 398.  The Court granted the motion to correct inventorship orally in open court on November 10, 2025, *see* D.I. 411 at 129:25–130:7, and issued a corresponding written order on November 20, 2025, *see* D.I. 409.

13.    On December 23, 2025, Harbour and HBM moved for (1) Partial Summary Judgment On The Retroactive Aspects of Teneobio's License Defense (D.I. 425, 431, 437, 473, 474, 478, 519, 521); (2) Summary Judgment Of No Unenforceability (D.I. 432, 433, 437, 473, 477, 480, 519, 523); (3) Summary Judgment Of No Tortious Interference (D.I. 428, 430, 437, 473, 475, 479, 519, 522) and (4) Summary Judgment Of No Fraud In The Inducement (D.I. 435, 436, 437, 473, 476, 519).  Plaintiffs also moved to exclude expert testimony of (1) Dr. Stephen Meek (D.I. 413, 414, 470, 516); (2) Dr. Serge Muyldermans (D.I. 415, 416, 471, 517); and (3) Dr. Christopher Vellturo (D.I. 421, 424, 472, 518).  The Court has not yet ruled on these motions.

14.    Simultaneously, Defendants moved for (1) Summary Judgment That the Asserted Claims Are Invalid for Lack of Written Description and Enablement (D.I. 420, 426, 434, 481, 483, 486, 511, 512); (2) Summary Judgment That the Claims Against Amgen Are Barred by Amgen's License to Practice the Asserted Patents (D.I. 422, 427, 434, 481, 484, 487, 511, 513); and (3) Summary Judgment That the Accused Transactions Regarding Bispecific Antibodies Do Not Infringe the Claims (D.I. 423, 429, 434, 481, 485, 488, 511, 514).  Defendants also moved to exclude the expert testimony of (1) Dr. Marjorie Oettinger (D.I. 417, 434, 481, 511); (2) Dr. Kenneth Serwin (D.I. 418, 434, 481, 511); and (3) Mr. Joseph Mattal (D.I. 419, 434, 481, 511).  The Court has not yet ruled on these motions.

## II.    JURISDICTION

15.    The jurisdiction of the Court is not disputed and is based on 28 U.S.C. §§ 1331 and 1338(a).  Venue is not disputed in this case and is based on 28 U.S.C. § 1391(b) and (c) and 1400(b).

## III.    STATEMENT OF UNCONTESTED FACTS

16.    The parties' Joint Statement of Uncontested Facts is attached as **Exhibit 1**.

17.    Any party, with prior notice to all other parties, may read any or all of the uncontested facts to the jury, and will be charged for the time used to do so.

## IV.    STATEMENT OF CONTESTED FACTS

18.    Plaintiffs' Statement of Contested Facts is attached as **Exhibit 2.**

19.    Defendants' Statement of Contested Facts is attached as **Exhibit 3.**

20.    If any statement in a party's statement of issues of fact that remain to be litigated should properly be considered an issue of law, then such statement shall be considered as incorporated into the respective party's Statement of Issues of Law.

## V.    ISSUES OF LAW

21.    Plaintiffs' Statement of Issues of Law is attached as **Exhibit 4.**

22.    Defendants' Statement of Issues of Law is attached as **Exhibit 5.**

23.    If any statement in a party's statement of issues of law that remain to be litigated should properly be considered an issue of fact, then such statement shall be considered as incorporated into the respective party's Statement of Contested Facts.

## VI.    TRIAL EXHIBIT LIST

24.    The parties' Joint Trial Exhibit List is attached as **Exhibit 6**.  The parties' joint trial exhibits will be identified with JTX prefixes.

25.     Plaintiffs' Trial Exhibit List is attached as **Exhibit 7**.  Plaintiffs' trial exhibits will be identified with PTX prefixes.

26.     Defendants' Trial Exhibit List is attached as **Exhibit 8**.  Defendants' trial exhibits will be identified with DTX prefixes.

27.     The parties' respective keys to their exhibit objection codes are appended at the end of each exhibit list.

28.     The parties agree that an originally produced Bates-labeled document may be used in place of marked deposition exhibits when the deposition exhibit is a duplicate of the originally produced Bates-labeled document.  This includes, for example, when the same document was marked as an exhibit in multiple depositions.

29.     The inclusion of an exhibit on the parties' Joint Trial Exhibit List does not waive any objection that a party may have to the use or proffer of the exhibit by the other party.  The listing of a document on a party's exhibit list or the Joint Trial Exhibit List is not an admission that such document is relevant or admissible when offered by the opposing party for any purpose.

30.     A party's failure to introduce any exhibit appearing on its list shall not be commented on during trial by referencing that the exhibit appears on the exhibit list.

31.     Subject to the remaining provisions of this Order, no party may add to its exhibit list or use at trial an exhibit not present on its list absent stipulation or Order of the Court or for the limited purpose of impeachment.  The parties, however, may supplement these exhibit lists, as agreed between the parties or as permitted by the Court upon a showing of good cause.

32.     Each party reserves the right to use exhibits from another party's exhibit list, even if not separately listed on its own exhibit list, and each party reserves the right to raise objections to the use of the exhibit by the offering party, even if the exhibit is on the objecting party's exhibit

8

list.  All objections to such exhibits are preserved and the listing of a document on a party's exhibit list is not an admission that such document is relevant or admissible when offered by the opposing side.  Each party may object to the relevance of any evidence offered by another party, at the time such evidence is offered, in view of the specific context in which such evidence is offered.  Any exhibit, once admitted, may be used equally by any party subject to any limitations as to its admission into evidence.  The exhibit lists may include exhibits that may not necessarily be offered or introduced into evidence.

33.    **[Defendants' Proposal:** Certified translations of foreign-language documents may be offered into evidence if accompanied by a copy of the original foreign language document that was translated.  The parties will not object to the admissibility of such certified translations on the basis that they are translations if the translation was commissioned by one of the parties to the litigation or their counsel.]**[2]**

34.    Nothing herein shall be construed as a stipulation or admission that a document is entitled to any weight in deciding the merits of this case.  The parties agree that any description of a document on an exhibit list is provided for convenience only and shall not be used as an admission or otherwise as evidence regarding the listed document or any other listed document.

35.    Each party reserves the right to use exhibits not set forth in its exhibit list for purposes of impeachment.  Such exhibits used solely for impeachment and not included on an exhibit list may not be admitted into evidence absent good cause.

---

[2] **Plaintiffs' Position:** Plaintiffs object to the admission at the jury trial of any translation of a foreign-language document that is in dispute between the parties.  For example, the parties dispute that Defendants' translation of the court's decision in the Dutch Proceedings is accurate and on at least that basis should not be admitted or otherwise shown to the jury.

36.     Absent order of the Court, no exhibit will be admitted unless offered into evidence through a witness (fact or expert), including through deposition, who must at least be shown the exhibit.  Any party that has used an exhibit with the witness and wishes that exhibit to be admitted into evidence must formally move the exhibit into evidence, by exhibit number.

37.     Any trial exhibit that was produced in discovery by a party and that on its face (including by associated metadata) appears to have been authored by an employee, officer, or agent of the party that produced such document, will be deemed to be a true and correct copy of a document maintained in that producing party's files as of the date of the party's document collection under Federal Rule of Evidence 901.  No foundation need be laid for the authenticity of such documents at trial.  For clarity, this provision does not obviate the need to otherwise lay the proper foundation for admissibility of a document or of testimony about that document (e.g., relevance or personal knowledge of a fact witness).

38.     On or before 12:00 p.m. ET on the Friday before the first day of trial, i.e., June 5, 2026, the parties will deliver to the Courtroom Deputy a completed AO Form 187 exhibit list of the joint exhibits and each party's exhibit list and witness list that includes the witnesses for each party.

39.     On or before 12:00 p.m. ET on the Friday before the first day of trial, i.e., June 5, 2026, the parties will jointly provide to the Courtroom Deputy one link to access electronic copies of all marked trial exhibits labeled with JTX, DTX or PTX prefixes with exhibit numbers, and organized in a single folder.

## VII.   WITNESSES

40.     Plaintiffs' Witness List is attached as **Exhibit 9.**

41.     Defendants' Witness List is attached as **Exhibit 10.**

10

42. Absent good cause shown, any unlisted witness will be precluded from testifying. In the absence of an alternative agreement between the parties, fact witnesses will be sequestered pursuant to Federal Rule of Evidence 615. With respect to party representatives who shall not be excluded pursuant to Federal Rule of Evidence 615(a)(2), Plaintiffs shall collectively have one party representative, and Defendants shall collectively have one party representative. Fact witnesses so sequestered shall not review the transcripts of the trial testimony of other fact witnesses.

43. Pursuant to D. Del. LR 43.1, once direct examination of a witness is concluded and until cross examination of that witness is concluded, counsel offering the witness on direct examination shall not:

    a. Consult or confer with the witness regarding the substance of the witness's testimony already given or anticipated to be given, except for the purpose of conferring on whether to assert a privilege against testifying or on how to comply with a court order; or

    b. Suggest to the witness the manner in which any questions should be answered.

44. For avoidance of doubt, expert witnesses who may be called (or re-called) to testify are permitted to attend all trial proceedings and need not be sequestered. If an expert witness will be called to the stand to testify at a later time during the trial, once the expert witness has completed his or her cross-examination, that expert witness can speak with counsel before taking the stand to testify at a later time during the trial.

45. The parties agree that each fact witness will be called to testify only once, except in the case of (i) testimony that is required to be presented outside the presence of the jury; or (ii) rebuttal testimony that is not reasonably foreseeable to be needed during a party's case-in-

11

chief.  Thus, if both parties intend to elicit affirmative testimony from a witness, that witness will be called during the case-in-chief of the party with whom that witness is affiliated, and cross-examination shall be permitted to exceed the scope of direct to elicit adverse testimony from the witness, and Plaintiffs are permitted to hold their case-in-chief open to elicit fact testimony from witnesses during Defendants' case-in-chief.

46.    All witnesses deposed in this case testified by deposition in English.  The parties agree that all witnesses will testify at trial in English.

### A.    Deposition Designations

47.    Subject to the Court's permission, the parties have agreed to exchange deposition designations to be played at trial pursuant to the pre-trial disclosure schedule below in Section XIII.B.2.

48.    When a witness is called to testify by deposition at trial, the party calling the witness shall provide the Court with two copies of the transcript of the designations and counter-designations that will be read or played.  The parties will be charged for all time that elapses from the time the witness is called until the next witness is called, according to the proportions to be provided by the parties based on which side designated or counter-designated which testimony.

49.    Plaintiffs' Deposition Designations are attached as **Exhibit 11.**  Exhibit 11 includes Defendants' objections, counter-designations, and objections to counter-counter-designations; and Plaintiffs' objections to counter-designations and counter-counter-designations

50.    Defendants' Deposition Designations are attached as **Exhibit 12.**  Exhibit 12 includes Plaintiffs' objections, counter-designations, and objections to counter-counter-designations; and Defendants' objections to counter-designations and counter-counter-designations.

12

51.     The parties' respective keys to their objection codes are appended at the end of their deposition designations.

52.     For the avoidance of doubt, with respect to expert witnesses who served reports, no deposition designations or counter designations are allowed. This Pretrial Order contains the maximum universe of deposition designations, counter-designations, counter-counter-designations, and objections to admission of deposition testimony.  None of the foregoing shall be supplemented without approval of all parties or leave of the Court based on good cause shown.

53.     Unless objected to, a party's designation of a page and line from a particular transcript shall be automatically deemed to include any errata indicated for that page and line in the attached errata sheets.

54.     A party's decision not to introduce some or all of the testimony of a witness designated by that party herein shall not be commented upon by the other party at trial.

55.     Each party reserves the right to use testimony designated by any other party (whether as a designation, a counter-designation, or a counter-counter-designation), even if not separately identified by a party in its own deposition designation list.  The parties may use any testimony they have counter-designated in response to any affirmative designations introduced at trial by an opposing party.  Similarly, a party may designate testimony identified as affirmative testimony in this order as a counter-designation or counter-counter-designation.  The parties may offer some or all of the deposition set forth herein at trial.

56.     Should a witness designated by a party as testifying live at trial become unavailable for trial, a party may designate deposition testimony that it intends to play in lieu of the witness's appearance, upon reasonable notice.  The other side shall have an opportunity to object and offer

counter-designations, and the offering party shall have the opportunity to offer counter-counter designations, to which the other side may object.

### B.    Impeachment With Prior Inconsistent Testimony

57.    Pursuant to Federal Rule of Evidence 613, deposition and other testimony or statements not specifically identified on a party's deposition designation list or exhibit list may be used at trial only for the purpose of impeachment, if otherwise competent for such purpose.

### C.    Objections To Expert Testimony

58.    The parties have submitted motions *in limine* and *Daubert* motions that may affect the scope of expert testimony.  The Court will rule on any objections to expert testimony as beyond the scope of expert disclosures during the trial.  The time taken to argue and decide such objections in the presence of the jury will be charged to the losing party.

## VIII.  <u>PLAINTIFFS' STATEMENT OF PROOF AND DAMAGES</u>

59.    Plaintiffs respectfully submit the following statement of intended proofs.  Further details regarding these intended proofs have been explained at length in Plaintiffs' pleadings and discovery responses, including in their contentions and interrogatory responses (including supplemental responses), in expert reports, by experts at depositions, and by fact witnesses at depositions.  Plaintiffs reserve the right to revise, modify, supplement, or change their statement of intended proofs in response to subsequent Court rulings and/or to rebut Defendants' identification of issues of law and fact to be litigated and any alleged intended proof(s) or any new issues Defendants may raise, or for other good cause.  The following Statement of Intended Proofs is not exhaustive and Plaintiffs reserve the right to prove any matters identified in their pleadings and discovery responses, including in their contentions, expert reports, by experts at depositions, and by fact witnesses at depositions.

14

60.     Plaintiffs will rebut any assertions by Defendants regarding the intended proofs that Defendants have set forth herein.  Further details regarding Plaintiffs' intended rebuttals to Defendants' intended proofs are available in Harbour's Answer to Defendants' Amended Answer and Counterclaims (D.I. 343); and Plaintiffs' discovery responses, including their contentions, interrogatories (including any supplemental responses), and expert reports, as well as statements of fact witnesses and experts at depositions, as well as the intended proofs set forth in the parties' Statement of Uncontested Facts, Plaintiffs' Statement of Contested Issues of Fact That Remain to Be Litigated, and Plaintiffs' Statement of Contested Issues of Law That Remain to Be Litigated, submitted herewith.

61.     Plaintiffs will show at trial that Defendants infringe by performing or jointly performing, each and every step of the method in the Asserted Claims because Defendants, either alone or in conjunction with and through the direction and control of third-parties, use, sell, and/offer for sale the Accused Methods (as defined in Exhibit 2) in a manner that performs every step in the Asserted Claims, such that Defendants are liable for infringement, and that such infringement was willful.  Additionally, Plaintiffs will show at trial that Defendants infringe each and every step of the method in the Asserted Claims because Plaintiffs, either alone or in conjunction with and through the direction and control of third-parties, use, sell, and/or offer for sale heavy chain only antibodies and products that include such heavy chain only antibodies that are produced using the Accused Methods in a manner that performs every step in the Asserted Claims, such that Defendants are liable for infringement, and that such infringement was willful.

62.     At trial, pursuant to 35 U.S.C. § 284, Plaintiffs will prove damages in the form of a reasonable royalty as compensation for Defendants' infringement of the '877, '179, '970, and '420 Patents.  Additionally, at trial, pursuant to 35 U.S.C. § 154(d), Plaintiffs will prove damages

15

in the form of a reasonable royalty for the provisional rights period from Defendants knowledge of the '057 Publication through the issuance of the '877 Patent. Plaintiffs will ask the jury to award reasonable royalties up to the amount of ███████. Specifically, Plaintiffs contend that damages are available as follows:

63.    If Defendants are found to infringe the '877 Patent (regardless if they are also found to infringe the '179, '970, and '420 Patents) and damages for pre-issuance provisional rights are awarded, for infringement from Defendants' knowledge of the '057 Publication to December 15, 2022, Plaintiffs will ask the jury to award reasonable royalties of at least ████████ to compensate for Defendants' infringement of the '877 Patent in view of pre-issuance provisional rights.

64.    If Defendants are found to infringe the '877 Patent (and regardless if they are also found to infringe the '179, '970, and '420 Patents) and pre-issuance provisional rights are not awarded, for infringement from issuance of the '877 Patent to December 15, 2022, Plaintiffs will ask the jury to award reasonable royalties of at least ████████ to compensate for Defendants' infringement of the '877 Patent.

65.    If Defendants are found to infringe the '179 Patent but not the '877 Patent (and regardless if they are also found to infringe the '970 and '420 Patents), for infringement from issuance of the '179 Patent to December 15, 2022, Plaintiffs will ask the jury to award reasonable royalties of at least ███████ to compensate for Defendants' infringement of the '179 Patent.

66.    If Defendants are found to infringe the '970 Patent but not the '877 Patent or the '179 Patent (and regardless if they are also found to infringe the '420 Patent), for infringement from issuance of the '970 Patent to December 15, 2022, Plaintiffs will ask the jury to award

16

reasonable royalties of at least ████████ to compensate for Defendants' infringement of the '970 Patent.

67.     If Defendants are found to only infringe the '420 Patent, for infringement from issuance of the '420 Patent to December 15, 2022, Plaintiffs will ask the jury to award reasonable royalties of at least ████████ to compensate for Defendants' infringement of the '420 Patent.

68.     Plaintiffs further seek an award of pre-judgment and post-judgment interest; attorneys fees and costs under 35 U.S.C § 285 and/or Federal Rule of Civil Procedure 54; and interest, costs and other disbursements under 35 U.S.C. § 284 and/or Federal Rule of Civil Procedure 54. Plaintiffs further seek an accounting for any additional infringement that has taken place after the period for which Defendants have provided pertinent data and an ongoing royalty for that period through the date of trial and for any future infringement after the date of trial. Plaintiffs also will prove at trial that they are entitled to enhancement of damages, up to treble damages, including based on Defendants' willful infringement of the patents-in-suit. Plaintiffs further seek any other relief that this Court deems just and proper.

69.     Further details regarding Plaintiffs' intended proofs may be found in its pleadings, in its contentions and discovery responses, and its expert reports and both sides' expert depositions, including without limitation Plaintiffs' Witness List, the Statement of Undisputed Facts, Plaintiffs' Statement of Contested Facts, Plaintiffs' Statement of Issues of Law, the parties' Trial Exhibit Lists, and the parties' Deposition Designations.

## IX.    DEFENDANTS' STATEMENT OF PROOF AND DAMAGES

70.     Defendants respectfully submit the following statement of intended proofs. Further details regarding these intended proofs have been explained at length in Defendants' pleadings and discovery responses, including in their contentions and interrogatory responses (including supplemental responses), in expert reports, by experts at depositions, and by fact witnesses at

depositions.  Defendants reserve the right to revise, modify, supplement, or change their statement of intended proofs in response to subsequent Court rulings and/or to rebut Plaintiffs' identification of issues of law and fact to be litigated and any alleged intended proof(s) or any new issues Plaintiffs may raise, or for other good cause.  The following Statement of Intended Proofs is not exhaustive and Defendants reserve the right to prove any matters identified in their pleadings and discovery responses, including in their contentions, expert reports, by experts at depositions, and by fact witnesses at depositions.

71.    Defendants will rebut any assertions by Plaintiffs regarding the intended proofs that Plaintiffs have set forth herein in Section VIII.  Further details regarding Defendants' intended rebuttals to Plaintiffs' intended proofs are available in Defendants' Amended Answer and Counterclaims (D.I. 332); and Defendants' discovery responses, including their contentions, interrogatories (including any supplemental responses), and expert reports, as well as statements of experts at depositions, as well as the intended proofs set forth in the parties' Statement of Uncontested Facts, Defendants' Statement of Contested Issues of Fact That Remain to Be Litigated, and Defendants' Statement of Contested Issues of Law That Remain to Be Litigated, submitted herewith.

### A.    The Asserted Patents Are Invalid

72.    Defendants will prove that they are entitled to a judgment that the Asserted Claims of the Asserted Patents are invalid.

73.    Defendants will prove by clear and convincing evidence that the Asserted Claims of the Asserted Patents are invalid under 35 U.S.C. §§ 102, 103, and/or 112.[3]

---

[3] All of the Asserted Patents in this case are pre-AIA patents.  Accordingly, all references to 35 U.S.C. §§ 102 and 103 refer to the pre-AIA versions of those statutes.  *See* Leahy-Smith America Invents Act, § 3(n), Pub. L. No. 112-29, 125 Stat. 284, 293 (2011); 35 U.S.C. § 100 note.

### 1. Anticipation

74. Defendants will prove by clear and convincing evidence that the Asserted Claims of the '420 Patent are invalid as anticipated under 35 U.S.C. § 102.

### 2. Obviousness

75. Defendants will prove by clear and convincing evidence that the Asserted Claims of the Asserted Patents are invalid as obvious under 35 U.S.C. § 103.

76. To the extent Plaintiffs attempt to rely upon any secondary considerations of non-obviousness, and to the extent Plaintiffs come forward with evidence of any such secondary considerations and evidence purporting to show nexus, Defendants will introduce evidence to rebut Plaintiffs' assertions of both nexus and any such secondary considerations.

### 3. Enablement

77. Defendants will prove by clear and convincing evidence that the Asserted Claims of the Asserted Patents are invalid for failure to satisfy the enablement requirement of 35 U.S.C. § 112.

### 4. Written Description

78. Defendants will prove by clear and convincing evidence that the Asserted Claims of the Asserted Patents are invalid for failure to satisfy the written description requirement of 35 U.S.C. § 112.

### 5. Indefiniteness

79. Defendants will prove by clear and convincing evidence that the Asserted Claims of the '877, '179, and '970 Patents are invalid as indefinite under 35 U.S.C. § 112.

### B. The '420 Patent Is Unenforceable

80. Defendants will prove that they are entitled to a judgment that the '420 Patent is unenforceable due to inequitable conduct.

19

81.    Defendants will prove by clear and convincing evidence that the '420 Patent is unenforceable due to inequitable conduct for the intentional omission of Dr. Roger Kingdon Craig as an inventor of the '420 Patent during its prosecution.

**C.    Defendants Do Not Infringe the Asserted Patents**

82.    Plaintiffs bear the burden of establishing by a preponderance of the evidence that Defendants infringe any of the Asserted Claims of the Asserted Patents under 35 U.S.C. § 271(a). Defendants, to the extent necessary, will introduce evidence to rebut Plaintiffs' assertion that the Asserted Claims were infringed.

83.    Plaintiffs bear the burden of establishing by a preponderance of the evidence that Defendants infringe any of the Asserted Claims of the Asserted Patents under 35 U.S.C. § 271(g). Defendants, to the extent necessary, will introduce evidence to rebut Plaintiffs' assertion that the Asserted Claims were infringed.

84.    Defendants will thus establish that they are entitled to a judgment that the Asserted Claims of the Asserted Patents are not infringed.

85.    Plaintiffs bear the burden of establishing by a preponderance of the evidence that Teneobio directly infringed any of any of claims 1, 4, or 8 of the '057 Publication with actual notice of the '057 Publication before the issuance of the '877 Patent.  Defendants, to the extent necessary, will introduce evidence to rebut Plaintiffs' assertion that Teneobio directly infringed any of claims 1, 4, or 8 of the '057 Publication with actual notice of the '057 Publication before the issuance of the '877 Patent.

86.    Plaintiffs bear the burden of establishing by a preponderance of the evidence that any of claims 1, 4, or 8 of the '057 Publication are substantially identical to the Asserted Claims of the '877 Patent.  Defendants, to the extent necessary, will introduce evidence to rebut Plaintiffs'

20

assertion that any of claims 1, 4, or 8 of the '057 Publication are substantially identical to the Asserted Claims of the '877 Patent.

87.     Teneobio will thus establish that it is entitled to a judgment that Plaintiffs are not entitled to provisional rights under 35 U.S.C. § 154(d).

88.     To the extent any of the Asserted Claims of the Asserted Patents are found to be infringed and not invalid, Plaintiffs bear the burden of establishing by a preponderance of the evidence that any such infringement by Defendants was willful.  Defendants, to the extent necessary, will introduce evidence to rebut Plaintiffs' assertion that any Asserted Claim was infringed willfully.

89.     Defendants will thus establish that they are entitled to a judgment of no willful infringement.

### D.     Amgen's Counterclaims

90.     Amgen will prove by a preponderance of the evidence that HBAB breached the license agreement between Amgen and HBAB effective December 8, 2011 (the "HCAb License Agreement").

91.     Amgen will prove by a preponderance of the evidence that HBAB breached its representations and warranties in the HCAb License Agreement.

92.     Amgen will prove by a preponderance of the evidence that HBM and/or HBV tortiously interfered with Amgen's contractual rights under the HCAb License Agreement.

93.     Amgen will prove by clear and convincing evidence that HBAB fraudulently induced Amgen to enter into the HCAb License Agreement.

### E.    Remedies

#### 1.    Reasonable Royalty

94.    Defendants will show that Plaintiffs have failed to meet their burden to prove by a preponderance of the evidence that, to the extent the Asserted Claims are found to be infringed and not invalid, Plaintiffs are entitled to the amount of reasonable royalty damages they seek. Defendants will present evidence to rebut Plaintiffs' asserted reasonable royalty damages amount, royalty base, and royalty rate.

#### 2.    Enhanced Damages

95.    To the extent any of the Asserted Claims of the Asserted Patents are found to be infringed and not invalid, and any damages are awarded, and willful infringement is found, Defendants will show that Plaintiffs have failed to meet their burden to prove by a preponderance of the evidence that they are entitled to any enhanced damages under 35 U.S.C. § 284.

#### 3.    Remedies for Amgen's Counterclaims

96.    Amgen will prove by a preponderance of the evidence that Amgen is entitled to recover damages, including for the cost of Amgen's attorneys' fees incurred in the course of litigating this action, as a result of HBAB's breach of the HCAb License Agreement.

97.    Amgen will prove by a preponderance of the evidence that Amgen is entitled to recover damages, including for the cost of Amgen's attorneys' fees incurred in the course of litigating this action, as a result of HBAB's breach of its representations and warranties in the HCAb License Agreement.

98.    Amgen will prove by a preponderance of the evidence that Amgen is entitled to recover damages, including for the cost of Amgen's attorneys' fees incurred in the course of litigating this action, as a result of HBM's and/or HBV's tortious interference with Amgen's contractual rights under the HCAb License Agreement.

99.     Amgen will prove by a preponderance of the evidence that Amgen is entitled to recover damages, including for payments made under the HCAb License Agreement, the cost of Amgen's attorneys' fees incurred in the course of litigating this action, and any purported liability for Defendants' alleged infringement of the Asserted Patents as a result of HBAB's fraudulent inducement of Amgen to enter into the HCAb License Agreement.

### 4.     Pre-Judgment and Post-Judgment Interest

100.    To the extent any of the Asserted Claims of the Asserted Patents are found to be infringed and not invalid, and any damages are awarded, Defendants will show that Plaintiffs have failed to meet their burden to prove by a preponderance of the evidence that they are entitled to pre-judgment and post-judgment interest.

### 5.     Exceptional Case

101.    Defendants will show that Plaintiffs have failed to meet their burden to prove that the case is exceptional under 35 U.S.C. § 285 entitling Plaintiffs to attorneys' fees.

102.    Defendants will prove that this is an exceptional case under 35 U.S.C. § 285 entitling Defendants to attorneys' fees.

### 6.     Attorneys' Fees, Costs, and Litigation Expenses

103.    To the extent Defendants are the prevailing party at trial, Defendants will prove that Defendants are entitled to attorneys' fees, costs, and litigation expenses under 35 U.S.C. § 285 and will prove the amount.

104.    Defendants will prove that they are entitled to any other relief as this Court deems just and proper.

## X.    AMENDMENTS OF THE PLEADINGS

105.    The parties are not currently seeking to amend the pleadings.

23

## XI.    SETTLEMENTS

106.    On June 18, 2025, the Court ordered that the parties shall engage in in-person mediation in good faith before the Pretrial Conference.  D.I. 331.  The parties will participate in a mediation on May 13, 2026.  The parties previously engaged in settlement discussions, but no settlement was reached.

## XII.    MOTIONS IN LIMINE

107.    The parties agree to the following motions *in limine*:

  a.  No argument, evidence, testimony, or reference disparaging the nationality, ethnicity, national origin, place of residence, religion, political affiliation, or language of a party or witness; and

  b.  No evidence or argument regarding the complaint filed by Dr. Shelley Force-Aldred against Teneobio and her allegations therein of gender discrimination and retaliation.

108.    Plaintiffs' *in limine* motions, Defendants' oppositions thereto, Plaintiffs' replies, and cited exhibits, if any, are attached hereto as **Exhibits 13A-D**.

109.    Defendants' *in limine* motions, Plaintiffs' oppositions thereto, Defendants' replies, and cited exhibits, if any, are attached hereto as **Exhibits 14B-D**.

## XIII.    PRE-TRIAL DISCLOSURE SCHEDULE

110.    The parties propose the following schedule to exchange trial demonstratives and disclose witnesses and exhibits.

### A.    Exhibits And Demonstratives For Opening Statements

111.    The parties will exchange the following materials that they intend to use in their opening statements by **4:00 P.M.** one (1) day before opening statements: (1) a list of exhibits they intend to use in their opening statements; and (2) copies of any demonstrative exhibits (including

a color representation in PDF or JPG form of any physical exhibits to be used as demonstratives and slides).  The parties shall provide any objections to such exhibits and demonstratives by **6:00 P.M.** one (1) day before opening statements.  The parties will meet and confer to resolve any objections to exhibits and demonstratives for opening statements by **8:00 P.M.** one (1) day before opening statements.  The parties will exchange demonstratives and exhibits and will use good faith efforts to limit disclosures to exhibits and demonstratives they expect to use in opening statements.

112.    If good faith efforts to resolve objections fail, the party objecting to the demonstrative shall bring a short, non-argumentative description of the objection and the offering party's response to that objection to the Court's attention by e-mailing the Court's judicial administrator by **7:00 A.M.** on the day openings are to be presented.  The e-mail should attach a copy of the objected to exhibit and/or demonstrative and, if possible, highlight what is being objected to.  Further, during opening statements, parties may not show the jury any deposition testimony**.**  Failure to comply with these procedures, absent an agreement by the parties and approval by the Court, will result in waiver of the use of the exhibit and/or demonstrative or waiver of objection to the exhibit and/or demonstrative.

113.    In addition, ballooning, excerpting, enlargement, highlighting, or underlining of trial exhibits or parts of trial exhibits, without more, are not required to be provided to the other side in advance of their use under this Section, provided that such annotations are made to trial exhibits otherwise disclosed for use pursuant to the provisions of this Section.

**B.      Notice of Witnesses, Exhibits, and Demonstratives**

**1.      List of Witnesses**

114.    Each party will provide to the other a good faith list of witnesses it intends to call live at the trial by **7:00 P.M.** fourteen (14) days prior to the first day of trial, in the order it intends

to call them, without prejudice to the right to remove any witness or reorder any witness.  The parties reserve the right to revise, in good faith, their witness identifications.

115.    A party will provide a list of witnesses that the party intends to call for direct examination, the order the party expects to call the witnesses, and the method of testimony (*i.e.*, live or by prior deposition testimony) by **7:00 P.M.** two (2) days before the witnesses are expected to testify.  The parties shall provide any objections to a witness by **8:00 P.M.** two (2) days before the witness is expected to testify.  The parties will meet and confer to resolve any objections to a witness by **9:00 P.M.** two (2) days before the witness is expected to testify.

116.    If good faith efforts to resolve objections fail, the party objecting to the witness shall bring a short, non-argumentative description of the objection and the offering party's response to that objection to the Court's attention by e-mailing the Court's judicial administrator by **7:00 A.M.** on the day the witness is to be offered.  Failure to comply with these procedures, absent an agreement by the parties and approval by the Court, will result in waiver of the ability to call the witness or waiver of objection to the witness.

### 2.    Prior Deposition Testimony

117.    If a party intends to call a witness at trial by prior deposition testimony, the party shall (1) identify the specific pages and lines of the witness's deposition testimony that the party expects to read or play and (2) provide a list of each trial exhibit that the party seeks to introduce with that testimony by **7:00 P.M.** five (5) days before the day the party expects to read or play the prior deposition testimony.  The other party shall then provide any objections to the identified testimony and exhibits and identify its counter-designations, and any affirmative designations to the identified testimony by **7:00 P.M.** four (4) days before the day the deposition testimony is expected to be read or played).  The original party shall provide any objections to the counter-designations and the affirmative designations and identify its counter-counter designations by

26

**7:00 P.M.** three (3) days before the day the deposition testimony is expected to be read or played. The other party shall then provide any objections to the identified counter-counter-designations by **8:00 P.M.** three (3) days before the day the deposition testimony is expected to be read or played. The parties will meet and confer to resolve any objections to designated, counter-designated, and counter-counter-designated testimony by **9:00 P.M.** three (3) days before the day the deposition testimony is expected to be read or played.

118.   If good faith efforts to resolve the objections fail, and there are objections that remain to be resolved, the party calling the witness shall, no later than **7:00 A.M.** two (2) calendar days before the witness is to be called at trial, submit to the Court's judicial administrator and courtroom deputy, on behalf of all parties (1) a digital copy of the entire deposition testimony of the witness at issue, clearly highlighting the designations, counter-designations, counter-counter designations, and pending objections; and (2) a cover letter clearly identifying the pending objections as well as a brief indication (*i.e.*, no more than one sentence per objection) of the basis for the objection and the offering party's response to the objection.  Failure to comply with these procedures, absent an agreement by the parties and approval by the Court, will result in waiver of the use of the deposition testimony or waiver of objection to the use of the deposition testimony.

119.   After the Court has resolved any disputes, the party introducing the deposition testimony will be responsible for editing the deposition video to include the testimony, counter-designated testimony, and counter-counter designated testimony, in the order the testimony was given, minus attorney objections (the "Video"), and will provide the Video to the other party by **7:00 P.M.** one (1) day before the deposition testimony is to be played to the jury.  The exchange format consists of: (a) a download link to the Video file; and (b) PDF Clip Report for each witness

27

(cover page to include total run time, Plaintiffs' Designation Run Times, Defendants' Designation Run Times, and a listing of exhibits included in the testimony).

120. The deposition video will include the text of the testimony on the screen that matches the witness's testimony. All irrelevant material, including colloquy between counsel and objections, will be eliminated when the deposition is played or read. The witness's deposition testimony shall be played or read in chronological order. The chronological order requirement does not apply to the use of deposition transcripts or video for impeachment purposes.

121. For those witnesses whose depositions will be played or read, the parties shall be permitted to make brief transition statements to introduce the witnesses by name, position or title, and/or the entity with which he or she is associated, the time for which shall be charged to the party offering the witness's testimony, unless otherwise agreed to by the parties. **[Defendants' Proposal:** Counsel shall not be permitted to otherwise argue or comment on the evidence or testimony or otherwise characterize or summarize the substance of the testimony in an argumentative manner during such transition statements. Any party that wants to make a transition statement must disclose the transition statement with the deposition designations, and any objections to the transition statement must be served at the time for serving objections to the deposition designations.]**[4]

---

[4] **Plaintiffs' Position**: Defendants' proposal is inconsistent with standard practice and unnecessary. To the extent that a party finds a transition statement objectionable, the party can raise their objection at the time the statement is made.
**Defendants' Position**:  An important purpose of nightly disclosure is to avoid wasting time in front of the jury with objections that can and should be resolved before the jury is called. The issue of whether a short transition statement for deposition designations is argumentative or improper is discrete and amenable to resolution in advance rather than requiring an objection at the time the statement is uttered to the jury.

122.    If an exhibit was marked at a witness' deposition and is referenced in that witness' deposition designation played at trial, the designating party may seek to admit the exhibit into evidence at trial if it is included on a party's Trial Exhibit List, subject to any other party's objections.  If an exhibit marked at a deposition is referenced in a deposition designation played at trial and the Court has overruled any objection to the exhibit's admission into evidence at trial, the designating or counter-designating party may display the exhibit to the jury alongside the video and highlight or enlarge portions of the exhibit on the screen that were discussed or referenced in the designation or counter-designation, respectively, as if the exhibit was being shown to a live testifying witness.

123.    The time available for each side's trial presentation shall be reduced by the length of its designations, counter-designations, or counter-counter-designations actually played or read at trial.

### 3.    Trial Exhibits For Direct Examination

124.    A party will provide a list of trial exhibits to be used in connection with direct examination, including indicating with which witness the trial exhibits will be used by **7:00 P.M.** one (1) day before their intended use.  Such disclosure will include all trial exhibits intended to be used with the witness regardless of whether or not the exhibit is already admitted into evidence. The parties' disclosures will reflect a good faith determination of the exhibits that will be used with a particular witness, and reasonable efforts will be made to streamline disclosures.  The parties shall provide any objections to trial exhibits by **8:00 P.M.** one (1) day before their intended use. The parties will meet and confer to resolve any objections to trial exhibits to be used for direct examination by **9:00 P.M.** one (1) day before their intended use.

125.    If good faith efforts to resolve objections fail, the party objecting to the exhibits shall bring a short, non-argumentative description of the objection and the offering party's

29

response to that objection to the Court's attention by e-mailing the Court's judicial administrator by **7:00 A.M.** on the day the exhibit is to be offered.  The e-mail should attach a copy of the objected to document and, if possible, highlight what is being objected to.  Failure to comply with these procedures, absent an agreement by the parties and approval by the Court, will result in waiver of the use of an exhibit or waiver of objection to the exhibit.

126.    If a party intends to use a physical trial exhibit, the party must notify the opposing party by the **7:00 P.M.** deadline one (1) day before its intended use at trial and, upon request, must make the physical exhibit available for inspection no later than the **8:00 P.M.** deadline for objections.  The parties shall provide any objections to trial exhibits by **8:00 P.M.** one (1) day before their intended use.  The parties will meet and confer to resolve any objections to trial exhibits to be used for direct examination by **9:00 P.M.** one (1) day before their intended use.  For purposes of clarity, such physical trial exhibits do not include demonstrative exhibits, which are subject to the disclosure provisions below.  The provisions included in this paragraph are not intended as a waiver of any argument that a physical exhibit was not timely produced during discovery or properly included on the producing party's Trial Exhibit List.

127.    If good faith efforts to resolve objections fail, the party objecting to the physical exhibits shall bring a short, non-argumentative description of the objection and the offering party's response to that objection to the Court's attention by e-mailing the Court's judicial administrator by **7:00 A.M.** on the day the exhibit is to be offered.  The e-mail should attach a digital reproduction of the relevant physical exhibit (to the extent practicable).  Failure to comply with these procedures, absent an agreement by the parties and approval by the Court, will result in waiver of the use of an exhibit or waiver of objection to the exhibit.

### 4.    Demonstrative Exhibits

128.    Plaintiffs' demonstrative exhibits will be identified with PDX prefixes.

129.    Defendants' demonstrative exhibits will be identified with DDX prefixes.

130.    A party will provide demonstrative exhibits to be used in connection with direct examination, including indicating with which witness the demonstrative exhibits will be used, by **7:00 P.M.** one (1) day before their intended use. The parties shall provide any objections to demonstrative exhibits by **8:00 P.M.** one (1) day before their intended use.  The parties will meet and confer to resolve any objections to demonstrative exhibits to be used for direct examination by **9:00 P.M.** one (1) day before their intended use.

131.    Where feasible, a party shall provide a color representation of the demonstrative exhibit, including physical demonstrative exhibits, in PDF form.   The PDF form of the demonstrative exhibit shall be in the order of intended use with slide numbers as they will be numbered for use at trial.  If not feasible to provide a color representation in PDF form, the party must notify all opposing parties by **7:00 P.M.** deadline and, upon request, must make the physical demonstrative available for inspection no later than the **8:00 P.M.** deadline for objections.

132.    To the extent a demonstrative exhibit includes animations, videos, or other graphics which are not represented in a PDF printout in a substantially similar manner in which they would be presented to the jury, the demonstrative will be sent in a format that allows the animation or graphic to be viewed in a substantially similar manner as it would be seen by the jury.

133.    If good faith efforts to resolve objections fail, the party objecting to the demonstratives shall bring a short, non-argumentative description of the objection and the offering party's response to that objection to the Court's attention by e-mailing the Court's judicial administrator by **7:00 A.M.** on the day the demonstrative is to be presented.  The e-mail should attach a copy of the objected to demonstrative and, if possible, highlight what is being objected to. Failure to comply with these procedures, absent an agreement by the parties and approval by the

31

Court, will result in waiver of the use of the demonstrative or waiver of objection to the demonstrative.

134.     The exchange provisions in this section do not apply to demonstrative exhibits created live during direct examination or demonstratives that are used solely on cross-examination with a witness, which do not need to be provided to the other side in advance of their use.  A party who creates a demonstrative live in the courtroom, during opening statements, examination, or closing arguments, or uses a demonstrative solely on cross-examination with a witness must provide the other parties with a photograph or other electronic file of the demonstrative by **7:00 P.M.** the day it was created or used.

135.     In addition, non-argumentative ballooning, excerpting, enlargement, highlighting, or underlining of trial exhibits or parts of trial exhibits, without more, are not required to be provided to the other side in advance of their use, provided that such annotations are made to trial exhibits otherwise disclosed for use with direction examination of the relevant witness pursuant to Section XIII.B.3.  For avoidance of doubt, if any such ballooning, excerpting, enlargement, highlighting, or underlining of trial exhibits or parts of trial exhibits are included on a slide that contains a narrative or argumentative title or other content, such slides shall be disclosed as set forth above.

136.     Parties may make reasonable, non-substantive edits or corrections of typographical and similar errors to a demonstrative provided that the party promptly notify any opposing party of the change(s) to provide any opposing party with reasonable notice of the changes before the demonstrative exhibit is presented to the jury.

137.     No party can use any other party's disclosed demonstrative exhibits before the disclosing party has used it.

138.    [**Plaintiffs' Proposal:** Demonstratives previously displayed during the trial do not need to be disclosed again.] [**Defendants' Proposal**:  Demonstratives that have been previously displayed during the trial must be disclosed pursuant to the procedures of this Section for each witness with whom a party intends to use the demonstrative.]⁵

### 5.    Witness Binders

139.    To the extent a party prepares a binder of trial or demonstrative exhibits for a witness, the party will provide at least two (2) copies to the opposing party at the same time the binder is presented to the witness.

140.    Prior to the start of cross-examination of any witness, the parties agree to provide the witness a copy and the other side with at least two (2) copies of binders that contain all of the exhibits expected to be used on cross-examination (other than for impeachment) of that witness. If a witness on cross-examination is held over at the end of a trial day, the other party may retain copies of the binders but may not show them to the witness or discuss the contents of the binder,

---

[5] **Defendants' Position**:  Demonstrative exhibits may be appropriate to be used with certain witnesses, while remaining objectionable to use with other witnesses.  For example, a demonstrative regarding an expert's opinion on validity may not be appropriate to use with a different expert opining on damages.  An important purpose of the nightly disclosure is to avoid wasting time in front of the jury with objections that can and should be resolved before the jury is called.  Defendants understand Plaintiffs to be referring to using specific slides that have previously been shown to the jury.  The parties are meant to meet and confer nightly to identify concerns to be able to raise them to the Court in advance in an efficient manner.  Plaintiffs' proposal significantly reduces those efficiencies by seeking to reserve additional objections on the appropriateness of a specific slide simply because the jury has seen it before in a different context.  Another important purpose of the nightly disclosure is to ensure that the parties are aware of the scope of direct examination in order to adequately prepare for cross-examination.  Holding back a slide merely because the jury has seen it does not provide the other party with all the information regarding the scope of direct examination.

**Plaintiffs' Position:** Once a demonstrative has been admitted and shown to the jury, there is no risk of harm to the jury or prejudice from seeing it again with another witness.  Should a party believe that the use of a previously admitted demonstrative is objectionable, the appropriate remedy is to object in real time.  Requiring pre-disclosure of already admitted demonstratives will result in the Court having to make rulings on objections without the benefit of how the demonstrative will be used and the context of the witness's testimony.

or any other matters relating to this case, with the witness.  This agreement does not prohibit the cross-examining party from using any reasonably unforeseen exhibits absent from the provided binders [**<u>Defendants' Proposal:</u>** upon a showing of good cause that the cross-examining party could not have identified the unincluded exhibit based on the other party's disclosure of exhibits for direct examination.][6]

141.    The parties may not provide witness binders or physical copies of documents (demonstratives, deposition transcripts, etc.) to the Court.  At the beginning of each trial day, the parties shall provide on an *ex parte* basis to the Court's Judicial Administrator and Courtroom Deputy electronic copies of witness folders containing the exhibits and demonstratives (if any) to be used on direct examination and cross-examination of any witnesses expected to be called that day.  This includes any deposition transcripts or expert reports that may be used with witnesses.

### 6.    Cross Examination

142.    The parties will not exchange trial or demonstrative exhibits to be used in cross examination.  Documents, deposition transcripts, or other items (or portions thereof) may still be used for cross examination, impeachment, or rehabilitation, if otherwise competent for such purposes, and may be admitted into evidence consistent with the requirements of the Federal Rules of Evidence.  A party is not required to list documents used for impeachment on the parties' Trial Exhibit Lists.

---

[6] **Plaintiffs' Position**: Defendants' proposal for requiring a showing of good cause for use of unforeseen exhibits for cross-examination is unnecessary, burdensome, and would be disruptive to the trial. The provision makes clear that the parties will be providing a binder of exhibits that they in good faith expect to use for their cross-examination and Plaintiffs expect both parties to adhere to that obligation.
**Defendants' Position**:  Defendants similarly expect that both parties will disclose exhibits for cross-examination in good faith.  But there must be guardrails to allowing undisclosed exhibits to be used and requiring a showing of good cause is appropriate.

### C.    Party Opponent Statements

143.    A party shall provide any statement by a party opponent in any pleading, request for admission response, interrogatory response, or the Joint Statement of Uncontested Facts (or portion thereof) that it intends to read, other than use during direct or cross-examination of a witness, by **7:00 P.M.** one (1) day before their intended use.  The statement shall be provided in the form of its intended use (*e.g.*, any excerption or redaction applied).  The parties shall provide any objections by **8:00 P.M.** one (1) day before their intended use.  The parties will meet and confer to resolve any objections by **9:00 P.M.** one (1) day before their intended use.

144.    If good faith efforts to resolve objections fail, the party objecting to the statement shall bring a short, non-argumentative description of the objection and the offering party's response to that objection to the Court's attention by e-mailing the Court's judicial administrator by **7:00 A.M.** on the day the statement is to be offered.  Failure to comply with these procedures, absent an agreement by the parties and approval by the Court, will result in waiver of the ability to use the statement or waiver of objection to the statement.

### D.    Objections to Expert Testimony

145.    To the extent a party objects to expert testimony as outside the scope of prior expert disclosures, the Court shall rule on the objections at trial, taking time from the parties' trial presentation to argue and decide such objections.

### E.    Exhibits and Demonstratives for Closing Arguments

146.    The parties will not exchange trial demonstratives or exhibits to be used in closing arguments.

### F.    Notice of Intent to Rest

147.    Each side will provide to the Court and the other side a good-faith notice that it expects to rest by **7:00 P.M.** the day before that side expects to rest.

### G.    Failure to Comply

148.    The failure to comply with the procedures laid out in this Trial Disclosure Schedule, absent an agreement by the parties and ordered by the Court, will result in waiver of the use of the trial or demonstrative exhibit, testimony, or statement or will result in waiver of objection to the trial or demonstrative exhibit, testimony, or statement.

149.    The parties agree that there may be circumstances where a party may need additional time to disclose trial exhibits and demonstratives, objections thereto, or to prepare for a meet-and-confer conference.  The parties expect that such circumstances, if they occur, will be rare.  The parties agree that these deadlines may be reasonably amended by agreement of the parties, and any amendment shall not be unreasonably withheld, if a good-faith basis for extending the deadline arises.  To be clear, the parties may not agree to modify any deadlines for submission of disputes or objections to the Court.

## XIV.   LENGTH OF TRIAL

150.    The trial will be 5 days and will be timed, with each side being allotted an equal amount of time.

151.    Unless otherwise ordered, time will be charged to a party for its: (1) opening statement; (2) direct and redirect examinations of witnesses it calls (including designations of witnesses called by deposition); (3) cross examination of witnesses called by the other party (including counter-designations of witnesses called by deposition); and (4) closing arguments. Time will be charged to the losing party for all sides' argument on objections a party raises (outside the presence of the jury) to another party's exhibits and demonstrative exhibits.  The parties will not be charged for time spent arguing motions under Fed. R. Civ. P. 50 or for time spent discussing the parties' proposed jury instructions at the charge conference.

152.    The Courtroom Deputy will keep a running total of trial time used by counsel.

153.    Considering the Court's procedures for counting time and considering the nature and extent of the parties' disputes, the parties respectfully request 15 hours per side with up to 30 minutes reserved for opening statements and 60 minutes reserved for closing arguments.

154.    The parties respectfully request guidance from the Court regarding when the Court would prefer to hear evidence and arguments on the inequitable conduct defense asserted by Defendants.  In the event the Court wants to hear such evidence and argument during the week of the jury trial after the jury recesses for the day, the parties respectfully request an additional 3 hours per side specifically for the bench trial, with up to 15 minutes reserved for opening statements and 30 minutes reserved for closing arguments.

## XV.    OTHER MATTERS

### A.    Order of Proof

155.    Unless the parties reach an alternative agreement, the order of the presentation of evidence will follow the burden of proof.  The order of proof is:

- Plaintiffs' case-in-chief on infringement and damages. **[Defendants' Proposal**:, along with Plaintiffs' affirmative presentation of evidence related to secondary considerations of nonobviousness.**]**

- Defendants' response on infringement and damages, and case-in-chief on invalidity and Defendants' counterclaims. **[Defendants' Proposal**:, including Defendants' response to Plaintiffs' evidence related to secondary considerations of nonobviousness.**]**

- Plaintiffs' response on invalidity and Defendants' counterclaims.[7]

---

[7] **Plaintiffs' Position**:  Defendants provide no precedent or authority for their proposal requiring Plaintiffs to rebut invalidity before Defendants have even presented their theories or that Defendants get a rebuttal case related to invalidity.  Indeed, Plaintiffs' evidence relating to secondary considerations is *responsive* to Defendants' assertions of obviousness.  At the time of Plaintiffs' case-in-chief, the jury will not have heard any evidence about Defendants' prior art obviousness theories (to the extent they advance any) and will have no context for why secondary considerations matter.  And notably, Defendants refused to allow Plaintiffs a rebuttal case on infringement.  The Court should reject Defendants' attempt to inject their invalidity case

### B.     Confidential Information

156.    The parties wish to discuss with the Court how it would like to handle certain limited confidential information, such as confidential information of third parties as well as certain documents that have been designated HIGHLY CONFIDENTIAL under the Protective Order (D.I. 38).  In particular, Defendants wish to discuss with the Court how to address presentation of PTX-239, which contains Amgen's Highly Confidential information, given the highly sensitive nature of the information in PTX-239.

### C.     Judgment as a Matter of Law

157.    The parties propose that motions for judgment as a matter of law be made and argued during breaks when the jury is out of the courtroom or at the end of the day after the jury has been dismissed.  The parties agree that such motions will be raised with the Court at the first break after the appropriate point during trial so that the Court may inform the parties when such motions will be heard and whether the Court wishes to receive briefing.

---

into Plaintiffs' case-in-chief.  To the extent Defendants' proposal forecloses Plaintiffs from presenting secondary considerations in their rebuttal case, Plaintiffs further disagree with Defendants' position for the same reasons, namely, that secondary considerations are responsive to Defendants' assertions of obviousness, so Plaintiffs should be permitted to present such evidence after Defendants' affirmative obviousness presentation.

**Defendants' Proposal**:  Plaintiffs cannot reasonably claim to be unaware that Defendants will be asserting obviousness as a theory of invalidity, even if the specific contours of the prior art that will be presented are unclear.  Regardless of the art used, where obviousness is asserted, if Plaintiffs want to rely on secondary considerations, they bear the burden of production of such evidence.  It would be prejudicial to Defendants if Defendants were forced to spend time rebutting specific secondary considerations and evidence if Plaintiffs do not ultimately decide to present such evidence.  If Plaintiffs' affirmative evidence related to secondary considerations of nonobviousness is not presented until Plaintiffs' rebuttal case, then Defendants should be permitted a final round of evidence to rebut such evidence, as Defendants bear the ultimate burden of persuasion on invalidity.

38

### D.    Amgen's Damages Demand for its Counterclaims

158.    As identified above, Amgen is pursuing counterclaims for breach of contract, breach of warranty, tortious interference, and fraud in the inducement.  *See* Section IX.D, *supra*.

159.    **Defendants' Position:** Amgen's contract-based damages consist of two components:  (1) payments made under the 2013 HCAb License Agreement, which will be proved at trial using timely disclosed evidence and testimony; and (2) Amgen's attorneys' fees spent in defending this litigation.  The latter amount is a significant portion of the damages and should be evaluated by the Court after trial, rather than via a jury determination of damages, for legal and practical reasons that have been recognized by multiple courts, as explained below.  Thus, in the event that Amgen prevails on one or more of these counterclaims, Amgen respectfully requests a post-trial accounting of the damages for these claims, which are based on the fees Amgen has incurred in defending this action and payments made under the agreement, in lieu of a jury determination of the amount of the damages.  Defendants wish to discuss this matter with the Court during the pretrial conference.

160.    Amgen identified its position in summary judgment briefing regarding a post-trial accounting, *see* D.I. 473 at 13–14, and Harbour did not respond.  As the Second Circuit has held, "an action to recover attorneys' fees pursuant to a contract presents traditional common-law contract issues which should be submitted to a jury—and which were properly submitted to the jury in this case—but that the subsequent determination of the amount of attorneys' fees owed presents equitable issues of accounting."  *McGuire v. Russell Miller, Inc.*, 1 F.3d 1306, 1314 (2d Cir. 1993).  As the court noted in *McGuire*, "the courts can streamline proof of the amount of attorneys' fees by waiting until after a verdict when only prevailing parties will submit proof of the amount of attorneys' fees; if the jury finds that a party is not entitled to fees, the amount need not be proved."  *Id.* at 1316; *see also id.* ("[A]lthough the judge can compute the amount of

attorneys' fees after a trial with perfect hindsight, the jury would have to keep a running total of fees as they accrued through summations and then predict future fees from post-trial proceedings and motions."). As a result, courts in this Circuit have denied discovery into attorneys' fees where those fees are an element of damages sought. *See, e.g.*, *Longport Ocean Plaza Condo., Inc. v. Robert Cato & Assocs., Inc.*, No. 00-cv-2231, 2002 WL 32348506, at \*2 (E.D. Pa. Mar. 6, 2002) (refusing attorneys' fees discovery until after liability was found where attorneys' fees were only a portion of the total damages); *see also L.S.S. Realty Corp. v. Vanchlor Catalysts, LLC*, No. 04-cv-197, 2005 WL 638056, at \*4 (E.D. Pa. Mar. 16, 2005). A significant part of Amgen's damages is Amgen's reasonable attorneys' fees spent in defending this action; that amount should be evaluated by the Court after trial in the event liability is found.

161.    **Plaintiffs' Position:** Defendants' license-related defenses and counterclaims should be dismissed for the reasons identified in Plaintiffs' summary judgment briefing. *See* D.I. 425; 428; 435; 437 at 1-19; 481 at 11-18. To the extent the Court finds that there remains a factual dispute for the jury to resolve on Defendants' license-related defenses and counterclaims, Plaintiffs disagree that Amgen's request for a post-trial accounting of damages is appropriate. Despite having asserted these counterclaims before the end of fact discovery (*see* D.I. 332), Defendants did not produce any documents to support their damages nor any expert analysis for determining damages, including attorneys' fees. Without such discovery, Plaintiffs have no notice as to what attorneys' fees Amgen is alleging, whether the fees they allege are reasonable, and whether the fees appropriately carve out the work performed by Defendants' attorneys for Amgen as opposed to Teneobio. Accordingly, Amgen never provided a reasonable showing as to the damages that it alleges it incurred based on its counterclaims and should not be afforded a do-over with new evidence after trial.

40

162. Defendants' cited cases do not support that a post-trial accounting for damages is appropriate for Amgen's contract-based claims. The *McGuire* and *Longport Ocean* cases each relate to indemnity provisions that included attorneys' fees, not a party's contention that attorneys' fees are the appropriate remedy for the counterclaims Amgen is asserting here. *See McGuire*, 1 F.3d at 1313 (relates to the determination of attorneys' fees where "the indemnity provision in the merger agreement included attorneys' fees"); *Longport Ocean*, 2002 WL 32348506 at *2 (relates to the determination of legal fees awarded under an "indemnification clause"). And the *L.S.S. Realty* case relates to whether a challenge as to the "reasonableness" of attorneys' fees. *See L.S.S. Realty*, 2005 WL 638056 at *3-4.

### E. Plaintiffs' Use of Affirmative Deposition Designations from Plaintiffs' Witnesses

163. Defendants wish to discuss during the pretrial conference Plaintiffs' intended affirmative use at trial of deposition testimony of Plaintiffs' own witnesses (rather than by permissible counter-designation in response to Defendants' designations of testimony from those witnesses).

164. **[Defendants' Position:** During the course of the parties' pretrial exchanges, Plaintiffs indicated their intent to present certain of their witnesses by designated deposition testimony rather than presenting those witnesses live. Specifically, Plaintiffs provided affirmative deposition designations for current employees Ms. Riet van Zeijl, Dr. Jingsong Wang, and Mr. Jiyong Zhang. Ms. van Zeijl is Harbour's current financial controller, and Dr. Wang is the CEO of HBM. Defendants respectfully request that the Court preclude Plaintiffs from introducing these affirmative deposition designations.

165. Plaintiffs have not represented that they have been unable to procure the attendance of their own current employees at trial, let alone that they have made attempts to procure the same.

41

"Rule 32(a)(4)(B) does not automatically entitle a party to present deposition testimony at trial; rather, courts retain the 'discretion to manage the trial in a manner that is fair to both sides and consistent with all other applicable rules.'"  *Advanced Accelerator Applications, USA, Inc. v. Lantheus Med. Imaging, Inc.*, C.A. No. 24-95-MN, D.I. 325, ¶ 6 (D. Del. Dec. 12, 2025) (quoting *Greatbatch Ltd. v. AVX Corp.*, C.A. No. 13-723-LPS, 2017 WL 3085055, at *3 (D. Del. July 20, 2017)).  Although "[p]arties are not required to take active steps to procure witnesses who would not otherwise be within 100 miles of the location of the trial . . . this failure to procure may be taken into account when courts exercise their discretion regarding whether to admit the deposition testimony."  *ViiV Healthcare Co. v. Mylan Inc.*, C.A. No. 12-1065-RGA, 2014 WL 2195082, at *1 (D. Del. May 23, 2014); *see also, e.g.*, *Burkhart v. Potter*, 166 F. App'x 650, 654 (3d Cir. 2006) (finding magistrate judge properly excluded deposition testimony of plaintiff's witness because it was hearsay and the party "failed to demonstrate that [witness] was 'unavailable as a witness'" under Fed. R. Evid. 804(a)(5)).  That is, that one or more of Plaintiffs' witnesses resides more than 100 miles away from the Court is "not an automatic mechanism for granting deposition testimony in lieu of live testimony."  *ViiV*, 2014 WL 2195082, at *1 (citing *Garcia-Martinez v. City & Cty. of Denver*, 392 F.3d 1187, 1191 (10th Cir. 2004) ("Other cases hold that the mere fact a party is more than 100 miles from the courthouse does not require the district court to automatically admit a party's deposition")).  Moreover, Plaintiffs were able to produce *each* of these three witnesses in the United States for deposition, undercutting any claim of inability to produce the same witnesses now in Delaware for trial on claims **brought by Plaintiffs**.  *Cf. Advanced Accelerator*, D.I. 325, ¶ 7 ("Though Plaintiffs emphasized that certain witnesses may have to travel long distances, including from outside of the U.S., Plaintiffs have not complained that they are physically unable to procure any live witness testimony.").

42

166.    Additionally, these witnesses testified on behalf of Plaintiffs in a corporate representative capacity pursuant to Fed. R. Civ. P. 30(b)(6).  Plaintiffs' affirmative designations include both testimony provided in an individual capacity and in a representative capacity. Plaintiffs cannot demonstrate that the deposition testimony they have affirmatively designated from these witnesses comes only from their personal knowledge and not corporate knowledge. Witness testimony from a deposition that was provided based on corporate knowledge, not personal knowledge, may not be admissible at trial in lieu of live trial testimony because the "information [is] reasonably known or available to the organization" and therefore "may be in conflict with both Rule 32(a)(1)(B) and Federal Rule of Evidence 602."  *ViiV*, 2014 WL 2195082, at *2.  Allowing Plaintiffs to affirmatively present testimony by deposition designation at trial that is not based on personal knowledge of the witness would be unfair to Defendants and violate the rules of evidence.

167.    Plaintiffs' response, *infra*, that their designations were done simply for the convenience of Defendants "to the extent any of those witnesses become unavailable prior to trial" puts the cart before the horse.  Plaintiffs should not be permitted to call those witnesses by deposition **_unless_** the witnesses are, in fact, unavailable.**]**

168.    **[Plaintiffs' Position:** Defendants' request ignores that each of **Dr. Jingsong Wang** (Chief Executive Officer of Harbour Biomed Ltd.), **Dr. Jiyong Zhang** (Chief Business Officer of Nona Biosciences), and **Ms. Riet van Zeijl** (Controller of Harbour Antibodies BV) are listed on Plaintiffs' Witness List (Exhibit 9) as *may call* witnesses that could testify either *live or by deposition*.  If Plaintiffs need to affirmatively call Dr. Wang, Dr. Zhang, or Ms. van Zeijl to testify, Plaintiffs intend to call them live at trial.  However, to the extent any of those witnesses become unavailable prior to trial, Plaintiffs have designated their testimony to avoid any future claim of

43

prejudice or delay that Defendants might make.  If the need to affirmatively call Dr. Wang, Dr. Zhang, or Ms. van Zeijl by deposition arises because they become unavailable, and to the extent necessary, Plaintiffs will demonstrate at that time that their testimony will be limited in scope and limited to the witness' personal knowledge.**]**

* * *

**IT IS HEREBY ORDERED** that this Final Pretrial Order shall control the subsequent course of the action, unless modified by the Court to prevent manifest injustice.

DATED:

_____
The Honorable Maryellen Noreika
United Stated District Judge

APPROVED AS TO FORM AND
SUBSTANCE:

44

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

By:  /s/ David E. Moore

John M. Desmarais       David E. Moore (#3983)
Tamir Packin       Bindu A. Palapura (#5370)
Kyle G. Petrie       Andrew M. Moshos (#6685)
Jordan N. Malz       Malisa C. Dang (#7187)
Michael E. Furrow       Hercules Plaza, 6th Floor
Karl Mullen       1313 N. Market Street
Jun Tong       Wilmington, DE  19801
Brian D. Matty       Tel:  (302) 984-6000
DESMARAIS LLP       dmoore@potteranderson.com
230 Park Avenue       bpalapura@potteranderson.com
New York, NY 10169       amoshos@potteranderson.com
Tel: (212) 351-3400       mdang@potteranderson.com

Adam D. Steinmetz       *Attorneys for Plaintiffs/Counterclaim*
Rebecca Lindhorst       *Defendants Harbour Antibodies BV, Harbour*
Thomas Romanchek       *Antibodies HCAb BV, HBM Holdings Ltd.'s and*
DESMARAIS LLP       *Erasmus University Medical Center Rotterdam*
1899 Pennsylvania Avenue, NW
Suite 400
Washington, D.C. 20006
(202) 451-4900

Maria Tartakovsky
DESMARAIS LLP
101 California Street
Suite 3000
San Francisco, CA 94111
Tel: (415) 573-1900

45

OF COUNSEL:

Kathleen M. Williams, PhD, J.D.
NUTTER MCCLENNAN & FISH LLP
155 Seaport Boulevard
Boston, MA 02210
(617) 439-2294

Amir Naini
NAINI P.C.
2632 Wilshire Blvd., Suite 268
Santa Monica, CA 90403

ASHBY & GEDDES

By:  */s/ Andrew Colin Mayo*
    Andrew Colin Mayo (#5207)
    500 Delaware Avenue, 8th Floor
    P.O. Box 1150
    Wilmington, DE  19801
    Tel:  (302) 654-1888
    amayo@ashbygeddes.com

*Attorneys for Plaintiff Dr. Roger Kingdon Craig*

46

OF COUNSEL:

Nicholas Groombridge
Eric Alan Stone
Peter Sandel
Rebecca Fett
Stephen A. Maniscalco
Eliza P. Strong
Chih-Wei Wu
Jessica Zhao
GROOMBRIDGE, WU, BAUGHMAN &
STONE LLP
565 5th Avenue, Suite 2900
New York, NY 10017
Tel: (332) 269-0030

Philip S. May
Christopher M. Keller
GROOMBRIDGE, WU, BAUGHMAN &
STONE LLP
801 17th Street NW, Suite 1050
Washington, DC 20006
Tel: (202) 505-5830

Joseph E. Lasher
J. Drew Diamond
Gwen Hochman Stewart
Steven Tang
Wendy A. Whiteford
AMGEN INC.
One Amgen Center Drive
Thousand Oaks, CA 91320-1789
Tel: (805) 447-1000

Dated: May 8, 2026
12915794 / 24513.00001

Public Version Dated:  May 22, 2026

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

By:  */s/ Megan E. Dellinger*
    Jeremy A. Tigan (#5239)
    Megan E. Dellinger (#5739)
    Cameron C. Clark (#6647)
    1201 North Market Street
    P.O. Box 1347
    Wilmington, Delaware 19801
    Tel: (302) 658-9200
    jtigan@morrisnichols.com
    mdellinger@morrisnichols.com
    cclark@morrisnichols.com

*Attorneys for Defendants Teneobio, Inc. and Amgen Inc.*

47