**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ~~Delaware~~DELAWARE**

| | |
|---|---|
| HARBOUR ANTIBODIES BV, HARBOUR ANTIBODIES HCAB BV, ERASMUS UNIVERSITY MEDICAL CENTER ROTTERDAM and DR. ROGER KINGDON CRAIG, | ) ) ) ) ) ~~Civil Action~~ |
| Plaintiffs, | ) ) ) |
| v. | ) C.A. No. 21-~~cv-~~1807- (MN) ) |
| TENEOBIO, INC. and AMGEN INC., | ) **JURY TRIAL DEMANDED** ) |
| Defendants. | ) |
| TENEOBIO, INC. and AMGEN INC., | ) ) |
| Counterclaim-Plaintiffs, | ) ) |
| v. | ) ) |
| HARBOUR ANTIBODIES BV, HARBOUR ANTIBODIES HCAB BV, ERASMUS UNIVERSITY MEDICAL CENTER ROTTERDAM, DR. ROGER KINGDON CRAIG, and HBM ~~HOLDINGS LTD~~HOLDINGS LTD. | ) ) ) ) ) ) ) |
| Counterclaim-Defendants. | |

**[JOINT PROPOSED] FINAL JURY INSTRUCTIONS[1]**

---

[1] The parties reserve the right to request further modifications based on the Court's pretrial rulings and any further narrowing of each party's affirmative or rebuttal cases, or any modifications to the scope of the trial and order of proof.

## TABLE OF CONTENTS

**Pages**

1    GENERAL INSTRUCTIONS ................................................................................................1

    1.1    INTRODUCTION ........................................................................................................1

    1.2    CONSIDERATION OF EVIDENCE ...........................................................................2

    1.3    THE PARTIES' CONTENTIONS ...............................................................................3

    1.4    BURDEN OF PROOF ..................................................................................................5

    1.5    NUMBER OF WITNESSES ........................................................................................7

2    CASE SPECIFIC JURY INSTRUCTIONS ........................................................................8

    2.1    SUMMARY OF ISSUES .............................................................................................8

    2.2    THE CLAIMS OF A PATENT ..................................................................................10

    2.3    "COMPRISING" CLAIMS ........................................................................................14

    2.4    INFRINGEMENT – GENERALLY ...........................................................................15

    2.5    INFRINGEMENT – § 271(a) ....................................................................................16

    2.6    INFRINGEMENT – § 271(a) – JOINT INFRINGEMENT .......................................20

    2.7    INFRINGEMENT – § 271(a) – DOCTRINE OF EQUIVALENTS ..........................22

    2.8    INFRINGEMENT – § 271(g) ....................................................................................24

    2.9    INFRINGEMENT – WILLFUL INFRINGEMENT .................................................26

    2.10    INFRINGEMENT DESPITE OTHER PATENTS ....................................................28

    2.11    LICENSE ...................................................................................................................29

    2.12    INVALIDITY – GENERALLY .................................................................................32

    2.13    THE PERSON OF ORDINARY SKILL IN THE ART .............................................33

    2.14    PRIOR ART – GENERALLY ...................................................................................34

    2.15    PRIOR ART – CONSIDERED BY UNITED STATES PATENT OFFICE ........36

    2.16    INVALIDITY – ANTICIPATION – GENERALLY .................................................38

i

**TABLE OF ~~AUTHORITIES~~CONTENTS (cont'd)**

**Pages**

2.17    INVALIDITY – ANTICIPATION – ON SALE BAR ........................................... 39

2.18    INVALIDITY – ANTICIPATION – PRIOR INVENTION BY
        ANOTHER ....................................................................................................... 42

2.19    INVALIDITY – OBVIOUSNESS .................................................................... 46

2.20    INVALIDITY – SECONDARY CONSIDERATIONS OF
        NONOBVIOUSNESS ....................................................................................... 50

2.21    INVALIDITY – LACK OF ENABLEMENT .................................................... 52

2.22    INVALIDITY – WRITTEN DESCRIPTION .................................................... 54

2.23    CONTRACT – BREACH OF CONTRACT AND WARRANTY ....................... 58

2.24    CONTRACT – TORTIOUS INTERFERENCE WITH CONTRACT .................. 61

2.25    CONTRACT – FRAUD IN THE INDUCEMENT .............................................. 64

2.26    PATENT DAMAGES – GENERALLY ............................................................ 66

2.27    PATENT DAMAGES – PROVISIONAL RIGHTS ............................................ 67

2.28    PATENT DAMAGES – REASONABLE ROYALTY ....................................... 69

2.29    PATENT DAMAGES – REASONABLE ROYALTY –
        HYPOTHETICAL NEGOTIATION DATE ....................................................... 73

2.30    PATENT DAMAGES – REASONABLE ROYALTY – FACTORS
        RELEVANT TO THE HYPOTHETICAL NEGOTIATION .............................. 74

2.31    PATENT DAMAGES – REASONABLE ROYALTY – TIMING ...................... 77

2.32    PATENT DAMAGES – REASONABLE ROYALTY – COMPARABLE
        AGREEMENTS ................................................................................................ 78

2.33    PATENT DAMAGES – REASONABLE ROYALTY –
        APPORTIONMENT .......................................................................................... 81

2.34    DAMAGES – DOUBTS RESOLVED AGAINST THE INFRINGER ............... 83

2.35    PATENT DAMAGES – REASONABLE ROYALTY – AVAILABILITY
        OF NON-INFRINGING ALTERNATIVES ....................................................... 84

2.36    PATENT DAMAGES – DATE OF COMMENCEMENT OF DAMAGES ........ 86

3       DELIBERATIONS AND VERDICT ................................................................. 87

ii

**TABLE OF ~~AUTHORITIES~~CONTENTS (cont'd)**

**Pages**

~~3.1    INTRODUCTION ......87~~

~~3.2    UNIANIMOUS VERDICT ......88~~

~~3.3    DUTY TO DELIBERATE ......90~~

~~3.4    SOCIAL MEDIA ......91~~

~~3.5    COURT HAS NO OPINION......92~~

1    GENERAL INSTRUCTIONS ......1

    1.1    INTRODUCTION ......1

    1.2    CONSIDERATION OF EVIDENCE ......2

    1.3    THE PARTIES' CONTENTIONS ......3

    1.4    BURDEN OF PROOF ......5

    1.5    NUMBER OF WITNESSES ......7

2    CASE SPECIFIC JURY INSTRUCTIONS ......8

    2.1    SUMMARY OF ISSUES ......8

    2.2    THE CLAIMS OF A PATENT ......10

    2.3    "COMPRISING" CLAIMS ......14

    2.4    INFRINGEMENT – GENERALLY......15

    2.5    INFRINGEMENT - § 271(a)......16

    2.6    INFRINGEMENT – § 271(a) - DOCTRINE OF EQUIVALENTS......22

    2.7    INFRINGEMENT – § 271(g)......24

    2.1    INFRINGEMENT - § 271 – JOINT INFRINGEMENT ......27

    2.2    INFRINGEMENT – WILLFUL INFRINGEMENT ......29

    2.3    INFRINGEMENT DESPITE OTHER PATENTS......31

    2.4    INVALIDITY - GENERALLY ......34

    2.5    THE PERSON OF ORDINARY SKILL IN THE ART......35

    2.6    PRIOR ART – GENERALLY ......37

2.7    PRIOR ART – CONSIDERED BY UNITED STATES PATENT OFFICE ........39

2.8    INVALIDITY – OBVIOUSNESS.................................................................50

2.9    INVALIDITY – SECONDARY CONSIDERATIONS OF NONOBVIOUSNESS ...............................................................................54

2.10    INVALIDITY - LACK OF ENABLEMENT..................................................56

2.11    INVALIDITY – WRITTEN DESCRIPTION ...............................................59

2.12    PATENT DAMAGES – GENERALLY .......................................................71

2.13    PATENT DAMAGES – DATE OF COMMENCEMENT OF DAMAGES ........72

2.14    PATENT DAMAGES – REASONABLE ROYALTY .......................................74

2.15    PATENT DAMAGES – REASONABLE ROYALTY – HYPOTHETICAL NEGOTIATION DATE .........................................................78

2.16    PATENT DAMAGES – REASONABLE ROYALTY – FACTORS RELEVANT TO THE HYPOTHETICAL NEGOTIATION..............................79

2.17    PATENT DAMAGES – REASONABLE ROYALTY – TIMING .....................82

2.18    PATENT DAMAGES – REASONABLE ROYALTY – COMPARABLE AGREEMENTS.......................................................................................83

2.19    PATENT DAMAGES – REASONABLE ROYALTY – APPORTIONMENT................................................................................86

2.20    DAMAGES - DOUBTS RESOLVED AGAINST THE INFRINGER.................88

2.21    PATENT DAMAGES – REASONABLE ROYALTY – AVAILABILITY OF NON-INFRINGING ALTERNATIVES ........................................................89

3    DELIBERATIONS AND VERDICT ........................................................................93

3.1    INTRODUCTION .....................................................................................93

3.2    UNANIMOUS VERDICT..........................................................................94

3.3    DUTY TO DELIBERATE ..........................................................................96

3.4    SOCIAL MEDIA .....................................................................................97

3.5    COURT HAS NO OPINION........................................................................98

# 1    GENERAL INSTRUCTIONS

## 1.1    INTRODUCTION[2]

Members of the jury, now is the time for me to instruct you on the law that you must follow in deciding this case. Please listen very carefully to everything I say. In following my instructions, you must follow all of them, including the ones I gave you last ~~Monday~~Friday at the start of the case and the ones I have given during trial. Do not single out some and ignore others. They are all important.

You will have a written copy of these instructions and my preliminary instructions with you in the jury room for your reference during your deliberations. You will also have a verdict form, which will list the questions that you must answer to decide this case.

I will start by explaining your duties and the general rules that apply in every civil case. Then I will explain some rules that you must use in evaluating particular testimony and evidence. Then I will explain the positions of the parties and the law you will apply in this case. And last, I will explain the rules that you must follow during your deliberations in the jury room, and the possible verdicts that you may return.

---

[2] ***Source:*** Adapted from *TOT Power Control, S.L. v. Apple, Inc.*, No. 1:21-cv-01302-MN, D.I. 464 at 1 (D. Del. June 30, 2025); *United States v. Gilead*, C.A. No. 19-2103-MN, D.I. 464 at 1 (D. Del. May 8, 2023); *Purewick Corp. v. Sage Products, LLC*, C.A. No. 19-1508-MN, D.I. 314 at 1 (Apr. 1, 2022).

### 1.2    CONSIDERATION OF EVIDENCE[3]

You must make your decision based only on the evidence that you see and hear in court. Do not let rumors, suspicions, or anything else that you may see or hear outside of court influence your decision in any way.

You should use your common sense in weighing the evidence. Consider it in light of your everyday experience with people and events and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

---

[3] *Source:* Adapted from *TOT Power Control, S.L. v. Apple, Inc.*, No. 1:21-cv-01302-MN, D.I. 464 at 1 (D. Del. June 30, 2025).

### 1.3    THE PARTIES' CONTENTIONS[4]

The Plaintiffs are Harbour Antibodies BV, Harbour Antibodies HCAB BV, Erasmus University Medical Center Rotterdam, and Dr. Roger Kingdon Craig;  I will refer to them collectively as "Plaintiffs" or "Harbour."  Harbour alleges patent infringement against Defendants Teneobio and Amgen, which I will refer to collectively as "Teneobio" unless an instruction is specific to Amgen. You have heard evidence regarding the ~~patents~~patent at issue in this case: U.S. Patent ~~Nos. 9,346,877, 9,353,179,~~ No. 10,906,970, ~~and 10,993,420,~~ which ~~have~~has been referred to as ~~the '877~~the '970 Patent~~,~~ or the ~~'179~~Asserted Patent~~, the '970 Patent, and the '420 Patent, respectively.  These are collectively referred to as the "Asserted Patents." You have also heard evidence about U.S. Patent Publication No. 2013/0344057, referred to as the '057 Publication. ~~. Harbour alleges that Teneobio infringed ~~claims 1, 4, 5, and 8 of the '877 Patent, claims 1, 4, 5, and 8 of the '179 Patent,~~ claim 2 of the '970 Patent, ~~and claims 2 and 3 of the '420 Patent, collectively~~also referred to as the "Asserted ~~Claims~~Claim." Harbour also alleges that it is entitled to damages for Teneobio's infringement~~, including damages for practicing claims 1, 4, and 8 of the '057 Publication before the '877 Patent was granted~~.  Harbour also alleges that Teneobio's infringement was willful.

Teneobio denies that they have infringed the Asserted ~~Claims~~Claim and denies that Harbour is entitled to damages.  Teneobio also contends that the Asserted ~~Claims are~~Claim is invalid~~.  Amgen also contends that the various Harbour companies breached a 2013 HCAb License Agreement between Harbour Antibodies HCAb BV and Amgen, that Harbour tortiously interfered with the HCAb License Agreement, and that Harbour fraudulently induced Amgen into entering the HCAb License Agreement.  Amgen also contends that it does not infringe any of the Asserted~~

---

[4] *Source:* Adapted from *TOT Power Control, S.L. v. Apple, Inc.*, No. 1:21-cv-01302-MN, D.I. 464 at 2 (D. Del. June 30, 2025).

Patents because it holds a license to Harbour's patents.

Harbour denies that any Asserted Claim is invalid, denies that any Harbour company breached the HCAb License Agreement, denies that it tortiously interfered with the HCAb License Agreement, denies that Harbour fraudulently induced Amgen into entering the HCAb License Agreement, and denies that Amgen holds a license to Harbour's patents.Harbour denies that the Asserted Claim is invalid.

4**Error! Unknown document property name.**

### 1.4    BURDEN OF PROOF[5]

As I told you in the Preliminary Instructions, in any legal action, facts must be proven by a required standard of evidence, known as the "burden of proof." In a patent case such as this, there are two different burdens of proof. The first is called "preponderance of the evidence." The second is called "clear and convincing evidence." I will now remind you what they mean.

This is a civil case in which Harbour alleges that Teneobio have infringed ~~each~~Claim 2 of the ~~Asserted Claims~~'970 Patent. Harbour has the burden of proving infringement and, if there is infringement, the amount of monetary damages for any infringement and whether or not Teneobio's infringement was willful by a preponderance of the evidence. That means Harbour has to produce evidence that, when considered in light of all of the facts, leads you to believe that what it alleges is more likely true than not. To put it differently, if you were to put the parties' evidence on opposite sides of a scale, the evidence supporting Harbour's allegations would have to be sufficient to tip the scale in Harbour's favor. Teneobio denies that it infringes the Asserted Claim.

~~In addition to denying Harbour's claims that they infringe,~~Teneobio contends the Asserted ~~Claims are~~Claim is invalid. A party challenging the validity of patent claims has the burden of proving by clear and convincing evidence that the Asserted ~~Claims are~~Claim is invalid. That means it must produce evidence that, when considered in light of all the facts, leads you to believe that what Teneobio alleges is highly probable. Proof by clear and convincing evidence is thus a higher burden than proof by a preponderance of the evidence needed to prove infringement. Harbour denies that ~~any of~~ the Asserted ~~Claims are~~Claim is invalid.

~~With respect to Amgen's contract-based counterclaims, Amgen has the burden of proving~~

---

[5] ***Source:*** Adapted from *TOT Power Control, S.L. v. Apple, Inc.*, No. 1:21-cv-01302-MN, D.I. 464 at 2-3 (D. Del. June 30, 2025); *VB Assets, LLC v. Amazon.com Servs. LLC*, No. 1:19-cv-01410-MN, D.I. 288 at 3 (D. Del. Nov. 8, 2023).

by a preponderance of the evidence its claims of breach related to the 2013 HCAb License Agreement and tortious interference with the HCAb License Agreement. Amgen has the burden of proof of proving by clear and convincing evidence its claim that Harbour Antibodies HCAb BV fraudulently induced Amgen into entering the HCAb License Agreement. Harbour denies each of Amgen's contract-based claims.

Some of you may have heard the phrase "proof beyond a reasonable doubt." That burden is a higher burden of proof that applies only in criminal cases and has nothing to do with a civil case like this one. You should therefore not consider it in this case.

6**Error! Unknown document property name.**

### 1.5   NUMBER OF WITNESSES[6]

The weight of the evidence to prove a fact does not necessarily depend on the number of witnesses who testify. What is more important is how believable the witnesses were, and how much weight you think their testimony deserves.

---

[6] ***Source:*** Adapted from *TOT Power Control, S.L. v. Apple, Inc.*, No. 1:21-cv-01302-MN, D.I. 464 at 1 (D. Del. June 30, 2025).

**7Error! Unknown document property name.**

## 2    CASE SPECIFIC JURY INSTRUCTIONS

### 2.1    SUMMARY OF ISSUES[7]

You must decide the following issues in this case according to the instructions that I give you:

1.  Whether Harbour has proven by a preponderance of the evidence that Teneobio ~~have~~has infringed ~~claims 1, 4, 5, and 8 of the '877 Patent, claims 1, 4, 5, and 8 of the '179 Patent,~~ claim 2 of the '970 ~~Patent, and claims 2 and 3 of the '420~~ Patent.

2.  Whether Harbour has proven by a preponderance of the evidence that Teneobio has willfully infringed ~~one or more~~claim 2 of the ~~Asserted Claims~~'970 Patent.

3.  Whether Teneobio has proven by clear and convincing evidence that ~~claims 1, 4, 5, and 8 of the '877 Patent, claims 1, 4, 5, and 8 of the '179 Patent,~~ claim 2 of the '970 Patent~~, and claims 2 and 3 of the '420 Patent are~~ is invalid.

4.  If you decide that Teneobio ~~infringes any~~infringed claim 2 of the ~~Asserted Claims,~~'970 Patent and find ~~those infringed claims are~~that the claim is not invalid, the amount of any money damages to be awarded to compensate Harbour for that infringement ~~including the amount of damages, if any, for practicing claims 1, 4, and 8 of the '057 Publication before the '877 Patent was granted if Harbour has shown that Teneobio had actual knowledge of the '057 Publication.~~

5.  ~~Whether Harbour Antibodies HCAb BV breached the HCAb License Agreement with Amgen.~~

6.  ~~Whether Harbour Antibodies BV and HBM Holdings, Ltd. tortiously interfered with the HCAb License Agreement.~~

---

[7] ***Source:*** Adapted from *TOT Power Control, S.L. v. Apple, Inc.*, No. 1:21-cv-01302-MN, D.I. 464 at 3 (D. Del. June 30, 2025).

7. Whether Harbour Antibodies HCAb BV fraudulently induced Amgen into agreeing to the HCAb License Agreement.

## 2.2    THE CLAIMS OF A PATENT[8]

Before you can decide certain issues in this case, you need to understand the role of patent "claims," which are the numbered sentences at the end of a patent. The claims are important because the words of a claim define the scope of the patent right. The figures and text in the rest of the patent provide a description and/or examples of the invention and provide a context for the claims, but the claims alone define the extent of the patent's coverage. Therefore, what a patent covers depends, in turn, on what each of its claims covers.

Here, you will need to understand what ~~each of~~ the Asserted ~~Claims~~Claim covers in order to decide whether or not that claim is infringed and to decide whether or not that claim is invalid. To know what a claim covers, a claim sets forth, in words, a set of requirements. Each claim sets forth its requirements in a single sentence. The requirements of a claim are often referred to as "claim elements" or "claim limitations." The coverage of a patent is assessed claim-by-claim.  A preamble is the beginning portion of a claim.  When a preamble is limiting, the preamble is one of the elements of the patent claim.

~~This case involves two types of patent claims: independent claims and dependent claims.~~

~~An "independent claim" sets forth all of the requirements that must be met in order to be covered by that claim. Thus, it is not necessary to look at any other claim to determine what an independent claim covers.  In this case, claim 1 of the '877 Patent, claim 1 of the '179 Patent, claim 2 of the '970 Patent, and claim 3 of the '420 Patent are each independent claims.~~

~~Claims 4, 5, and 8 of the '877 Patent, claims 4, 5, and 8 of the '179 Patent and claim 2 of the '420 Patent are dependent claims. A "dependent claim" does not itself recite all of the~~

---

[8] *Source:* Adapted from *TOT Power Control, S.L. v. Apple, Inc.*, No. 1:21-cv-01302-MN, D.I. 464 at 4-6 (D. Del. June 30, 2025); *Stodge Inc. v. Attentive Mobile Inc.*, No. 1:23-cv-00087-CJB (D. Del. Aug. 28, 2025); *Magnolia Medical Techs., Inc. v. Kurin, Inc.*, C.A. No. 19-97-CFC, D.I. 448 at 8 (D. Del. Aug. 4, 2022).

requirements of the claim but refers to another claim or claims for some of its requirements. In this way, the claim "depends" on another claim. A dependent claim incorporates all of the requirements of the claim(s) to which it refers. The dependent claim then adds its own additional requirements. To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claim(s) to which it refers. A method that meets all the requirements of both the dependent claim and the claim(s) to which it refers is covered by the dependent claim.

In this case, for example, claim 4 of the '877 Patent is a dependent claim and refers back to claim 1. To determine what claim 4 covers, the words of claims 1 and 4 must be read together. As a result, claim 4 of the '877 Patent includes all requirements of claim 1 and the additional requirements specifically set forth in claim 4.

It is my role to define the terms of the claimspatent claim and to instruct you about the meaning. Therefore, as I explained to you at the start of the case, I have determined the meaning of certain claim terms and I have provided to you my definitions. You must accept my definitions of these terms in the claimsclaim as being correct. It is your job to take these definitions and apply them to the issues that you are deciding, including the issues of infringement and invalidity. You must use the same claim meaning for both your decision on infringement and your decision on invalidity.

In this case, I have determined that the preamblespreamble of claims 1, 4, 5, and 8 of the '877 Patent, claims 1, 4, 5, and 8 of the '179 Patent, claim 2 of the '970 Patent, and claims 2 and 3 of the '420 Patent are is limiting. I have also determined the meaning of certain terms in the claims of the Asserted Patents.that claim. The meanings are as follows:

| Claim Term | Meaning |
|---|---|
| "heterologous"<br><br>~~(All claims of the '877, '179, and '970 Patents)~~ | "a nucleotide sequence or locus which is not endogenous to the mammal in which it is located" |
| "$V_H$ heavy chain locus"<br><br>~~(All claims of the '877, '179, and '970 Patents)~~ | "a minimal micro-locus encoding a $V_H$ domain comprising one or more V gene segments, one or more D gene segments and one or more J gene segments, operationally linked to one or more heavy chain effector regions (each devoid of a $C_H1$ domain)" |
| ~~"$V_H$ heavy chain locus"~~<br><br>~~(All claims of the '420 Patent)~~ | ~~"an engineered locus encoding a VH domain comprising one or more VH genes . . ., one or more D segments and one or more J segments, operationally linked to one or more heavy chain effector regions (each devoid of a CH1 domain)"~~ |
| "$V_H$ binding domain"<br><br>~~(All claims of the '877, '179, and '970 Patents)~~ | "a binding portion of an expression product of a V gene segment when recombined with a D gene segment and a J gene segment" |
| ~~"antigen-specific heavy chain only antibody"~~<br><br>~~(All claims of the '179 Patent)~~ | ~~"heavy chain only antibody specific to an antigen"~~ |
| "said soluble<u>,</u> antigen-specific heavy chain only antibody"<br><br>~~(Claim 2 of the '970 Patent)~~ | "heavy chain<u>-</u>only antibody specific to an antigen" |
| ~~"heterologous"~~<br><br>~~(Claims 2 and 3 of the '420 Patent)~~<u>"soluble"</u> | ~~"a nucleotide sequence or locus which is not endogenous to the mammal in which it is located"~~<u>"remains in solution and active in physiological media through B-cell maturation to secretion, without requiring a light chain to maintain solubility"</u> |

For any claim term that I have not provided a definition, you should use that term's ordinary meaning within the context of the patent in which the claim term is used. You should not take my definition of the language of the ~~claims~~<u>claim</u> as an indication that I have a view regarding how you should decide the issues that you are being asked to decide, such as infringement and invalidity. These issues are yours to decide.

12**Error! Unknown document property name.**

### 2.3 "COMPRISING" CLAIMS[9]

When used in a patent claim, the word "comprising" means "including but not limited to" or "containing but not limited to."  When "comprising" is used in a patent claim, if you decide that an accused method includes all of the requirements of that claim, the claim is infringed, even if the accused method contains additional elements.

---

[9] *Source:* Adapted from *Continuous Composites, Inc. v. Markforged, Inc.*, No. 1:21-cv-00998-MN, D.I. 309 at 5 (D. Del. Apr. 11, 2024).

## 2.4    INFRINGEMENT – GENERALLY[10]

I will now instruct you how to decide whether or not Harbour has proven that Teneobio has infringed ~~claims 1, 4, 5, and 8 of the '877 Patent, claims 1, 4, 5, and 8 of the '179 Patent, claim 2 of the '970 Patent, and claims 2 and 3 of the '420 Patent. Infringement is assessed on a claim-by-claim basis. Therefore, there may be infringement as to one claim but no infringement as to another~~<u>claim 2 of the '970 Patent</u>.

In this case, there are two ways a claim may be infringed: (1) infringement through the use, sale, or offer for sale of the patent methods under 35 U.S.C. § 271(a); and (2) infringement through the use, sale, or offer for sale of a product made by the patented methods under 35 U.S.C. § 271(g). ~~**[Plaintiffs' Proposal:**~~ In this case, Harbour has alleged that Defendants infringe ~~claims 1, 4, 5, and 8 of the '877 Patent, claims 1, 4, 5, and 8 of the '179 Patent,~~ claim 2 of the '970 Patent~~, and claims 2 and 3 of the '420 Patent under both of these statutes.]~~[11]<u>.</u>

In order to prove infringement, Harbour must prove that the requirements for one or ~~more~~ <u>both of these</u> types of ~~these~~ infringement are met by a preponderance of the evidence.

I will now explain each of these types of infringement at issue in the case in more detail.

---

[10] ***Source:*** Adapted from *Continuous Composites, Inc. v. Markforged, Inc.*, No. 1:21-cv-00998-MN, D.I. 309 at 6 (D. Del. Apr. 11, 2024).

[11] ~~**Plaintiffs' Position**: Plaintiffs' proposal is not redundant because it specifies that the allegations of infringement relate to both 271(a) and 271(g). This is consistent with final jury instructions in prior case. *See, e.g., Continuous Composites, Inc. v. Markforged, Inc.*, No. 1:21-cv-00998-MN, D.I. 309 at 6 (D. Del. Apr. 11, 2024); *Purewick Corp. v. Sage Prods., LLC*, No. 1:19-cv-01508-MN, D.I. 314 at 16 (D. Del. Apr. 1, 2022); *U.S. v. Gilead Sciences, Inc.*, No. 1:19-cv-02103-MN, D.I. 464 at 8 (D. Del. May 8, 2023).~~
~~**Defendants' Position:** Repeating the asserted claims is unnecessary and redundant.~~

### 2.5   INFRINGEMENT - § 271(a)[12]

Harbour contends that Teneobio's use~~, sale, and offer for sale of~~ **[Plaintiffs' Proposal:** of the UniRat Platform to produce heavy chain-only antibodies, ~~and the resulting heavy chain-only antibodies]~~[13] ~~[Defendants' Proposal:  UniRat and UniRat's production of heavy chain-only antibodies]~~[14] ~~(the "UniRat Platform"), directly infringe the Asserted Claims.  To prove direct~~infringed the Asserted Claim. For infringement, you must determine whether Harbour has proven that **[Plaintiffs' Proposal**~~:  Teneobio's use, sale, and/or offer for sale of the UniRat Platform directly infringed the Asserted Claims]~~[15] ~~[**Defendants' Proposal:**~~Teneobio used without

---

[12] *Source:* Adapted from *U.S. v. Gilead Sciences, Inc.*, No. 1:19-cv-02103-MN, D.I. 464 at 9-10 (D. Del. May 8, 2023); *TOT Power Control, S.L. v. Apple, Inc.*, No. 1:21-cv-01302-MN, D.I. 464 at 7 (D. Del. June 30, 2025).

[13] ~~**Plaintiffs' Position**: Plaintiffs' proposal is consistent with what Plaintiffs have accused of infringing throughout this case, which is Defendants' use of the UniRat platform and use of the resulting heavy chain-only antibodies.  Defendants' proposal is incorrect and inconsistent with both the claim language of the Asserted Patents and Plaintiffs' accusations.  That is, Defendants' proposal excludes the "cloning" and "producing" claim limitations, which both occur after the "UniRat's production of heavy chain-only antibodies" and were performed by Defendants as part of their use of the UniRat platform.  The "resulting heavy chain-only antibodies" language is required to capture Plaintiffs' allegations that Defendants infringed under § 271(g).  The Court should reject Defendants' attempt to mischaracterize the accused product in a way that Defendants believe benefits their defenses.~~

[14] ~~**Defendants' Position:** Defendants' proposal tracks the claim language of Harbour's Asserted Claims.  The Asserted Patents are related to methods of producing heavy chain-only antibodies ("HCAbs") and it is any purported production of infringing HCAbs by UniRat that would infringe Harbour's Asserted Claims, not specifically any "resulting heavy chain-only antibodies."~~

[15] ~~**Plaintiffs' Position**: Plaintiffs' infringement theories in this case are not limited to "use," but also include Defendants' sale and/or offer for sale of the UniRat Platform and resulting heavy chain-only antibodies. *See TOT Power Control, S.L. v. Apple, Inc.*, No. 1:21-cv-01302-MN, D.I. 464 at 7 (D. Del. June 30, 2025); *Continuous Composites, Inc. v. Markforged, Inc.*, No. 1:21-cv-00998-MN, D.I. 309 at 7 (D. Del. Apr. 11, 2024); *TrustID, Inc. v. Next Caller Inc.*, C.A. No. 18-172-MN, D.I. 295 at 19 (D. Del. July 16, 2021).~~

~~**Defendants' Position**:  Plaintiffs' instruction is circular, as it contends that to find infringement, the jury must determine whether Plaintiffs have proved infringement.  Further, Plaintiffs instruction is incorrect as a matter of law.  A sale or offer for sale of the UniRat Platform cannot be direct infringement of the method claims.  "The law is unequivocal that the sale of equipment to perform a process is not a sale of the process within the meaning of section 271(a)." *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 773 (Fed. Cir. 1993).~~

---

16**Error! Unknown document property name.**

authority the method of the Asserted ClaimsClaim in the United States], either alone or in conjunction with and through the direction and control of third parties during the term of the '970 Patent.

As I just told you, you must To determine, separately for each Asserted Claim, whether or not there is infringement.

To determine direct infringement, you must compare the actions of a party, whether performed alone or in conjunction with and through the direction and control of third parties, to eachthe Asserted Claim to determine whether those actions satisfy each and every one of the requirements of that claim. A patent claim is infringed under § 271(a) only if the actions [**Defendants' Proposal**: performed in the United States][16] meet each and every limitation in that

---

[16] **Plaintiffs' Position**: Plaintiffs' proposed instruction is adapted from the following jury examples, none of which include Defendants' proposed language: *TOT Power Control, S.L. v. Apple, Inc.*, No. 1:21-cv-01302-MN, D.I. 464 at 7 (D. Del. June 30, 2025); *U.S. v. Gilead Sciences, Inc.*, No. 1:19-cv-02103-MN, D.I. 464 at 9 (D. Del. May 8, 2023); *Continuous Composites, Inc. v. Markforged, Inc.*, No. 1:21-cv-00998-MN, D.I. 309 at 7 (D. Del. Apr. 11, 2024); *TrackTime, LLC v. Amazon.com Servs. LLC*, No. 1:18-cv-01518-MN, D.I. 306 at 8 (D. Del. Sept. 19, 2023). Defendants' proposal as worded risks improperly causing the jury to believe that a patent claim cannot be infringed at all if a step is performed outside the United States. Defendants' proposed instruction is in direct conflict with Plaintiffs', but Plaintiffs are asserting a claim for infringement allegations under § 271(g).) against Defendants for practicing the patented method outside the United States. To the extent the Court is inclined to include "performed in the United States" in this instruction, Plaintiffs propose including immediately after "under § 271(a)" only to avoid the conflict with Plaintiffs' § 271(g) theories.
**Defendants' Position**: Defendants' proposed instruction is an accurate statement of law that is necessary to ensure the jury does not incorrectly believe that Plaintiffs can prove infringement under § 271(a) by pointing to acts and conduct that occurred outside the United States. "Joint infringement of [a] method claim could only occur if all the steps of the method are performed domestically." *Trs. of Columbia Univ. in City of N.Y. v. Gen Digital Inc.*, 169 F.4th 1320, 1339 (Fed. Cir. 2026); *NTP, Inc. v. Rsch. In Motion, Ltd.*, 418 F.3d 1282, 1314, 1318 (Fed. Cir. 2005) ("Section 271(a) is only actionable against patent infringement that occurs within the United States" and "We therefore hold that a process cannot be used 'within' the United States as required by section 271(a) unless each of the steps is performed within this country"), *abrogated in part on other grounds by Zoltek Corp. v. United States*, 672 F.3d 1309 (Fed. Cir. 2012) (en banc). This is an instruction specifically on § 271(a), so Plaintiffs' concerns regarding their infringement allegations under § 271(g) are unfounded.

17**Error! Unknown document property name.**

patent claim. If one or more steps recited in a claim was not performed, there is no infringement.

[**Plaintiffs' Proposal**: The presence of additional steps in an accused method beyond those claimed, however, does not avoid infringement, as long as every claimed step is performed.][17]

[**Plaintiffs' Proposal:** In determining whether Teneobio infringed, you should not compare Teneobio's actions to either the patent specification or to any figures in the patent.][18]

[**Defendants' Proposal:** If you find that an independent claim is not infringed, there cannot be infringement of any dependent claim that refers directly or indirectly to that independent claim. On the other hand, if you find that an independent claim has been infringed, you must still decide, separately, whether the method performed meets the additional requirements of any claims that depend from the independent claim, thus, whether those dependent claims have also been

---

[17] **Plaintiffs' Position**: Plaintiffs' proposed instruction is an accurate statement of law that is necessary to ensure the jury does not incorrectly believe that Defendants can avoid infringement by performing additional method steps.  This instruction is especially relevant in this case where Defendants' use of the UniRat platform includes additional steps beyond the limitations of the Asserted Claims and figure, which Defendants have presented to feature prominentlythe jury in Defendants'their trial presentation to rebut damages.  Adapted from *TOT Power Control, S.L. v. Apple, Inc.*, No. 1:21-cv-01302-MN, D.I. 464 at 7 (D. Del. June 30, 2025); *U.S. v. Gilead Sciences, Inc.*, No. 1:19-cv-02103-MN, D.I. 464 at 9 (D. Del. May 8, 2023); *Purewick Corp. v. Sage Prods., LLC*, No. 1:19-cv-01508-MN, D.I. 314 at 17 (D. Del. Apr. 1, 2022); *TrackTime, LLC v. Amazon.com Servs. LLC*, No. 1:18-cv-01518-MN, D.I. 306 at 8 (D. Del. Sept. 19, 2023); *TrustID, Inc. v. Next Caller Inc.*, C.A. No. 18-172-MN, D.I. 295 at 19 (D. Del. July 16, 2021).
**Defendants' Position**:  Plaintiffs' proposed instruction risks confusing the jury and lessening Plaintiffs' burden of proof.  Defendants are not contending that they do not infringe under § 271(a) by performing additional method steps.  Providing this instruction to the jury may lead jurors to believe that if Defendants are not relying on additional method steps, then Defendants are conceding infringement.
[18] **Plaintiffs' Position**:  Plaintiffs' proposed instruction is an accurate statement of the law, and is relevant to an objection raised at side-bar during the questioning of Plaintiffs' expert witness. [Trial Day 1 Rough Tr. at 395:23-396:25].  Adapted from *Siemens Mobility, Inc. v. Westinghouse Air Brake Technologies*, No. 1:16-cv-00284, D.I. 442 at 22 (D. Del. Jan. 24, 2019); *Express Mobile, Inc. v. GoDaddy.Com, LLC*, 1:19-cv-01937, D.I. 458 at 17 (D. Del. Nov. 6, 2025); *GreatBatch LTD. v. AVX Corp.*, 1:13-cv-723, D.I. 1027 at 21 (D. Del. Aug. 10, 2017).
**Defendants' Position:**  Plaintiffs' proposed addition is unfounded.  During the side bar, the Court denied Plaintiffs' request for a curative instruction on this issue.  Trial Day 1 Rough Tr. at 396:19-25.

18**Error! Unknown document property name.**

infringed.]¹⁹

You may find ~~direct~~ infringement based on one instance of the claimed method being performed by a party~~, whether performed alone or in conjunction with and through the direction and control of third parties.~~. Proof of ~~direct~~ infringement may be based on circumstantial evidence.

One may ~~directly~~ infringe a patent unknowingly – that is, without knowledge that what one is doing is an infringement of the patent. One can be a ~~direct~~ infringer of a patent even if that person believes in good faith that he is not infringing any patent or even if he does not know of the patent.

---

¹⁹ **Plaintiffs' Position:** ~~Defendants have no identified any jury instructions within this District that includes this language in Final Jury Instructions.  Additionally, Defendants' proposed instruction is redundant in light of other agreed-upon language in this instruction, in particular, the discussions regarding the relationship between independent and dependent claims in Section 2.2.~~
**Defendants' Position:** ~~Plaintiffs have asserted both independent and dependent claims in this action.  Defendants' instruction is an accurate statement of law and ensures that the jurors do not mistakenly conclude either that infringement of an independent claim necessarily results in infringement of a dependent claim or that meeting only the further limitation(s) of the dependent claim is sufficient to prove infringement of a dependent claim.  Defendants' instruction is adapted from *Federal Circuit Bar Association Model Patent Jury Instructions*, § B.3.1a Direct Infringement By "Literal Infringement" (May 2020).~~

20**Error! Unknown document property name.**

## 2.6    INFRINGEMENT - § 271(a) – JOINT INFRINGEMENT[20]

Direct infringement occurs where all steps of a claimed method are performed by or are attributable to a single actor. Where more than one actor is involved in practicing the steps of a claimed method, you must determine whether any steps performed by a third party are attributable to another party (i.e., Teneobio) such that a single party is responsible for the infringement. In this case, any claim step performed by a third party is attributable to Teneobio if Teneobio directs or controls the third party's performance of that claim step.

Here, Harbour alleges that if Teneobio does not perform all steps of the claimed methods of the Asserted Patents, they are still liable for infringement because Teneobio and Amgen jointly infringe the asserted claims of the Asserted Patents with third parties known as contract research organizations or CROs.

To prove joint infringement of the asserted claim of the Asserted Patents, Harbour must prove by a preponderance of the evidence (1) that all steps of the claimed method were performed [**Defendants' Proposal**: in the United States][21] and (2) that the acts of the contract research organizations are attributable to Teneobio because Teneobio directs or controls the acts of the contract research organizations.

---

[20] *Source:* Adapted from *U.S. v. Gilead Sciences, Inc.*, No. 1:19-cv-02103-MN, D.I. 464 at 11-12 (D. Del. May 8, 2023).

[21] **Plaintiffs' Position**: Defendants' proposed instruction is adapted from the cited *Gilead Sciences* case, which does not include their proposed language. As above, *see* n. 17, *supra*, Defendants' proposal as worded risks improperly causing the jury to believe that a patent claim cannot be infringed at all if a step is performed outside the United States, which directly conflicts with the law as it relates to §271(g).
**Defendants' Position**: As above, *see* n.16, *supra*, Defendants' proposed instruction is an accurate statement of law that is necessary to ensure the jury does not incorrectly believe that Plaintiffs can prove infringement under § 271(a) by pointing to acts and conduct that occurred outside the United States. This instruction, too, is specifically under § 271(a), making Plaintiffs' concerns regarding their infringement allegations under § 271(g) misplaced.

21**Error! Unknown document property name.**

2.72.6    ~~To prove that Teneobio controlled the acts of a contract research organization, Harbour must prove either that (1) the contract research organizations is the agent of Teneobio or is contractually obligated to Teneobio to carry out the claimed step or steps, or (2) the contract research organizations performed the claim step or steps because Teneobio conditioned participation in an activity or receipt of a benefit upon performance of a step or steps of the claimed method and established the manner or timing of that performance.~~**INFRINGEMENT – § 271(a) - DOCTRINE OF EQUIVALENTS**[22]

If any elements in ~~an~~the Asserted Claim are not "literally" met according to my previous instruction, there may still be infringement if the use of the UniRat Platform has an equivalent for each of the missing claim elements. This is called infringement under the Doctrine of Equivalents.

As with literal infringement, application of the doctrine of equivalents is on an element-by-element basis, meaning that for a method to infringe an asserted claim under the doctrine of equivalents, the requirement of the asserted claim that is not literally found in the use of the UniRat Platform must be present by equivalence.

One way of showing that something is an equivalent of an element of a patent claim is to demonstrate that it performs substantially the same function, works in substantially the same way, to achieve substantially the same result as the claim element. Another way of showing that something is an equivalent of an element of a patent claim is to demonstrate that it is only insubstantially different from the claimed element. Under that test, an element in the accused method is equivalent to a claim limitation if the only differences between the two are insubstantial.

[**Plaintiffs' Proposal**:  Also you may consider the interchangeability of ~~the structure of~~a step in the accused ~~product~~method with the claimed element. Known interchangeability is evidence that the change is insubstantial, and therefore an infringement. In order for the ~~structure~~

---

[22] ***Source:*** Adapted from *TOT Power Control, S.L. v. Apple, Inc.*, No. 1:21-cv-01302-MN, D.I. 464 at 8-9 (D. Del. June 30, 2025); *Natera, Inc. v. ArcherDX, Inc. et al.*, No. 1:20-cv-00125-GBW, D.I. 605 at 23 (D. Del. May 12, 2023).

or action to be considered interchangeable, the claim element must have been known at the time

of the alleged infringement to a person having ordinary skill in the field of technology of the patent.

Interchangeability at the present time is not sufficient.][23]

---

[23] **Plaintiffs' Position**: Plaintiffs' instruction is an accurate statement of law that is necessary to inform the jury of what the insubstantial differences test means.  For example, Plaintiffs' technical expert provides doctrinetestified about elements of equivalents theories under the distinct FWRclaim being insubstantially different from the accused UniRat platform, and insubstantial differences tests, and the jury should be instructed on both theoriesaccordingly.  *See Mylan Institutional LLC v. Aurobindo Pharma Ltd.*, 857 F.3d 858, 869 (Fed. Cir. 2017).  Adapted from *TOT Power Control, S.L. v. Apple, Inc.*, No. 1:21-cv-01302-MN, D.I. 464 at 8-9 (D. Del. June 30, 2025).  Contrary to Defendants' contention, interchangeability is present in and relevant to Plaintiffs' technical expert's opinions.

**Defendants' Position**:  Plaintiffs' instruction refers to "interchangeability" which is not part of the opinion on "insubstantial differences" that Plaintiffs' technical expert has provided.  Moreover, contrary to the suggestion in Plaintiffs' position, there is no discussion of "interchangeability" in *Mylan Institutional*.  Instructions regarding "interchangeability" are more appropriate for a mechanical or electrical apparatus claim, rather than a method claim.

23**Error! Unknown document property name.**

### ~~2.8~~2.7    INFRINGEMENT – § 271(g)[24]

Harbour also alleges that Teneobio infringed the Asserted ~~Patents~~Patent under §271(g) of the Patent Act by using~~, selling, or offering for sale~~ heavy chain only antibodies and products that include such heavy chain only antibodies that were made by use of the UniRat Platform.

Teneobio is liable for ~~direct~~ infringement of ~~a claim~~the Asserted Claim if Harbour proves by a preponderance of the evidence that Teneobio, without Harbour's authorization, ~~imported, offered to sell, sold, or~~ used within the United States a product which was made **[Plaintiffs' Proposal**: by a process that]**[25]**; [**Defendants' Proposal**: outside of the United States during the time the Asserted ~~Claims are~~Claim was in force by a process that, if performed in the United

---

[24] ***Source: Bio-Tech. Gen. Corp. v. Genentech, Inc.***, 80 F.3d 1553, 1560 (Fed. Cir. 1996); *AIPLA Model Patent Jury Instructions* at 21-22 (Aug. 18, 2025).

[25] **Plaintiffs' Position**: Defendants' instruction is attempting to insert a requirement that a product must be made outside of the United States and imported for § 271(g) to apply.  The law is clear that there is no such requirement.  *See, e.g., Genentech, Inc. v. Amgen Inc.*, 2020 WL 708433, at *2 (D. Del. Feb. 12, 2020) ("[I]mportation is not required to established infringement liability under § 271(g)."); *Kyowa Hakka Bio, Co. v. Ajinomoto Co.*, 2018 WL 834583, at *8 (D. Del. Feb. 12, 2018) (finding that § 271(g) "establishes liability for whomever, without authority, ***either*** (a) imports into the United States ***or*** (b) offers to sell, sells, or uses within the United States, a product which is made by a process patented in the United States.") (emphasis added). Defendants' cited authority, *AIPLA Model Patent Jury Instructions*, does not require that a product be made outside of the United States for § 271(g) to apply. *See AIPLA Model Patent Jury Instructions* at 21-22 (Aug. 18, 2025).  Each of the cases cited by Defendants turn on the fact that there was a remedy available to Plaintiffs in the United States under § 271(a) for Defendants' infringement because the method was being performed in the United States. That is not true here and § 271(g) appropriately captures Defendants' conduct where one or more steps of the method were performed outside of the United States.  ~~The Court should reject Defendants' attempt to argue summary judgment in footnotes related to final jury instructions.~~
**Defendants' Position**: The law is not as clear as Plaintiffs claim, and Defendants are supported by other cases in this District that analyzed the legislative history underpinning the enactment of § 271(g).  Contrary to Plaintiffs' citations, other courts in this District have "decline[d] . . . to apply § 271(g) to domestically-manufactured goods." *Asahi Glass Co., Ltd. v. Guardian Indus. Corp.*, 813 F. Supp. 2d 602, 614 (D. Del. 2011) ("The rationale is straightforward:  Congress recognized that § 271(g) did not have to address unauthorized domestic uses of patented processes, because there are already remedies for such conduct (under 35 U.S.C. § 271(a))."); *see also Monsanto Co. v. Syngenta Seeds, Inc.*, 431 F. Supp. 2d 482, 487 (D. Del. 2006) (same), *aff'd on other grounds*, 503 F.3d 1352 (Fed. Cir. 2007).

States,] would infringe the Asserted ~~Claims~~Claim literally or under the doctrine of equivalents. You must decide whether the evidence presented at trial establishes that the heavy chain only antibodies and products that include such heavy chain only antibodies used ~~, sold, or offered for sale~~ by Defendants was "made by" the claimed process~~.~~ [**Defendants' Proposal:** during the term of the Asserted Patent].  However, if the product has been materially changed by an additional process or the product has become a trivial and nonessential component of another product, you must find  Teneobio did not infringe the Asserted ~~Patents~~Patent under this allegation.[26] [**Plaintiffs' Proposal**: For a product to have been materially changed, there must be a real difference between the product that was used, sold, offered for sale within the United States compared to the product that was produced by a method covered by the Asserted ~~Claims~~Claim.][27]

Infringement under §271(g) does not require that a single entity perform the patented process.

---

[26] Adapted from *Federal Circuit Bar Association Model Patent Jury Instructions*, § B.3.3 at 29 (May 2020)

[27] **Plaintiffs' Position:** Plaintiffs' instruction is an accurate statement of law that is necessary to provide the jury the context for what it means for something to be "materially changed."  In particular, the Federal Circuit explained that "materially changed" "requires, at a minimum, that there be a real difference between the product imported, offered for sale, sold, or used in the United States and the products produced by the patented process." *Bio-Tech. Gen. Corp. v. Genentech, Inc.*, 80 F.3d 1553, 1560 (Fed. Cir. 1996).  The jury should be instructed on this explanation to enable them to make their determination.

**Defendants' Position:** Plaintiffs' proposal is unnecessary and superfluous, and Plaintiffs cite no jury instructions in this District or accepted model where this language has been included.  The instruction as presented speaks for itself and accurately tells the jury that the change must be material.  As an example, in the three jury instructions Defendants have been able to identify using "materially changed" language, none append Plaintiffs' proposal. *See Phenix Longhorn, LLC v. AU Optronics Corp.*, No. 23-cv-477-RWS, D.I. 480 at 20 (E.D. Tex. Jan. 23, 2026); *Sorrell Holdings LLC v. Infinity Headwear & Apparel, LLC*, No. 16-cv-4019-BAB, D.I. 205 at 7 (W.D. Ark. May 10, 2022); *Eagle View Techs., Inc. v. Xactware Solutions, Inc.*, Civ. No. 15-7025-RMB, D.I. 794 at 35 (D.N.J. Sept. 26, 2019).  Plaintiffs' addition has the same issues discussed above related to sales and offers for sale.

25**Error! Unknown document property name.**

26**Error! Unknown document property name.**

## 2.1    INFRINGEMENT - § 271 – JOINT INFRINGEMENT

Direct infringement occurs where all steps of a claimed method are performed by or are attributable to a single actor. Where more than one actor is involved in practicing the steps of a claimed method, you must determine whether any steps performed by a third party are attributable to another party (i.e., Teneobio) such that a single party is responsible for the infringement. In this case, any claim step performed by a third party is attributable to Teneobio if Teneobio directs or controls the third party's performance of that claim step.

Here, Harbour alleges that if Teneobio does not perform all steps of the claimed method of the Asserted Patent, they are still liable for infringement because Teneobio and Amgen jointly infringe the Asserted Claim with third parties known as contract research organizations or CROs.

To prove joint infringement of the Asserted Claim, Harbour must prove by a preponderance of the evidence (1) that all steps of the claimed method were performed [**Defendants' Proposal**: in the United States][28] and (2) that the acts of the contract research organizations are attributable to Teneobio because Teneobio directs or controls the acts of the contract research organizations.

To prove that Teneobio controlled the acts of a contract research organization, Harbour must prove either that (1) the contract research organizations is the agent of Teneobio or is contractually obligated to Teneobio to carry out the claimed step or steps, or (2) the contract research organizations performed the claim step or steps because Teneobio conditioned

---

[28] **Plaintiffs' Position**: Defendants' proposed instruction is adapted from the cited *Gilead Sciences* case, which does not include their proposed language. As above, *see* n. 13, *supra*, Defendants' proposal as worded risks improperly causing the jury to believe that a patent claim cannot be infringed at all if a step is performed outside the United States, which directly conflicts with the law as it relates to §271(g).
**Defendants' Position**: As above, *see* n.13, *supra*, Defendants' proposed instruction is an accurate statement of law that is necessary to ensure the jury does not incorrectly believe that Plaintiffs can prove infringement under § 271(a) by pointing to acts and conduct that occurred outside the United States. This instruction, too, is specifically under § 271(a), making Plaintiffs' concerns regarding their infringement allegations under § 271(g) misplaced.

27**Error! Unknown document property name.**

participation in an activity or receipt of a benefit upon performance of a step or steps of the claimed method and established the manner or timing of that performance.

### 2.92.2    INFRINGEMENT – WILLFUL INFRINGEMENT[29]

In this case, Harbour argues that Teneobio willfully infringed ~~one or more of~~ the Asserted ~~Claims~~Claim.  If you find that Teneobio infringed ~~one or more~~the Asserted ~~Claims~~Claim, then you must also determine whether or not such infringement was willful.

To show that infringement was willful, Harbour must prove by a preponderance of the evidence that Teneobio knew of the Asserted ~~Patents~~Patent and intentionally infringed ~~at least one~~the Asserted Claim of ~~those~~the Asserted ~~Patents~~Patent. You may not find that infringement was willful merely because Teneobio knew about the Asserted ~~Patents~~Patent, without more. To show willfulness, you must find that Teneobio has engaged in conduct evidencing deliberate or reckless disregard for Harbour's patent rights. In determining whether Harbour has proven that Teneobio's infringement was willful, you must consider all of the circumstances and assess Teneobio's knowledge at the time the challenged conduct occurred, including: whether or not Teneobio acted consistently with the standards of behavior for its industry; whether Teneobio intentionally copied the patented technology; whether Teneobio knew or should have known, that its conduct involved an unreasonable risk of infringement; and whether Teneobio had a reasonable belief that its actions did not infringe or that the patent was invalid.

[**Plaintiffs' Proposal**: Under the law, to prove that a defendant knows something, a plaintiff must show actual knowledge or willful blindness on the part of the defendant. A defendant cannot avoid liability by deliberately shielding itself from clear evidence of critical facts that are strongly suggested by the circumstances. A defendant is willfully blind to a fact if, one, it subjectively believes that there's a high probability that the facts exists; and, two, the defendant

---

[29] *Source:* Adapted from *VB Assets, LLC v. Amazon.com Servs. LLC*, No. 1:19-cv-01410-MN, D.I. 288 at 9 (D. Del. Nov. 8, 2023); *International Business Machines Corporation, v. Zynga Inc.*, No. 1:22-cv-590-GBW, Trial Tr. at 1285:14-1286:25 (D. Del. Sept. 13, 2024).

took deliberate actions to avoid learning of that fact.][30]If you determine that any infringement was willful, you may not allow that decision to affect the amount of any damages award you give for infringement. If you find willfulness, I will take that into account later.

---

[30] **Plaintiffs' Position**: Plaintiffs' instruction is an accurate statement of law that clarifies for the jury that knowledge for the purpose of willfulness can be shown by willful blindness, and to further explain what willful blindness means. The instruction is adapted from *International Business Machines Corporation, v. Zynga Inc.*, No. 1:22-cv-590-GBW, Trial Tr. at 1285:14-1286:25 (D. Del. Sept. 13, 2024), and specifically related to willfulness, not induced infringement. The trial testimony of at least Dr. Chadwick King supports a jury finding of willfulness based on willful blindness. [Trial Day 2 Rough Tr. at 577:22-578:2].

**Defendants' Position:** Plaintiffs' instruction is an inaccurate statement of law. Plaintiffs have not alleged willful blindness in this case. Any possible benefit to including this instruction is outweighed by the significant risk of juror confusion with respect to which "willful" issue they are considering. The language Plaintiffs proposed comes principally from instructions that are almost exclusively provided regarding the intent element of induced infringement. *See, e.g.*, *U.S. v. Gilead Sciences, Inc.*, No. 1:19-cv-02103-MN, D.I. 464 at 13 (D. Del. May 8, 2023). Moreover, Plaintiffs' instruction risks confusing the jury into believing that willful blindness is sufficient to show willfulness. In the rare instances where a court has concluded that willful blindness may be relevant to the question of willful infringement, "it only substitutes for actual knowledge, as opposed to egregious behavior" and is "not by itself sufficient to show egregious behavior." *Ansell Healthcare Prods. LLC v. Reckitt Benckiser LLC*, C.A. No. 15-915-RGA, 2018 WL 620968, at *7 (D. Del. Jan. 30, 2018). If the Court determines to adopt Plaintiffs' position, Defendants respectfully request the Court add the language from *Ansell Healthcare* to Plaintiffs' proposed instruction.

30**Error! Unknown document property name.**

[**Plaintiffs Proposal:**

**2.102.3    INFRINGEMENT DESPITE OTHER PATENTS**

You may hear evidence that Defendants in this case own other patents and also use their own technology in those other patents. Ownership of other patents is not a defense to patent infringement. Defendants can still infringe the Asserted ~~Patents~~Patent even if they have their own patents in the same area.] [31, 32]

---

[31] **Plaintiffs' Position**: Plaintiffs' proposal is adapted from *EIS, Inc. v. Novoluto GmbH*, No. 1:19-cv-01227-GBW, D.I. 662 at 52 (D. Del. Sept. 15, 2023); *TwinStrand Biosciences, Inc. v. Guardant Health, Inc.*, No. 1:21-cv-01126-GBW, D.I. 494 at 26 (D. Del. Nov. 14, 2023); *Persawvere, Inc. v. Milwaukee Elec. Tool, Corp.*, No. 1:21-cv-00400-GBW, D.I. 240 at 29 (D. Del. Dec. 11, 2023) and provides clarity to the jury that having patents does not mean that Defendants do not infringe. ~~The proposal is particularly relevant in this case where, months after the deadlines for fact discovery, expert discovery, dispositive motions, and motions *in limine*, Defendants added to their exhibit list an unproduced patent that they apparently intend to use as part of their trial presentation. If Defendants thought that this patent was relevant to their equivalents defense, they should have timely produced it in the case and had their experts opine as to its relevance. They did not. Accordingly, Plaintiffs intend to vigorously object to this irrelevant, late produced patent being used at trial, but Defendants' late attempt to inject this patent into the case at the 11th hour underscores the need for this instruction.~~ The proposal is relevant in this case where the jury has heard about innovation by Teneobio.

[32] **Defendants' Position**: Including this instruction risks mistakenly shifting the burden of proving infringement onto Defendants and suggesting to the jury that if Defendants did not make reference to their own patents then Defendants must have infringed. ~~Moreover, the existence of patents on the accused product is relevant to the question of infringement under the doctrine of equivalents. See, e.g., Zygo Corp. v. Wyko Corp., 79 F.3d 1563, 1570 (Fed. Cir. 1996) ("The nonobviousness of the accused device, evidenced by the grant of a United States patent, is relevant to the issue of whether the change therein is substantial."). Plaintiffs' instruction thus further risks encouraging the jury to ignore relevant evidence of noninfringement under the doctrine of equivalents.~~

**2.11   LICENSE**[33]

Amgen asserts that it has a license to the Asserted Patents that protects it from Harbour's claims of infringement.  Amgen contends that plaintiff Harbour Antibodies HCAb BV granted the license to Amgen in the HCAb License Agreement effective as of December 8, 2011.  Harbour asserts that Amgen terminated the HCAb License Agreement on November 2, 2017 and denies that Amgen has a license to the Asserted Patents for its use of the UniRat Platform.

[**Defendants' Proposal:** Amgen contends that the license to Harbour Technology granted by Harbour Antibodies HCAb BV in Section 2.1(b) of the HCAb License Agreement survived Amgen's termination of the HCAb License Agreement.  Harbour disagrees with Amgen and contends that Sections 2.1(a) and 2.1(b) of the HCAb License Agreement do not survive Amgen's termination due to Amgen's failure to make all required payments under the license agreement.][34]

[**Plaintiffs' Proposal:** In determining whether Amgen has a license to the Asserted Patents after termination of the HCAb License Agreement and, if so, whether Amgen's use of the UniRat Platform is covered by the HCAb License Agreement you must interpret the HCAb License

---

[33] Adapted from *Acceleration Bay LLC v. Amazon Web Services, Inc.*, C.A. No. 22-904-RGA-SRF, D.I. 283 at 9 (Sept. 27, 2024); *Roche Diagnostics Corp. v. Meso Scale Diagnostics*, C.A. No. 17-189-LPS-CJB, D.I. 274 at 34 (Nov. 25, 2019); *Arendi SARL v. Google LLC*, C.A. No. 13-919-JLH, D.I. 526 at 36–37 (May 2, 2023).

[34] **Plaintiffs' Position:** Defendants' instruction is based on its incorrect interpretation of the HCAb License Agreement and is attempting to instruct the jury on the parties' disputed scope of the HCAb License Agreement.  *See* D.I. 481 at 13-18.  But Defendants' have argued that the scope of the HCAb License Agreement is unambiguous, and therefore, a matter of law for the Court to decide.  *See* D.I. 434 at 12-17; *Consol. Rest. Operations, Inc. v. Westport Ins. Corp.*, 41 N.Y.3d 415, 426 (2024).  Accordingly, by their own admission, Defendants' incorrect assertions about the scope of the HCAb License Agreement is irrelevant to the issues the jury is going to be asked to decide.  Notably, Defendants' instruction presupposes that the granted license covered their use of the UniRat platform, which is hotly contested in this case.  To the extent the Court allows Defendants to instruct the jury about the disputed scope of the HCAb License Agreement, both parties' positions should be included in the instruction.  As currently written, Defendants' proposed instruction incorrect asserts Plaintiffs position.  The Antibody license in Section 2.1(b) does not survive termination because it is contingent on "all payments in Section 3," which Amgen did not make.

32**Error! Unknown document property name.**

Agreement to decide what Harbour and Amgen intended to agree upon. The best evidence of what Harbour and Amgen intended is the words they used in the agreement. In evaluating the words in the agreement, you should not consider particular words in isolation but should consider the agreement as a whole in light of the overall intention of the parties to the agreement. You may also consider other evidence presented at trial regarding the intent of the parties to the agreement.][35]

Amgen has the burden to prove its license defense by a preponderance of the evidence. If you decide that Amgen has a license to the Asserted Patents from the HCAb License Agreement and that license extends to its use of the UniRat Platform, Amgen would not be liable for infringement of the Asserted Patents. **[Plaintiffs' Proposal:** Even if you decide that Amgen's accused conduct is licensed under the HCAb License Agreement, this is not a defense to Teneobio Inc.'s accused conduct in this case.][36]

---

[35] **Source**: Adapted from *Arendi SARL v. Google LLC*, C.A. No. 13-919 JLH, D.I. 526 at 36-37 (May 2, 2023).
**Defendants' Position:** Plaintiffs' proposal, unlike Defendants', pre-supposes that the HCAb License Agreement is ambiguous such that a jury must interpret the contract. Defendants' contend that the HCAb License Agreement is not ambiguous and speaks for itself such that a jury would not have to interpret the agreement, thus Plaintiff's proposal is unnecessary and incorrect.
[36] **Plaintiffs' Position**: Plaintiffs' proposal provides necessary clarity to the jury that the dispute relating to the HCAb License Agreement is with respect to Amgen, not to Teneobio. The jury should be instructed to understand that it is only Amgen, not Teneobio, that is part of the HCAb License Agreement and that there consideration of Amgen's license defense is only with respect to Amgen. Defendants' discussions regarding its contentions of retroactivity is irrelevant as that issue will not be before the jury.
**Defendants' Position**: Plaintiffs' addition is the subject of Plaintiffs' summary judgment motion. *See* D.I. 422; D.I. 434 at 12-17; D.I. 481 at 11-18; D.I. 511 at 6-11. If Amgen is licensed, then pursuant to the sublicenses executed between Amgen and Teneobio, Teneobio is licensed. The question of retroactivity is one of contract interpretation and is for the Court alone to decide and may not be submitted to the jury. *See Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359, 1364-67 (court determines contractual meaning, including retroactivity of title to patents); *Diamond Coating Techs., LLC v. Hyundai Motor Am.*, 823 F.3d 615, 618-19 (Fed. Cir. 2016) (reviewing District's Court's interpretation of agreement-at-issue de novo); *AgroFresh Inc. v. MirTech, Inc.*, 257 F. Supp. 3d 643, 656-58 (D. Del. 2017) (District Court interpreted meaning of agreement at issue).

**Error! Unknown document property name.**

### 2.122.4    INVALIDITY - GENERALLY[37]

I will now instruct you on the rules you must follow in deciding whether or not Teneobio has proven that the Asserted ~~Claims are~~Claim is invalid. As I previously told you, to prove that a claim is invalid, Teneobio must persuade you by clear and convincing evidence.

~~Like infringement, you must determine whether each asserted claim is invalid on a claim-by-claim basis. As I instructed you earlier, there are independent claims and dependent claims in a patent. A dependent claim recites all the requirements of its independent claim and adds additional requirements. This means the scope of the dependent claim should be narrower than the scope of the independent claim from which it depends.~~

---

[37] *Source:* Adapted from *U.S. v. Gilead Sciences, Inc.*, No. 1:19-cv-02103-MN, D.I. 464 at 14 (D. Del. May 8, 2023).

## ~~2.13~~2.5    THE PERSON OF ORDINARY SKILL IN THE ART[38]

The question of invalidity of a patent claim is determined from the perspective of ~~the~~a person of ordinary skill in the field of the invention ~~at the time of the invention. [**Plaintiffs' Proposal**: Thus, prior art must be evaluated from the perspective of one of ordinary skill in the field of the invention~~ as of the date of the invention~~.]~~[39]. For the ~~'877, '179, and~~ '970 ~~Patents, the date of invention is July 22, 2004. For the '420~~ Patent, the date of invention is ~~March 15, 2013.~~July 22, 2004.

You must determine the level of ordinary skill in the field of the invention. In deciding what the level of ordinary skill is, you should consider all the evidence introduced at trial, including but not limited to:

1. The levels of education and experience of the inventors and other persons actively working in the field;

2. The types of problems encountered in the field;

3. Prior art solutions to those problems;

4. Rapidity with which innovations are made;

5. The sophistication of the technology.

---

[38] *Source:* Adapted from *U.S. v. Gilead Sciences, Inc.*, No. 1:19-cv-02103-MN, D.I. 464 at 15 (D. Del. May 8, 2023); *W.R. Grace & Co.-Conn. v. Elysium Health, Inc.*, No. 1:20-cv-01098-GBW-JLH, D.I. 310 at 30-31 (D. Del. Aug. 25, 2023); *TOT Power Control, S.L. v. Apple, Inc.*, No. 1:21-cv-01302-MN, D.I. 464 at 9 (D. Del. June 30, 2025); *Purewick Corp. v. Sage Prods., LLC*, No. 1:19-cv-01508-MN, D.I. 314 at 23 (D. Del. Apr. 1, 2022).

[39] ~~**Plaintiffs' Position**: Plaintiffs' instruction is necessary for the jury to understand the context by which the prior art at issue must be evaluated and is adapted from the Court's prior jury instructions. *See, e.g., U.S. v. Gilead Sciences, Inc.*, No. 1:19-cv-02103-MN, D.I. 464 at 15 (D. Del. May 8, 2023); *TOT Power Control, S.L. v. Apple, Inc.*, No. 1:21-cv-01302-MN, D.I. 464 at 9 (D. Del. June 30, 2025); *Purewick Corp. v. Sage Prods., LLC*, No. 1:19-cv-01508-MN, D.I. 314 at 23 (D. Del. Apr. 1, 2022); *TrackTime, LLC v. Amazon.com Servs. LLC*, No. 1:18-cv-01518-MN, D.I. 306 at 11 (D. Del. Sept. 19, 2023).~~

~~**Defendants' Position**: Plaintiffs' instruction is redundant and repetitive of the immediately preceding sentence.~~

36**Error! Unknown document property name.**

### 2.142.6    PRIOR ART – GENERALLY[40]

For someone to be entitled to a patent, the claimed invention must actually be new and not obvious over what came before.  What came before is referred to as the prior art. Prior art is considered in determining whether the Asserted ~~Claims are~~Claim is invalid as ~~anticipated or~~ obvious. ~~"Anticipated" is a legal term used to mean that it is not new.~~ Prior art may include items, such as products or systems, that were publicly known or that were used or offered for sale, or documents such as publications or patents, known as "prior art references," that disclosed the claimed invention or elements of the claimed invention.

Here, the prior art ~~references~~reference at issue ~~are~~is:

- ~~WO 2002/085944 ("Grosveld '944")~~

- WO 2004/049794 ("Bruggemann '794")

- ~~WO 2008/035216 ("Grosveld '216")~~

- ~~U.S. Patent No. 8,883,150 ("Craig '150")~~

- ~~U.S. Patent Pub. No. 2014/0056897 ("Buelow '897")~~

- ~~Sequence and structure of VH domain from naturally occurring camel heavy chain immunoglobulins lacking light chains ("Muyldermans 1994")~~

- ~~Single domain antibodies: comparison of camel VH and camelised human VH domains ("Riechmann 1999")~~

- ~~The Immunoglobulins FactsBook ("Lefranc 2001")~~

- ~~A VHH That Neutralizes the Zinc Metalloproteinase Activity of Botulinum Neurotoxin Type A ("Thanongsaksrikul 2010")~~

---

[40] *Source:* Adapted from *TOT Power Control, S.L. v. Apple, Inc.*, No. 1:21-cv-01302-MN, D.I. 464 at 10 (D. Del. June 30, 2025).

- *Antibody engineering via genetic engineering of the mouse: XenoMouse strains are a vehicle for the facile generation of therapeutic human monoclonal antibodies* ("Green 1999")

- Harbour's alleged offer for sale and sale of the claimed invention of the '420 Patent to Amgen

- Teneobio's alleged prior invention of the claimed invention of the '420 Patent

[**Plaintiffs' Proposal**:

### ~~2.15~~2.7    PRIOR ART – CONSIDERED BY UNITED STATES PATENT OFFICE

Regardless of whether a particular prior art reference was considered by the Patent Examiner during the prosecution of the application which matured into an asserted patent, Defendants must prove by clear and convincing evidence that the challenged claim is invalid. This burden may be more difficult to meet when the accused infringer attempts to rely on prior art that was before the Patent Examiner during prosecution.][41]

---

[41] **Plaintiffs' Position**: Plaintiffs' instruction is an accurate statement of law that is directly relevant in this case where the majority of Defendants' prior art references were considered and addressed by the patent examiner. Adapted from *Siemens Indus., Inc. v. Westinghouse Air Brake Techs. Corp. d/b/a Wabtec Corp.*, No. 1:16-cv-00284-LPS-CJB, D.I. 441 at 40 (D. Del. Jan. 23, 2019); *see also, e.g., Al-Site Corp. v. VSI Intern., Inc.*, 174 F.3d 1308, 1324 (Fed. Cir. 1999) ("The presumption of validity under 35 U.S.C.A. § 282 carries with it a presumption that the Examiner did his duty and knew what claims he was allowing. Therefore, the challenger's burden is especially difficult when the prior art was before the PTO examiner during prosecution of the application."); *Impax Lab'ys, Inc. v. Aventis Pharms., Inc.*, 545 F.3d 1312, 1314 (Fed. Cir. 2008) ("When the examiner considered the asserted prior art and basis for the validity challenge during patent prosecution, that burden becomes particularly heavy"); *Shire LLC v. Amneal Pharms., LLC*, 802 F.3d 1301, 1307 (Fed. Cir. 2015); *Cadence Pharms. Inc. v. Exela PharmSci Inc.*, 780 F.3d 1364, 1375 (Fed. Cir. 2015). The jury should be instructed that there is a different level of consideration for prior art that had been previously considered by the patent examiner. Defendants' critique ignores the two cases cited after the *Microsoft* decision, both of which support Plaintiffs' position. *See Shire*, 802 F.3d at 1307 (noting that the prior art at issue "is listed on the face of the patents-in-suit and therefore the examiner is presumed to have considered it" and "Defendants therefore have the added burden of overcoming the deference that is due to a qualified government agency presumed to have properly done its job, which includes one or more examiners who are assumed to have some expertise in interpreting the references and to be familiar from their work with the level of skill in the art and whose duty it is to issue only valid patents.") (internal citations omitted); *Cadence*, 780 F.3d at 1375 (noting that "since the Examiner initially rejected the claims … for essentially the same reasons as defendants now raise, … the Patent Office is presumed to have properly done its job.") (internal citations omitted). And the jury instructions from which Plaintiffs' proposal is directly adopted from also post-date the *Microsoft* decision. *See Siemens Indus., Inc. v. Westinghouse Air Brake Techs. Corp. d/b/a Wabtec Corp.*, No. 1:16-cv-00284-LPS-CJB, D.I. 441 at 40 (D. Del. Jan. 23, 2019).

**Defendants' Position**: Plaintiffs' instruction is misleading at best without important additional context. Plaintiffs' principal quotations in support of their position pre-date the Supreme Court's decision in *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91 (2012), which clarified that the standard

of proof for obviousness is always clear and convincing evidence. The Federal Circuit has been clear: "[T]here is no heightened or added burden that applies to invalidity defenses that are based upon references that were before the Patent Office. The burden is always the same, clear and convincing evidence." *Sciele Pharma Inc. v. Lupin Ltd.*, 684 F.3d 1253, 1260 (Fed. Cir. 2012). The decisions in *Shire* and *Cadence* are not to the contrary; the presumption that the Patent Office has properly done its job is part of what forms the presumption of validity. *See Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1319 (Fed. Cir. 2019) (holding the presumption of validity "reflects the fact that the Patent and Trademark Office has already examined whether the patent satisfies 'the perquisites for issuance of a patent'") (quoting *Microsoft*, 564 U.S. at 95–96). Plaintiffs' instruction is also notable for differing from the *AIPLA Model Patent Jury Instructions,* § 5.1 (Aug. 18, 2025) in just the final sentence. The *AIPLA* model states: "This burden of proof on Defendants never changes regardless of whether the Patent Examiner considered the reference." Due to the risk of juror confusion, this instruction should not be included at all. But if the Court permits Plaintiffs' instruction to be included, then Defendants respectfully request either the additional language from *Sciele Pharma* be included, or the original language from the *AIPLA* be used, to avoid any risk that the jury think Defendants have a higher burden of proof than clear and convincing evidence when relying on art previously before the Patent Office.

## 2.16  INVALIDITY – ANTICIPATION – GENERALLY[42]

An invention must be new relative to the prior art to be entitled to patent protection under the U.S. patent laws. If an invention is not new, it is said to be anticipated.

To anticipate an Asserted Claim, each element in the claim must be presented in a single item of prior art or in a prior invention by another and arranged or combined in the same way as recited in the claim. In this case, Teneobio contends that the Asserted Claims of the '420 Patent are invalid as anticipated by: (1) prior sale of the patented invention; and (2) prior invention by another. Harbour denies that the Asserted Claims of the '420 Patent are invalid.

I will now describe the different types of anticipation at issue in this case.

---

[42] *Source:* Adapted from *U.S. v. Gilead Sciences, Inc.*, No. 1:19-cv-02103-MN, D.I. 464 at 19 (D. Del. May 8, 2023).

## 2.17 INVALIDITY – ANTICIPATION – ON SALE BAR[43]

There are two types of anticipation at issue in this case.

The first type of invalidity by anticipation is based on the invention being on sale. A patent claim is invalid if the claimed invention was on sale more than one year before its effective filing date. We refer to one year before the effective filing date as the "critical date." Teneobio contends that the '420 Patent is invalid because its claimed invention was on sale more than one year before March 15, 2013. Whether a claimed invention was on sale must be determined on a claim-by-claim basis.

To show an Asserted Claim of the '420 Patent is invalid for being on sale, which means it was offered for sale or sold, Teneobio must prove by clear and convincing evidence that, before March 15, 2012, an embodiment of the claimed invention was both (1) the subject of a commercial offer for sale or sold, and (2) ready for patenting.

A commercial offer for sale was made if another party could make a binding contract by simply accepting the offer. An invention was subject to an offer for sale if the claimed invention was embodied in an actual product and that product was commercially sold or offered for sale, even if it was done confidentially. It is not required that a sale was made. It is not required that a sale or offer was public.

The invention must have been ready for patenting at the time of the sale or offer for sale. An invention is ready for patenting when there is reason to believe it would work for its intended purpose. An invention is ready for patenting either when it is reduced to practice or when the

---

[43] *Source:* Adapted from *TrackTime, LLC v. Amazon.com Servs. LLC*, No. 1:18-cv-01518-MN, D.I. 306 at 16 (D. Del. Sept. 19, 2023); *Continuous Composites, Inc. v. Markforged, Inc.*, No. 1:21-cv-00998-MN, D.I. 309 at 17-18 (D. Del. Apr. 11, 2024); *W.R. Grace & Co.-Conn. v. Elysium Health, Inc.*, No. 1:20-cv-01098-GBW-JLH, D.I. 310 at 32-33 (D. Del. Aug. 25, 2023); *International Business Machines Corporation, v. Zynga Inc.*, No. 1:22-cv-590-GBW, Trial Tr. at 1289:20-1292:12 (D. Del. Sept. 13, 2024).

inventor has prepared drawings or other descriptions of the invention that were sufficiently specific to enable a person of ordinary skill in the field to practice the invention. An invention is reduced to practice when it has been (1) constructed or performed within the scope of the patent claims, and (2) determined that it works for its intended purpose

[**Plaintiffs' Proposal:** Pre-critical date sales or offers for sale made primarily for experimentation, rather than commercial exploitation do not trigger the on-sale bar. The law recognizes that the inventor must be given the opportunity to develop the invention through experimentation. Certain activities are experimental if they are a legitimate effort to test claimed features of the invention or to determine if the invention will work for its intended purpose. So long as the primary purpose is experimentation, it does not matter that the public use the invention or that the inventor incidentally derived profit from it. Only experimentation by or under the control of the inventor of the patent or the assignee qualifies for this exception. Experimentation by a third party for its own purposes does not. The experimentation must relate to the features of the claimed invention and must be for the purpose of technological improvement, not commercial exploitation. If any commercial exploitation does occur, it must be merely incidental to the primary purpose of experimentation. A test done primarily for marketing, and only incidentally for technological improvement, it is not an experimental use.

If you find that Defendants have shown by clear and convincing evidence that there was a prior sale, then the burden is on Harbour to come forward with evidence showing that the purpose of the prior sale was experimental. If the evidence of the experimental use produced by Harbour is strong enough that you find that Defendants have not met its burden of establishing a prior sale

by clear and convincing evidence, you may find that Harbour did not place the invention on sale.][44]

---

[44] **Plaintiffs' Position**: Plaintiffs' instruction is adapted from *International Business Machines Corporation, v. Zynga Inc.*, No. 1:22-cv-590-GBW, Trial Tr. at 1289:20-1292:12 (D. Del. Sept. 13, 2024) and provides the jury with a necessary understanding on the bounds of the on-sale bar. In particular, Plaintiffs' instruction explains to the jury that a prior sale of a patented method for the purpose of experimental use does not trigger the on-sale bar. Here, Harbour is contending that any alleged sale or offer for sale by Harbour to Amgen of the inventions claimed in the '420 patent was for experimentation only.

**Defendants' Position:** An instruction on experimental use is unnecessary, as Plaintiffs cannot make out a case for experimental use. Further, Plaintiffs' proposal presupposes that all sales subject to the on-sale bar were for experimental use. Defendants are amenable to deferring this potential dispute until the charge conference if testimony or evidence is presented during trial regarding experimental use of the on-sale bar.

44**Error! Unknown document property name.**

## 2.18  INVALIDITY – ANTICIPATION – PRIOR INVENTION BY ANOTHER[45]

The second type of invalidity by anticipation is prior invention by another.  If the invention defined in a patent claim was invented by someone else before it was invented by the patent owner and the prior inventor did not abandon, suppress or conceal his or her invention, then the invention is "anticipated" by the prior invention.  The alleged prior invention must include each and every element of the claimed invention; if there is an element missing from the alleged prior invention, then the prior invention cannot invalidate the claimed invention by anticipation.

Teneobio contends that claims 2 and 3 of the '420 Patent are invalid because the invention defined in those claims was invented by [**Plaintiffs' Proposal**: Teneobio][46] [**Defendants' Proposal**: Dr. Roland Buelow and/or Dr. Wim van Schooten] before the March 15, 2013 effective filing date of the '420 Patent.  Teneobio must prove separately for each claim that [**Plaintiffs' Proposal**: they] [**Defendants' Position**: Dr. Buelow and/or Dr. van Schooten] were the prior inventors of the claimed invention. For Teneobio to prove that [**Plaintiffs' Proposal**: they] [**Defendants' Proposal**: Dr. Buelow and/or Dr. van Schooten] are prior inventors, Teneobio must establish either (1) Teneobio reduced the invention to practice before March 15, 2013, or (2) Teneobio conceived of the claimed invention before March 15, 2013 and exercised diligence in

---

[45] *Source:* Adapted from *TrackTime, LLC v. Amazon.com Servs. LLC*, No. 1:18-cv-01518-MN, D.I. 306 at 16 (D. Del. Sept. 19, 2023); *Continuous Composites, Inc. v. Markforged, Inc.*, No. 1:21-cv-00998-MN, D.I. 309 at 17-18 (D. Del. Apr. 11, 2024); *W.R. Grace & Co.-Conn. v. Elysium Health, Inc.*, No. 1:20-cv-01098-GBW-JLH, D.I. 310 at 32-33 (D. Del. Aug. 25, 2023); *International Business Machines Corporation, v. Zynga Inc.*, No. 1:22-cv-590-GBW, Trial Tr. at 1289:20-1292:12 (D. Del. Sept. 13, 2024).

[46] **Plaintiffs' Position**: Harbour's proposed language is consistent with the prior art that Defendants' technical witness alleged as being prior invention to the '420 Patent, i.e., Teneobio Work, and with the description of this prior art in Section 2.14.

**Defendants' Position**:  Although referred to as the "Teneobio Work" for convenience, Defendants' instruction appropriately and consistently identifies who the inventors are who were alleged to have anticipated the '420 Patent.

reducing it to practice. Conception is the formation in the mind of the inventor of a definite and permanent idea of the complete and operative invention, as it is thereafter to be applied in practice.

To establish diligence between conception and reduction to practice, Teneobio must show that [**Plaintiffs' Proposal**: they] [**Defendants' Proposal**: Dr. Buelow and/or Dr. van Schooten] exercised reasonably continuous diligence throughout the critical period, which is from the time just before Harbour's effective filing date until the time that [**Plaintiffs' Proposal**: they] [**Defendants' Proposal**: Dr. Buelow and/or Dr. van Schooten] reduced the invention to practice. Periods of inactivity within the critical period do not automatically destroy a claim of reasonable diligence. Interruptions necessitated by the everyday problems and obligations of the inventor or others working with him or her do not prevent a finding of reasonable diligence.

The oral testimony of the alleged prior inventor is not by itself enough to prove that he or she conceived of the claimed invention and was diligent in reducing it to practice. An inventor's testimony concerning conception, diligence and reduction to practice of a prior invention must be corroborated by independent evidence. Evidence of diligence includes development efforts and work of non-inventors. [**Defendants' Proposal**: Evidence of conception and reduction to practice may be non-public, such as laboratory notebooks.[47] Conception and reduction to practice does not have to exist in a single document and may be evidenced by multiple documents.[48]][49]

---

[47] *See E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.*, 849 F.2d 1430, 1436–37 (Fed. Cir. 1988).

[48] *See Tyco Healthcare Grp. LP v. Ethicon Endo-Surgery, Inc.*, 774 F.3d 968, 975–76 (Fed. Cir. 2014).

[49] **Plaintiffs' Position**: Defendants' proposal is redundant and unnecessary. The prior sentences already explain that the inventor's testimony must be corroborated by independent evidence and there is thus no need to additionally describe some aspects of such evidence. Defendants have not identified any jury instruction that includes their proposed language.
**Defendants' Position**: Defendants' proposal ensures that the jury does not mistakenly believe that the evidence must have been publicly disclosed or contained in a single document given that

If you find that Teneobio proved by clear and convincing evidence that [**Plaintiffs' Proposal**: they] [**Defendants' Proposal**: Dr. Buelow and/or Dr. van Schooten] were the first to conceive of the inventions claimed in claims 2 and 3 of the '420 Patent and exercised reasonable diligence in reducing those to practice, you must then decide whether [**Plaintiffs' Proposal**: Teneobio] [**Defendants' Proposal**: Dr. Buelow and/or Dr. van Schooten] abandoned, suppressed or concealed their invention. [**Defendants' Proposal**: Harbour has the obligation to come forward with evidence that Dr. Buelow and/or Dr. van Schooten abandoned, suppressed, or concealed their invention.][50]

Abandonment, suppression, or concealment may be shown by proof of the prior inventor's active efforts to do so or may be inferred based upon the prior inventor's unreasonable delay in [**Defendants' Proposal**: filing a patent application or][51] making the invention publicly known.

the instructions further discuss the concept of whether the prior invention was abandoned, suppressed, or concealed.

[50] **Plaintiffs' Position:** Defendants' proposal is vague and risks jury confusion. In particular, by stating that Harbour has an "obligation" to come forward with such evidence, a jury may improperly believe that Harbour must bring forth such evidence and failure to do so would mean that Defendants prevail on their allegations, regardless of the evidence in the case. Furthermore, Defendants did not identify any jury instructions that include their proposed language.

**Defendants' Position**: Defendants' proposal is an accurate statement of law. Plaintiffs "bear a burden of producing evidence indicating that the prior inventor may have suppressed or concealed the invention once the challenger . . . has established prior invention by clear and convincing evidence." *Apotex USA, Inc. v. Merck & Co., Inc.*, 254 F.3d 1031, 1037 (Fed. Cir. 2001); *see also id.* at 1038 (holding that "the burden of production shifts to the patentee" although the ultimate burden of persuasion remains with the challenger). It is only "[o]nce the patentee has satisfied its burden of production [that] the party alleging invalidity under § 102(g) must rebut any alleged suppression or concealment with clear and convincing evidence to the contrary." *Id.* Defendants' proposal ensures the jury understands Harbour's burden of production.

[51] **Plaintiffs' Position**: Defendants' proposal is redundant as the subsequent paragraph explains that Teneobio can prove they did not abandon, suppress, or conceal by filing a patent application. **Defendants' Position**: Defendants' proposal is an accurate statement of law that is not redundant, and ensures that the jury does not mistakenly believe a public disclosure other than the filing of a patent application is required, especially as a patent application is generally not public for 18 months after it is filed. *See* 35 U.S.C. § 122(b).

Generally, a prior invention was not abandoned, suppressed, or concealed if the invention was [**Defendants' Proposal**: the subject of a patent application, or was][52] made public, sold, or offered for sale, or otherwise used for a commercial purpose. A period of delay does not constitute abandonment, suppression, or concealment [**Plaintiffs' Proposal**: provided the prior inventor was engaged in reasonable efforts to bring the prior invention to market during this period][53] [**Defendants' Proposal**: unless it was unreasonable or the prior inventor intended to keep the invention from the public]. A prior inventor may choose one of several paths to publicly disclose her invention. Two ways of proving an invention has been disclosed to the public are (1) commercializing a product, and (2) filing a patent application.

In this case, Teneobio can meet their burden to prove that they did not abandon, suppress, or conceal their invention by proving they commercialized a product and/or by proving they filed a patent application. Teneobio can meet their burden by proving either of these ways of publicly disclosing their invention.[54] [**Defendants' Proposal**: As with conception and reduction to practice, evidence that the prior inventor did not abandon, suppress, or conceal the invention may

---

[52] **Plaintiffs' Position**: Defendants' proposal is redundant as the subsequent paragraph explains that Teneobio can prove they did not abandon, suppress, or conceal by filing a patent application. **Defendants' Position**: As explained in n.49, *supra*, Defendants' position is not redundant.

[53] **Plaintiffs' Position**: Plaintiffs' proposal comes directly from jury instructions in this District. *See BioMériux, S.A. v. Hologic, Inc.*, C.A. No. 18-21-LPS, D.I. 428 at 31–32 (D. Del. Feb. 25, 2020); *see also AIPLA Model Patent Jury Instructions*, § 6.6 (Aug. 18, 2025). Defendants' proposal is inconsistent with the *BioMériux* jury instructions and the *AIPLA Model Patent Jury Instructions*.

**Defendants' Position**: Defendant's proposal aligns with the case law that abandonment, suppression, or concealment only results from delay that is unreasonable or intentional concealment. *See Apotex USA, Inc. v. Merck & Co., Inc.*, 254 F.3d 1031, 1038 (Fed. Cir. 2001) (identifying the "two types of suppression or concealment" as "a situation in which an inventor actively suppresses or conceals his invention from the public" and "a legal inference of suppression or concealment based upon an unreasonable delay in filing a patent application").

[54] Adapted from *Continuous Composites, Inc. v. Markforged, Inc.*, C.A. No. 21-998-MN, D.I. 309 at 15–16 (Apr. 11, 2024); *AIPLA Model Patent Jury Instructions*, § 6.6 (Aug. 18, 2025); *BioMériux, S.A. v. Hologic, Inc.*, C.A. No. 18-21-LPS, D.I. 428 at 31–32 (D. Del. Feb. 25, 2020).

be demonstrated by multiple documents as opposed to one single document.[55]][56]

---

[55] *See Apotex USA, Inc. v. Merck & Co., Inc.*, 254 F.3d 1031, 1039–40 (Fed. Cir. 2001).

[56] **Plaintiffs' Position**: Defendants' proposal is unnecessary. The preceding sentences already instruct the jury how Teneobio can meet its burden to show that they did not abandon, suppress, or conceal the invention. Furthermore, Defendants have not identified any jury instruction that includes their proposed language.

**Defendants' Position**: Defendants' proposal ensures that the jury does not mistakenly believe that the evidence must have been contained in a single document.

## 2.192.8    INVALIDITY – OBVIOUSNESS[57]

Even if an invention was not identically disclosed or described in a single prior art reference before it was made by an inventor, to be patentable, the invention must also not have been obvious to a person of ordinary skill in the field of technology of the patent before the effective filing date of the patent. Obviousness must be determined on a claim-by-claim basis.

In this case, Teneobio contends that the asserted claimsAsserted Claim of the '877, '179 and '970 arePatent is invalid as obvious based on the combinations of: (1) Brüggemann '794, Muyldermans (1994), and knowledge of persons skilled in the art; (2) Brüggemann '794 and knowledge of persons skilled in the art; (3) Grosveld '944, Brüggemann '794, and knowledge of persons skilled in the art; and (4) Grosveld '944, Brüggemann '794, Muyldermans (1994), and knowledge of persons skilled in the art..

Teneobio contends that the asserted claims of the '420 Patent are invalid as obvious based on the combinations of: (1) Craig '150 ; (2) Craig '150, Riechmann (1999), and LeFranc (2001); (3) Craig '150, Riechmann (1999), and Muyldermans (1994); (4) Craig '150, Riechmann (1999), and Thanonsakrikul (2010); (5) Craig '150 and Grosveld '216; (6) Grosveld '216; (7) Buelow '897, Riechmann (1999), and knowledge of persons skilled in the art; and (8) Buelow '897, Riechmann (1999), and Green (1999).

Teneobio bears the burden of establishing obviousness by clear and convincing evidence. A claimed invention is invalid as "obvious" if it would have been obvious to the person of ordinary skill in the field at the time of invention. The issue is not whether the claimed invention would

---

[57] *Source:* Adapted from *TOT Power Control, S.L. v. Apple, Inc.*, No. 1:21-cv-01302-MN, D.I. 464 at 11-13; (D. Del. June 30, 2025); *U.S. v. Gilead Sciences, Inc.*, No. 1:19-cv-02103-MN, D.I. 464 at 23-25 (D. Del. May 8, 2023); *International Business Machines Corporation, v. Zynga Inc.*, No. 1:22-cv-590-GBW, Trial Tr. at 1292:13-1295:19 (D. Del. Sept. 13, 2024); *Aqua Connect, Inc. v. TeamViewer US, Inc.*, C.A. No. 18-1572-MN, D.I. 267 at 14 (D. Del. Aug. 11, 2022).

have been obvious to you as a layperson or to me as the judge, or to a genius in the relevant field, but whether it would have been obvious to one of ordinary skill in the art at the time the invention was made.

Obviousness can only be found if you find that a reason existed at the time of the invention to combine or modify the elements of the prior art to arrive at the claimed invention, and there would have been a reasonable expectation of success for doing so.

In determining whether ~~an~~the Asserted Claim is obvious, ~~consider each claim separately and~~ consider the level of ordinary skill in the field of the invention that someone would have had at the time of the invention, the scope and content of the prior art, any differences between the prior art and the Asserted Claim and, if present, so-called objective evidence or secondary considerations, which I will describe shortly. You must determine what is the level of ordinary skill according to the instruction I gave you earlier.

[**Defendants' Proposal:** In addition to printed references and publications, the prior art may also include established prior public knowledge and prior public uses. ~~This is true even if that prior public knowledge or prior public use does not by itself anticipate any asserted claim.~~][58]

---

[58] **Plaintiffs' Position**: Defendants' addition is unnecessary and redundant in view of the disclosure of the prior art references at issue in this case in the beginning of this section. In previous jury instructions from this Court where the obviousness prior art references are similarly disclosed, Defendants' additional instruction is absent. *See, e.g., TOT Power Control, S.L. v. Apple, Inc.*, No. 1:21-cv-01302-MN, D.I. 464 at 11-13; (D. Del. June 30, 2025); *Continuous Composites, Inc. v. Markforged, Inc.*, C.A. No. 21-998-MN, D.I. 309 at 19 (Apr. 11, 2024); *TrustID, Inc. v. Next Caller Inc.*, No. 1:18-cv-00172-MN, D.I. 295 at 29-30 (D. Del. July 16, 2021). This makes sense. The jury instructions in the *Gilead* matter from which Defendants sources their language did not disclose the obviousness prior art references at issue in that case requiring an instruction from the Court on what to consider prior art for obviousness. *See U.S. v. Gilead Sciences, Inc.*, No. 1:19-cv-02103-MN, D.I. 464 at 22-25 (D. Del. May 8, 2023). ~~Defendants' position further reveals the redundancy of its proposal; the prior art identified earlier in this provision already includes "knowledge of persons skill in the art." Thus, there is no need to repeat this point.~~

Third, you must decide what differences, if any, existed between the claimed invention and the prior art.

In deciding obviousness, you must avoid using hindsight; that is, you should not consider what is known today or what was learned from the teachings of the Asserted ~~Patents~~Patent. As I instructed you earlier, you must put yourself in the place of the person of ordinary skill in the field at the time the invention was made. In considering whether a claimed invention is obvious, you should consider whether, at the relevant time, there was a reason that would have prompted a person having ordinary skill in the field of the invention to combine or modify the known elements in the prior art in a way the claimed invention does, taking into account such factors as (1) whether the claimed invention was merely the predictable result of using prior art elements according to their known function(s); (2) whether the claimed invention provides an obvious solution to a known problem in the relevant field; (3) whether the prior art teaches or suggests the desirability of combining elements claimed in the invention; (4) whether the prior art teaches away from combining elements in the claimed invention; (5) whether it would have been obvious to try the combinations of elements, such as when there is a design incentive or market pressure to solve a problem and there are a finite number of identified, predictable solutions. In addition to determining if a skilled artisan would have been motivated to combine the prior art, you must find that the prior art provided a skilled artisan with a reasonable expectation of success in combining the prior art elements to arrive at the claim.

---

**Defendants' Position:** Plaintiffs do not dispute the accuracy of the instruction provided by Defendants; they appear to only contend it is not needed because an earlier instruction identifies the list of potential prior art. Even though the earlier instruction identifies prior art that will be discussed at trial, the jury remains free to further consider information regarding the knowledge of a person of ordinary skill in the art at the relevant time. Defendants' proposal is adapted from *U.S. v. Gilead Sciences, Inc.*, No. 1:19-cv-02103-MN, D.I. 464 at 22 (D. Del. May 8, 2023).

52**Error! Unknown document property name.**

In determining whether the claimed invention was obvious, consider each claim separately, but understand that if a dependent claim is obvious, then the claims from which it depends are necessarily obvious as well.

A claim is not proved obvious merely by demonstrating that each of the elements in a claim is known in the prior art. You must consider the invention as a whole. Most, if not all, inventions rely on known building blocks, and inventions are very often—almost of necessity—combinations of what is already known.

### ~~2.20~~2.9    INVALIDITY – SECONDARY CONSIDERATIONS OF NONOBVIOUSNESS[59]

In determining whether Teneobio has proven by clear and convincing evidence that ~~any~~the claimed invention is obvious, you must take into account any objective indicia (sometimes called "secondary considerations") that you find have been shown by Harbour by a preponderance of the evidence.   No consideration alone is dispositive, and you must consider the obviousness or nonobviousness of the invention as a whole.

1. Whether the claimed invention was commercially successful as a result of the merits of the claimed invention;

2. Whether others had tried and failed to make the claimed invention;

3. Whether others copied the claimed invention;

4. Whether the claimed invention satisfied a long-felt need;

5. Whether others in the field praised the claimed invention;

6. Whether persons having ordinary skill in the art of the invention expressed surprise or disbelief regarding the claimed invention;

7. Whether the claimed invention achieved unexpected superior results compared to the closest prior art;

8. Whether others sought or obtained rights to the patent from the patent holder; and

9. Whether the inventors proceeded contrary to accepted wisdom in the field.

When evidence establishes the presence of one or more of these secondary considerations, it tends to support a finding that the inventions were not obvious.   These factors should be

---

[59] *Source:* Adapted from *TOT Power Control, S.L. v. Apple, Inc.*, No. 1:21-cv-01302-MN, D.I. 464 at 11-13; (D. Del. June 30, 2025); *U.S. v. Gilead Sciences, Inc.*, No. 1:19-cv-02103-MN, D.I. 464 at 24-25 (D. Del. May 8, 2023); *TrackTime, LLC v. Amazon.com Servs. LLC*, No. 1:18-cv-01518-MN, D.I. 306 at 20 (D. Del. Sept. 19, 2023); *VB Assets, LLC v. Amazon.com Servs. LLC*, No. 1:19-cv-01410-MN, D.I. 288 at 14 (D. Del. Nov. 8, 2023).

considered along with all the other evidence in the case in determining whether the Asserted ClaimsClaim would have been obvious. These factors are relevant only if there is a connection, or nexus, between the factor and the invention covered by the patent claim(s).

55**Error! Unknown document property name.**

### 2.212.10    INVALIDITY - LACK OF ENABLEMENT[60]

A patent must disclose sufficient information to enable or teach a person of ordinary skill in the field of the invention as of its priority date to make and use the full scope of the claimed invention without undue experimentation. This requirement is known as the "enablement" requirement. If [**Defendants' Proposal**: the full scope of][61] a patent claim is not enabled, it is invalid.  The priority date for the '877, '179, and '970 PatentsPatent is July 22, 2004.  The priority date for the '420 Patent is March 15, 2013.

In this case, Teneobio contends that each of the Asserted ClaimsClaim is invalid for lack of enablement. As the party challenging validity, Teneobio bears the burden of establishing, by clear and convincing evidence, that the specification fails to satisfy the enablement requirement.

In considering whether a patent complies with the enablement requirement, you must keep in mind that patents are written for the person of ordinary skill in the field of the invention. Thus, a patent need not expressly state information that the person of ordinary skill would be likely to know or could [**Defendants' Proposal**: easily or readily][62] obtain such as what was well known

---

[60] *Source:* Adapted from *U.S. v. Gilead Sciences, Inc.*, No. 1:19-cv-02103-MN, D.I. 464 at 26-27 (D. Del. May 8, 2023).

[61] **Plaintiffs' Position**: Defendants' addition is unnecessary, redundant, and absent from this Court's prior jury instructions.  *See, e.g., U.S. v. Gilead Sciences, Inc.*, No. 1:19-cv-02103-MN, D.I. 464 at 26 (D. Del. May 8, 2023).  In particular, the introduction to this section already discloses that the "full scope of the claimed invention" must be enabled.
**Defendants' Position**:  Defendants' addition is necessary due to the issue in dispute for several of the patent claims being the enablement of the "full scope" of the patent claim as opposed to merely enabling one example of the patent claim.  Defendants' proposal is adapted from *United States v. Gilead*, C.A. No. 19-2103-MN, D.I. 464 at 26 (D. Del. May 8, 2023); *Federal Circuit Bar Association Model Patent Jury Instructions*, § B.4.2b Enablement (May 2020).

[62] **Plaintiffs' Position**: Plaintiffs' language is a legally accurate statement regarding the standard of disclosure for enablement that comes directly from the *Gilead* jury instructions that the majority of the enablement instruction is adapted from.  *See U.S. v. Gilead Sciences, Inc.*, No. 1:19-cv-02103-MN, D.I. 464 at 26 (D. Del. May 8, 2023).  Defendants failed to identify any jury instructions from this District to support their proposed addition.

in the art and what would have already been available to the public. In addition, the patent disclosure need not enable the person of ordinary skill to make a commercially viable product or to otherwise meet the standards for success in the commercial marketplace.

Factors that you may consider in determining whether the person of ordinary skill in the field of the invention would require undue experimentation to make and use [**Defendants' Proposal**: the full scope of][63] the claimed invention include:

1. the quantity of experimentation necessary;

2. the amount of direction or guidance disclosed in the patent;

3. the presence or absence of working examples in the patent;

4. the nature of the invention;

5. the state of the prior art;

6. the relative skill of those in the art;

7. the predictability of the art; and

8. the breadth of the claims;

No one or more of these factors is alone dispositive. Rather, you must make your decision about whether or not the degree of experimentation required is undue based upon all of the evidence presented to you. You should weigh these factors and determine whether or not, in the

---

**Defendants' Position**: Defendants' proposal aligns with the case law that "a patent applicant does not need to include in the specification that which is already known to and *available* to one of ordinary skill in the art." *Koito Mfg. Co., Ltd. v. Turn-Key-Tech, LLC*, 381 F.3d 1142, 1156 (Fed. Cir. 2004) (emphasis added).

[63] **Plaintiffs' Position**: Defendants' addition is unnecessary and absent from this Court's prior jury instructions. *See, e.g., U.S. v. Gilead Sciences, Inc.*, No. 1:19-cv-02103-MN, D.I. 464 at 26 (D. Del. May 8, 2023). In particular, the introduction to this section already discloses that the "full scope of the claimed invention" must be enabled.

**Defendants' Position**: As above, Defendants' addition is necessary due to the issue in dispute for several of the patent claims being the enablement of the "full scope" of the patent claim as opposed to merely enabling one example of the patent claim.

context of this invention and the state of the art as of the patent's priority date, the person of ordinary skill would need to experiment unduly to make and use the invention from the disclosures in the patent coupled with information known in the art.

### 2.222.11    INVALIDITY – WRITTEN DESCRIPTION

[**Plaintiffs' Position**: A patent must contain a written description of the patent claims. The written-description requirement helps ensure that the patent applicant actually invented the claimed subject matter. To satisfy the written-description requirement, the patent specification must describe each and every limitation of a patent claim, in sufficient detail, although the exact words found in the claim need not be used. When determining whether the specification discloses the invention, the claim must be viewed as a whole.

In this case, Defendants contend that each of the Asserted ClaimsClaim is invalid for failure to satisfy the written-description requirement. Defendants bear the burden of establishing by clear and convincing evidence that the specification fails to satisfy the written-description requirement. The issue of written description is decided on a claim-by-claim basis, not as to the entire patent or groups of claims. If a patent claim lacks adequate written description, it is invalid.

The written description requirement is satisfied if persons of ordinary skill in the field of the invention would recognize, from reading the patent specification, that the inventor possessed the subject matter finally claimed in the patent. The written-description requirement is satisfied if the specification shows that the inventor possessed his or her invention as of the effective filing date of the claimed invention, even though the claims may have been changed or new claims added since that time.

It is unnecessary to spell out every detail of the invention in the specification, and specific examples are not required; but enough must be included in the specification to convince persons of ordinary skill in the art that the inventor possessed the full scope of the invention.  The written description does not have to be the exact words of the claim.

The written description requirement may be satisfied by for example any combination of the words, structures, figures, diagrams and formulas contained in the patent specification.

59**Error! Unknown document property name.**

However, a mere wish or plan for obtaining the claimed invention is not an adequate written description. In evaluating whether the specification has provided an adequate written description, you may consider such factors as:

1. the nature and scope of the patent claims

2. the complexity, predictability, and maturity of the technology at issue;

3. the existing knowledge in the relevant field; and

4. the scope and content of the prior art.

If you find that Defendants have proven by clear and convincing evidence that there is not adequate written description for the inventions recited in the ~~asserted claims~~Asserted Claim, then you must find that ~~those~~ claim~~(s) are~~ is invalid.][64]

[**Defendants' Proposal**: The patent law contains certain requirements for the part of the patent called the specification. The written description requirement is designed to ensure that the inventor was in possession of the full scope of the claimed invention as of the patent's effective filing date and that the patent applicant actually invented the claimed subject matter.  The written description requirement exists because patents are part of a bargain between the American people and inventors, in which inventors provide a written application with claims that fully inform the public of the new invention and what the inventor thinks is his or her own invention, and the

---

[64] **Plaintiffs' Position:** Plaintiffs' proposed instruction is adapted from jury instruction recently given by this Court.  *See VB Assets, LLC v. Amazon.com Servs. LLC*, No. 1:19-cv-01410-MN, D.I. 288 at 15-16 (D. Del. Nov. 8, 2023); *Continuous Composites, Inc. v. Markforged, Inc.*, No. 1:21-cv-00998-MN, D.I. 309 at 21 (D. Del. Apr. 11, 2024).  Defendants have not identified any reason why deviating from this Court's previous instructions on written description is necessary in this case.
**Defendants' Position:** Defendants disagree with Plaintiffs' proposed instruction.  However, should the Court adopt Plaintiffs' proposal, Defendants respectfully request the opportunity to propose modifications to Plaintiffs' proposed instruction to reflect, for example, that written description is on a claim level and not at the level of the patent and requires more than a mere wish or plan for obtaining the claimed invention(s).

inventor gets a monopoly on the claimed invention for the life of the patent.[65]

Teneobio contends that the Asserted ~~Claims are~~Claim is invalid because the ~~specifications~~specification of the Asserted ~~Patents do~~Patent does not contain an adequate written description of the invention. To succeed, Teneobio must show by clear and convincing evidence that a person having ordinary skill in the field reading the patent specification as of the effective filing date of the Asserted ~~Patents~~Patent would not have recognized that it describes the full scope of the invention as it is finally claimed in the Asserted ~~Claims~~Claim.  If a patent claim lacks adequate written description, it is invalid.

In deciding whether the patent satisfies this written description requirement, you must consider the description from the viewpoint of a person having ordinary skill in the field of technology of the patent as of the effective filing date. The specification must describe the full scope of the claimed invention, including each element thereof, either expressly or inherently. A claimed element is disclosed inherently if a person having ordinary skill in the field as of the effective filing date would have understood that the element is necessarily present in what the specification discloses. It is not sufficient if the specification discloses only enough to make the claimed invention obvious to the person having ordinary skill.

The written description does not have to be in the exact words of the claim.  The requirement may be satisfied by any combination of the words, structures, figures, diagrams, formulas, etc., contained in the patent specification. Adequate written description does not require either examples or an actual reduction to practice of the claimed invention(s). However, a mere wish or plan for obtaining the claimed invention(s) is not adequate written description. Rather, the level of

---

[65] Adapted from *W.R. Grace & Co. v. Elysium Health, Inc.*, C.A. No. 20-1098-GBW-JLH, D.I. 310 at 36 (D. Del. Aug. 25, 2023)

disclosure required depends on a variety of factors, such as the existing knowledge in the particular field, the extent and content of the prior art, the maturity of the science or technology, and other considerations appropriate to the subject matter.

In this case, the Asserted ~~Claims are~~Claim is directed to a ~~class of methods~~method using rodents that produce heavy chain-only antibodies, which can be referred to as a "genus." One way to consider whether the combination of words, structures, figures, diagrams, formulas, etc. contained in the patent specification sufficiently describes the genus is to assess whether the specification includes a representative number of species falling within the scope of the claimed invention sufficient to encompass the breadth of the genus. The specification generally need not describe every species in a genus in order to satisfy the written description requirement. However, when there is substantial variation within the claimed genus, the specification must describe a sufficient variety of species to reflect the variation within the genus.

Another way to consider whether the written description is sufficient is to assess whether the patent specification identifies structural features common to the members of the claimed genus so that a person of ordinary skill in the art can "visualize or recognize" the members of the claimed invention.  The written description requirement is satisfied in the above circumstance when there is an established correlation between structure and function described in the specification or known in the art at the time of filing.][66]

---

[66] **Defendants' Position**:  Adapted from *Federal Circuit Bar Association Model Patent Jury Instructions*, § B.4.2 Written Description Requirement (May 2020).  Plaintiffs do not dispute the accuracy of any of the instruction proposed by Defendant, but merely point to two cases where the Court used different instructions.  But other judges in this District (and in other courts) have used substantially similar versions of this instruction.  *See, e.g.*, *Nippon Shinyaku Co., Ltd. v. Sarepta Therapeutics, Inc.*, C.A. No. 21-1015-JLH, D.I. 695, at 25–26 (D. Del. Dec. 19, 2024); *CAO Lighting, Inc. v. GE Lighting, Inc.*, C.A. No. 20-681-GBW, D.I. 405 at 23–24 (D. Del. Feb. 17, 2023); *Osseo Imaging, LLC v. Planmeca USA, Inc.*, C.A. No. 17-1386-JFB, D.I. 188 at 39–40 (D.

### 2.23   CONTRACT – BREACH OF CONTRACT AND WARRANTY[67]

Defendant Amgen contends breach of contract by Harbour Antibodies HCAb BV and breach of warranty by Harbour Antibodies HCAb BV.  Harbour Antibodies HCAb BV denies Amgen's breach of contract and breach of warranty claims.

First, Amgen contends that it had a contract with the Harbour Antibodies HCAb BV, the 2013 HCAb License Agreement.  Amgen contends that the HCAb License Agreement granted Amgen "an irrevocable, perpetual, worldwide, non-exclusive license, with the right to sublicense" the Asserted Patents.  Amgen contends that the license permitted use of the Asserted Patents in any rodent.  Amgen contends that Amgen did what it was required to do under the HCAb License Agreement.   Amgen contends that the patent license it received in the 2013 HCAb License Agreement survived the termination of the HCAb License Agreement and that Harbour Antibodies HCAb BV breached the contract by filing this lawsuit against Amgen.

Harbour contends that any patent license granted to Amgen under the HCAb License Agreement did not survive the termination of the HCAb License Agreement.  Harbour disagrees that the license permitted use of the Asserted Patents [**Plaintiffs' Proposal**: with the UniRat Platform][68] [**Defendants' Proposal:** in any rodent][69].  Rather, Harbour contends that patent license

---

Del. Aug. 26, 2022).  Here, the instructions proposed by Defendants accurately reflect the law and explain it in ways that will be more helpful to the jury in understanding and applying what can be a conceptually challenging legal concept.

[67] *Source:* Adapted New York Pattern Jury Instructions—Civil, 4:1 Contracts—Elements

[68] **Plaintiffs' Position**: Plaintiffs' proposal accurately reflects the dispute in this case.  In particular, Plaintiffs contend that any license that survived termination does not extend to Amgen's use of the UniRat Platform.  Defendants' argument invites the jury to determine the scope of the license, an issue that they have previously asserted is an issue to be decided by the Court, not the jury.  *See* D.I. 434 12-17.  Defendants should not be permitted to insert its incorrect interpretation of Harbour's contentions in this instruction.

[69] **Defendants' Position**: Defendants' position has consistently been that the HCAb License Agreement unambiguously covers use of the Asserted Patents in any rodent, and therefore that is not an issue for the jury to decide.  Defendants propose this instruction only if the Court determines

granted to Amgen was limited to use of Harbour's HCAb Mice and Antibodies produced from Harbour's HCAb Mice.  Harbour contends that Harbour Antibodies HCAb BV did not breach the agreement.

Amgen has the burden of proving, by a preponderance of the evidence, that it has a contract with Harbour Antibodies HCAb BV that granted Amgen a license to use the Asserted Patents in [**Plaintiffs' Proposal**: the UniRat Platform][70] [**Defendants' Proposal**: any rodent],[71] that Amgen did what it was required to do under the HCAb License Agreement, that the license grant survived the termination of the HCAb License Agreement, that Harbour breached the HCAb License

---

there is ambiguity with respect to this scope question.  In other words, if there is no ambiguity, the jury would not be deciding whether the HCAb License Agreement "granted Amgen a license to use the Asserted Patents" that covers the accused infringing activity.  The scope question is whether the HCAb License Agreement licensed full use of the Asserted Patents (Defendants' position) or use restricted to just Harbour's HCAb Mice (Plaintiffs' position).  Plaintiffs' proposed instruction introduces an unnecessary and confusing defined term that does not appear in the HCAb License Agreement, risking confusion that, in order to find a license, the jury must find "the UniRat Platform" identified expressly in the agreement.  In identifying the licensed Patent Rights, the HCAb License Agreement describes the Asserted Patents as methods in "**rodents**" (bold in original).

[70] **Plaintiffs' Position**: Plaintiffs' proposal accurately reflects the dispute in this case.  In particular, Plaintiffs contend that any license that survived termination does not extend to Amgen's use of the UniRat Platform.  Defendants' argument invites the jury to determine the scope of the license, an issue that they have previously asserted is an issue to be decided by the Court, not the jury.  *See* D.I. 434 12-17.  Defendants should not be permitted to insert its incorrect interpretation of Harbour's contentions in this instruction.

[71] **Defendants' Position**: Defendants' position has consistently been that the HCAb License Agreement unambiguously covers use of the Asserted Patents in any rodent, and therefore that is not an issue for the jury to decide.  Defendants propose this instruction only if the Court determines there is ambiguity with respect to this scope question.  In other words, if there is no ambiguity, the jury would not be deciding whether the HCAb License Agreement "granted Amgen a license to use the Asserted Patents" that covers the accused infringing activity.  The scope question is whether the HCAb License Agreement licensed full use of the Asserted Patents (Defendants' position) or use restricted to just Harbour's HCAb Mice (Plaintiffs' position).  Plaintiffs' proposed instruction introduces an unnecessary and confusing defined term that does not appear in the HCAb License Agreement, risking confusion that, in order to find a license, the jury must find "the UniRat Platform" identified expressly in the agreement.  In identifying the licensed Patent Rights, the HCAb License Agreement describes the Asserted Patents as methods in "**rodents**" (bold in original).

Agreement, and that Amgen sustained damages because of Harbour Antibodies HCAb BV's alleged breach. If you decide that Amgen proved each of those elements, you will find for Amgen on its breach of contract allegation. On the other hand, if you find one or more of the elements has not been proven, then you will find against Amgen's breach of contract allegations.

Second, Amgen contends breach of warranty because Harbour Antibodies HCAb BV warranted in the 2013 HCAb License Agreement that the license grant to Amgen was for use of the patents in all rodents, not just the Harbour HCAb mice and that Harbour Antibodies HCAb BV had all the power and authority to enter into the HCAb License Agreement. Amgen contends Harbour Antibodies HCAb BV breached the warranty by filing suit alleging that Amgen infringed the Asserted Patents [**Plaintiffs' Proposal**: due to its use of the UniRat Platform].[72],[73]

Harbour disagrees with Amgen and contends that the HCAb License Agreement did not grant Amgen a license for use of the Asserted Patents with the UniRat Platform. Rather, Harbour contends that any patent license granted to Amgen was limited to use of Harbour's HCAb Mice

---

[72] **Plaintiffs' Position** Plaintiffs' proposal accurately reflects the dispute in this case. In particular, Plaintiffs contend that any license that survived termination does not extend to Amgen's use of the UniRat Platform. Defendants' argument invites the jury to determine the scope of the license, an issue that they have previously asserted is an issue to be decided by the Court, not the jury. *See* D.I. 434 12-17. Defendants should not be permitted to insert its incorrect interpretation of Harbour's contentions in this instruction.

[73] **Defendants' Position**: Defendants' position has consistently been that the HCAb License Agreement unambiguously covers use of the Asserted Patents in any rodent, and therefore that is not an issue for the jury to decide. Defendants propose this instruction only if the Court determines there is ambiguity with respect to this scope question. In other words, if there is no ambiguity, the jury would not be deciding whether the HCAb License Agreement "granted Amgen a license to use the Asserted Patents" that covers the accused infringing activity. The scope question is whether the HCAb License Agreement licensed full use of the Asserted Patents (Defendants' position) or use restricted to just Harbour's HCAb Mice (Plaintiffs' position). Plaintiffs' proposed instruction introduces an unnecessary and confusing defined term that does not appear in the HCAb License Agreement, risking confusion that, in order to find a license, the jury must find "the UniRat Platform" identified expressly in the agreement. In identifying the licensed Patent Rights, the HCAb License Agreement describes the Asserted Patents as methods in "**rodents**" (bold in original).

and Antibodies produced from Harbour's HCAb Mice. Harbour contends that its filing of this suit did not breach any warranties of the HCAb License Agreement.

Amgen has the burden of proving, by a preponderance of the evidence that Harbour Antibodies HCAb BV warranted to Amgen that its license grant to Amgen covered the use of [**Plaintiffs' Proposal**: the UniRat Platform][74] [**Defendants' Proposal**: the patented methods in all rodents][75] and not just Harbour HCAb Mice and Antibodies from Harbour HCAb Mice, that Harbour Antibodies HCAb BV breached that warranty by filing this lawsuit against Amgen, and that Amgen sustained damages because of Harbour Antibodies HCAb BV's alleged breach. If you decide that Amgen proved each of those elements, you will find for Amgen on its breach of warranty allegation. On the other hand, if you find one or more of the elements has not been proven, then you will find against Amgen's breach of warranty allegations.

---

[74] **Plaintiffs' Position**: Plaintiffs' proposal accurately reflects the dispute in this case. In particular, Plaintiffs contend that any license that survived termination does not extend to Amgen's use of the UniRat Platform. Defendants' argument invites the jury to determine the scope of the license, an issue that they have previously asserted is an issue to be decided by the Court, not the jury. *See* D.I. 434 12-17. Defendants should not be permitted to insert its incorrect interpretation of Harbour's contentions in this instruction.

[75] **Defendants' Position**: Defendants' position has consistently been that the HCAb License Agreement unambiguously covers use of the Asserted Patents in any rodent, and therefore that is not an issue for the jury to decide. Defendants propose this instruction only if the Court determines there is ambiguity with respect to this scope question. In other words, if there is no ambiguity, the jury would not be deciding whether the HCAb License Agreement "granted Amgen a license to use the Asserted Patents" that covers the accused infringing activity. The scope question is whether the HCAb License Agreement licensed full use of the Asserted Patents (Defendants' position) or use restricted to just Harbour's HCAb Mice (Plaintiffs' position). Plaintiffs' proposed instruction introduces an unnecessary and confusing defined term that does not appear in the HCAb License Agreement, risking confusion that, in order to find a license, the jury must find "the UniRat Platform" identified expressly in the agreement. In identifying the licensed Patent Rights, the HCAb License Agreement describes the Asserted Patents as methods in "**rodents**" (bold in original).

## 2.24  CONTRACT – TORTIOUS INTERFERENCE WITH CONTRACT

Amgen contends that Harbour Antibodies BV and HBM Holdings committed tortious interference based on Harbour's filing of its lawsuit against Amgen. To prevail on a claim of tortious interference, Defendants must prove by a preponderance of the evidence the following elements:

1. There existed a valid contract between Harbour Antibodies HCAb BV and Amgen;

2. Harbour Antibodies BV and HBM Holdings knew the contract existed;

3. Harbour Antibodies BV and/or HBM Holdings intentionally caused Harbour Antibodies HCAb BV to breach that contract without justification;

4. There was an actual breach of that contract; and

5. Amgen suffered damages from that alleged breach.

[**Plaintiffs' Proposal**: Additionally, if you find that Harbour Antibodies HCAb BV, Harbour Antibodies BV, and HBM Holdings are affiliated through common ownership, Amgen must show that the alleged tortious interference was malicious or involved conduct arising to the level of criminality or fraud.

If you find that Amgen has proven, by a preponderance of the evidence, all of the above listed elements and that Harbour Antibodies HCAb BV, Harbour Antibodies BV, and HBM Holdings are not affiliated, or if they are, that their conduct was malicious, then you will find for Amgen on its tortious interference allegation. If you find one or more of the elements has not been proven, or that they are all proven but the conduct of Harbour Antibodies HCAb BV, Harbour Antibodies BV, and HBM Holdings as affiliates is not malicious, then you will find against

67**Error! Unknown document property name.**

Amgen's tortious interference allegations.][76]

[**Defendants' Proposal**:

To prove that Harbour Antibodies BV and HBM Holdings Ltd. knew about the contract between Amgen and Harbour Antibodies HCAb BV, it is not necessary that Harbour Antibodies BV or HBM Holdings Ltd. had knowledge of the contract's specific terms.

Additionally, if you find that Harbour Antibodies BV and HBM Holdings have an economic interest in the 2013 HCAb License Agreement, then Amgen must also show that the alleged tortious interference was malicious or involved conduct arising to the level of criminality or fraud.

If you find that Amgen has proven, by a preponderance of the evidence, all of the above listed elements and that Harbour Antibodies BV and HBM Holdings do not have an economic interest in the 2013 HCAb License Agreement, or if they do, that their conduct was malicious, then you will find for Amgen on its tortious interference allegation. If you find one or more of the elements has not been proven, or that they are all proven but the conduct of Harbour Antibodies BV and HBM Holdings was not malicious, then you will find against Amgen's tortious

---

[76] **Plaintiffs' Position**: Plaintiffs' proposed instruction provides the jury with the necessary elements required by Amgen to prove its tortious interference counterclaim and is adapted from instructions actually given in federal courts. *See EIS, Inc. v. Novoluto GmbH*, No. 1:19-cv-01227-GBW, D.I. 662 at 32 (D. Del. Sept. 15, 2023); *Skyline Steel, LLC v. PilePro, LLC*, No. 1:13-cv-08171, D.I. 556 at 18-19 (S.D.N.Y. Dec. 12, 2016); *Masefield AG v. Colonial Oil Indus.*, 2006 WL 346178, at *5 (S.D.N.Y. Feb. 15, 2006); *Travel Syndication Tech., LLC v. Fuzebox, LLC*, No. 11-cv-0553-RGA-SRF, 2012 WL 1931238, at *5 (D. Del. May 25, 2012). In contrast, Defendants' proposed instruction is without citation to any previous jury instruction from this District. Furthermore, Defendants' proposal to include that Harbour Antibodies BV or HBM Holdings Ltd. need not have known of the contract's specific terms is unnecessary; the agreed-upon portion of the instruction already lists out what Harbour Antibodies BV and HBM Holdings need to know, which is that the contract existed. Providing a list of what Harbour Antibodies BV and HBM Holdings did not need to know is redundant.

interference allegations.][77]

---

[77] **Defendants' Position**: Defendants' proposed instruction accurately state the requirements of New York's economic interest defense, whereas Plaintiffs' proposed instruction does not.  Harbour must establish an economic interest in the contract, and not simply that the Harbour entities are affiliates, in order to invoke the defense. *See Masefield AG v. Colonial Oil Indus.*, 2006 WL 346178, at *5 (S.D.N.Y. Feb. 15, 2006).  Further, Defendants' proposal to include that Harbour Antibodies BV or HBM Holdings Ltd. need not have known of the contract's specific terms is an accurate reflection of the law and is included in the New York Pattern Jury Instructions. N.Y. Pattern Jury Instr. Civil 3:56.

## 2.25  CONTRACT – FRAUD IN THE INDUCEMENT[78]

Amgen contends that Harbour Antibodies HCAb BV fraudulently induced Amgen into entering the HCAb License Agreement.  Harbour Antibodies HCAb BV denies Amgen's contentions.

In order to prove fraud in the inducement, Amgen must prove by clear and convincing evidence each of the following:

(1) Harbour Antibodies HCAb BV made a statement of material fact;

(2) the statement was materially false;

(3) Harbour Antibodies HCAb BV knew that the statement was false or made the statement recklessly without regard to whether it was true or false.  A statement is made recklessly if it is made when the person making it does not have an honest and reasonable belief in its truth;

(4) Harbour Antibodies HCAb BV intended that Amgen act upon the statement in a manner reasonably contemplated;

(5) Amgen did rely on Harbour Antibodies HCAb BV's statement;

(6) Amgen's reliance on Harbour Antibodies HCAb BV's statement was justifiable; and

(7) as a direct result of Harbour Antibodies HCAb BV's statement, Amgen sustained damages.

If you find that Amgen has proven, by clear and convincing evidence, all of the above listed elements, then you will find for Amgen on its fraud in the inducement allegation.  If you find one or more of the elements has not been proven by clear and convincing evidence, then you will find against Amgen's fraud in the inducement allegations.

---

[78] **Source:** Adapted New York Pattern Jury Instructions—Civil, 3:20 Intentional Torts—Fraud and Deceit (Dec. 2025); New York Practice Series – Commercial Litigation in New York State Courts, § 141:56 Fraud and fraudulent inducement (Oct. 2025); *Roger P. Jackson, M.D. v. NuVasive, Inc.*, No. 1-21-00053-RGA, D.I. 312 at 5 (D. Del. Aug. 2, 2024).

### ~~2.26~~2.12   PATENT DAMAGES – GENERALLY[79]

I will next instruct you on patent damages. You must not take these instructions as implying that Harbour is entitled to recover damages. Instructions regarding the measure of damages are given for your guidance in ~~the event you find that Teneobio infringed one or more valid patent claims~~determining the amount of damages, if any, that Harbour is entitled to.

If you find that Teneobio is liable for infringing ~~one or more of~~ the Asserted ~~Claims~~Claim, and that the Asserted ~~Claims are~~Claim is not invalid, you must determine the amount of money damages to be awarded to Harbour. On the other hand, if you find that ~~none of~~ the Asserted ~~Claims~~Claim is not infringed, or that ~~all of~~ the Asserted ~~Claims are invalid, or that each of the Asserted Claims that you find infringed~~Claim is invalid, then you should not consider damages in your deliberations.

Harbour has the burden of proving the amount of its damages by a preponderance of the evidence. Although Harbour is not required to prove the amount of its damages with mathematical precision, it must prove the amount of damages with reasonable certainty. You may not award damages that are speculative, damages that are only possible, or damages that are based on guesswork.

The amount of damages you award must be adequate to compensate Harbour for the infringement and not less than a reasonable royalty. You may not add anything to the amount of the damages to punish an accused infringer or to set an example. You also may not add anything to the amount of damages for interest.

---

[79] ***Source:*** Adapted from *VB Assets, LLC v. Amazon.com Servs. LLC*, No. 1:19-cv-01410-MN, D.I. 288 at 18 (D. Del. Nov. 8, 2023).

### 2.272.13   PATENT DAMAGES – PROVISIONAL RIGHTS[80]DATE OF COMMENCEMENT OF DAMAGES

For the '877 patent, Harbour also seeks a type of damages called provisional damages. By statute, provisional damages are available from the date a patent application was published until the date the patent issues. In this case, for the '877 Patent, that period runs from December 26, 2013 to May 24, 2016.  The patent application publication associated with the '877 Patent is the '057 publication.

Provisional damages [**Plaintiffs' Proposal:** are awarded where the alleged infringer had actual][81] [**Defendants' Proposal**: may be awarded only if the alleged infringer had] [**Defendants' Proposal**: actual][82] notice of the published '057 Application, the invention claimed in the

---

[80] *Source:* Adapted from *W.R. Grace & Co. Conn. v. Elysium Health, Inc.*, No. 1:20-cv-01098-GBW-JLH, D.I. 310 at 53 (D. Del. Aug. 25, 2023).

[81] **Plaintiffs' Position**: Plaintiffs' language is identical to the instruction from *W.R. Grace*. Defendants have not identified any jury instructions within this District that includes their proposed language.  In addition, Plaintiffs' proposal reflects the language of the statute, which provides that provisional rights are indeed a right: "In addition to other *rights* provided by this section, a patent shall include the *right* to obtain a reasonable royalty from any person who, during the period beginning on the date of publication of the application for such patent…"  35 U.S.C. § 154(d)(1)(B). Defendants' position treats this law as a provisional option, not a provisional right. **Defendants' Position**:  Provisional rights are an exceptional circumstance that provides for damages before a United States patent has issued.  Defendants' language clarifies that these are necessary conditions to award damages for provisional rights as provided by the statute. Defendants' proposal gives meaning to all parts of the statute, including the limitations on the granting of provisional rights.  The statute is written conjunctively, requiring proof under 35 U.S.C. § 154(d)(1)(A) *and* (B).  Plaintiffs treat the latter obligation as optional and not a mandatory requirement to be shown to obtain provisional rights.

[82] **Plaintiffs' Position**: Plaintiffs' language is identical to the instruction from *W.R. Grace*. Defendants have not identified any jury instructions within this District that includes their proposed language. In addition, the prior paragraph already makes clear that Harbour is asserting provisional rights based on knowledge of the patent application publication associated with the '877 Patent, so "knowledge of related patents" and "constructive knowledge" are not issues in the first place. **Defendants' Position**:  Defendants' proposal reflects the language of the statute, which allows for provisional rights "from any person who . . . had *actual* notice of the published patent application." 35 U.S.C. § 154(d)(1)(B) (emphasis added).  The Federal Circuit has also confirmed the importance of "actual knowledge" over "constructive knowledge" as a requirement for provisional

---

published application is substantially the same as the invention claimed in the issued patent, and the alleged infringer infringed the claims after having [**Defendants' Proposal**: actual][83] notice of the published '057 Application. Harbour must prove it is entitled to provisional damages by a preponderance of the evidence.  [**Defendants' Proposal**: Provisional damages are only awarded from the date Harbour is able to prove the alleged infringer had actual notice of the published '057 publication, not necessarily from the date the '057 publication was published.][84]

If you find that Harbour has proven that Teneobio has infringed claim 2 of the '970 patent and that claim is not invalid, the date that damages would begin is no earlier than February 2, 2021.

---

rights.  *See Rosebud LMS Inc. v. Adobe Sys. Inc.*, 812 F.3d 1070, 1073 (Fed. Cir. 2016); *see also id.* at 1074.  In emphasizing "actual" knowledge, the court clarified that "[k]nowledge of related patents" is "legally insufficient to establish actual notice." *Id.* at 1075.  Defendants expect that the question of which patents and applications were known at any given time will be a key dispute at the close of evidence, and omission of this language risks allowing the jury to award provisional rights without finding actual knowledge.

[83] **Plaintiffs' Position**: Plaintiffs' language is identical to the instruction from *W.R. Grace*. Defendants have not identified any jury instructions within this District that includes their proposed language and raises issues that do not exist in this case.
**Defendants' Position**:  Defendants' instruction appropriately emphasizes the importance of actual notice in the statute.  *See* n.80, *supra*.

[84] **Plaintiffs' Position**: Plaintiffs' language is identical to the instruction from *W.R. Grace*. Defendants have not identified any jury instructions within this District that includes their proposed language. In addition, Defendants' language is unnecessary and duplicative of the earlier language in this instruction, which already provides that "the alleged infringer infringed the claims after having notice of the published ''057 Publication."
**Defendants' Position**:  Defendants' instruction appropriately emphasizes the importance of actual notice in the statute.  *See* n.80, *supra*.  Defendants' instruction also ensures that the jury appropriately only awards damages starting on the date of actual notice; Plaintiffs' proposal could permit the jury to conclude it is appropriate to award damages back to the date of publication of the '057 Publication if the jury finds actual notice at any point during the provisional rights period.

## 2.282.14    PATENT DAMAGES – REASONABLE ROYALTY[85]

Harbour is seeking damages in the form of a reasonable royalty. [Plaintiffs' Proposal: Harbour is entitled to recover no less than a reasonable royalty for each infringing use of the UniRat Platform.][86] A royalty is a payment made to a patent holder in exchange for the right to [**Plaintiffs' Proposal**: make, use, or sell][87] [**Defendants' Proposal**: use] the claimed invention. A

---

[85] ***Source:*** Adapted from *TOT Power Control, S.L. v. Apple, Inc.*, No. 1:21-cv-01302-MN, D.I. 464 at 14 (D. Del. June 30, 2025); *AIPLA Model Patent Jury Instructions* at 51 (Aug. 18, 2025); *VB Assets, LLC v. Amazon.com Servs. LLC*, No. 1:19-cv-01410-MN, D.I. 288 at 19 (D. Del. Nov. 8, 2023).

[86] **Plaintiffs' Position:** Adapted from *Express Mobile, Inc. v. GoDaddy.com, LLC*, No. 1:19-cv-01937-MFK, D.I. 458 at 30 (D. Del. Nov. 7, 2025); *Wyeth LLC v. Astrazeneca Pharms. LP*, No. 1:21-01338-MFK, D.I. 453 at 35 (D. Del. May 16, 2024); *Stodge Inc. v. Attentive Mobile Inc.*, No. 1:23-cv-00087-CJB, D.I. 789 at 29-30 (D. Del. Aug. 28, 2025); *CogniPower LLC v. Fantasia Trading, LLC*, No. 1:19-cv-02293-JLH-SRF, D.I. 475 at 28 (D. Del. Aug. 22, 2025); *Sprint Commc'ns Co. LP v. Comcast Cable Commc'ns LLC*, No. 1:12-cv-01013-RGA, D.I. 231 at 48 (D. Del. Jan. 20, 2015). This jury instruction is accurate; Harbour is indeed entitled to recover no less than a reasonable royalty for each infringing use.

**Defendants' Position**: Harbour's addition is unnecessary and duplicative of the earlier language in Instruction 2.26 that instructs: "The amount of damages you award must be adequate to compensate Harbour for the infringement and not less than a reasonable royalty." Further, Plaintiffs' phrasing presupposes that their theory of a per-expression reasonable royalty analysis will prevail. If the Court determine any additional language is necessary, Defendants respectfully request the additional language simply state: "Harbour is entitled to recover no less than a reasonable royalty."

[87] **Plaintiffs' Position**: Plaintiffs' "make, use, or sell" language is identical to the instruction from *TOT Power Control, S.L. v. Apple, Inc.*, No. 1:21-cv-01302-MN, D.I. 464 at 14 (D. Del. June 30, 2025)*, TrackTime, LLC v. Amazon.com Servs. LLC*, No. 1:18-cv-01518-MN, D.I. 306 at 27 (D. Del. Sept. 19, 2023)*, VB Assets, LLC v. Amazon.com Servs. LLC*, No. 1:19-cv-01410-MN, D.I. 288 at 19 (D. Del. Nov. 8, 2023)*, U.S. v. Gilead Sciences, Inc.*, No. 1:19-cv-02103-MN, D.I. 464 at 29 (D. Del. May 8, 2023)*, and Continuous Composites, Inc. v. Markforged, Inc.*, No. 1:21-cv-00998-MN, D.I. 309 at 26 (D. Del. Apr. 11, 2024) and is a standard jury instruction explaining what a royalty is. Moreover, Plaintiffs' infringement theories in this case are not limited to "use;" they also include, for example, Defendants' sale and/or offer a theory under § 271(g) for use of the HCAbs produced using the UniRat Platform and resulting heavy chain only antibodies. And, and Plaintiffs' infringement accusations are not limited to § 271(a); they also included,damages theories include the royalty that would be paid for example, § 271(g).the right to make and sell those HCAbs.

**Defendants' Position:** A sale or offer for sale of the UniRat Platform cannot be direct infringement of the method claims. "The law is unequivocal that the sale of equipment to perform a process is not a sale of the process within the meaning of section 271(a)." *Joy Techs., Inc. v.*

---

reasonable royalty is the royalty payment that would have resulted from ~~one or more~~a hypothetical negotiations between the patent owner and the alleged infringer just before the infringement began. It is typically, though not always, calculated by applying a percentage known as a royalty rate to a royalty base. In considering this hypothetical negotiation, you should focus on what the expectations of [**Plaintiffs' Proposal**: Harbour and Teneobio] [**Defendants' Proposal**: ~~or the expectations of~~Harbour Antibodies, Erasmus University, Dr. Roger Kingdon Craig, and Teneobio, Inc.]**[88]** would have been if they had entered into an agreement at that time, and if they had acted reasonably in their negotiations. In determining this, you must assume that all parties to the hypothetical negotiation [**Plaintiffs' Proposal**: believed][89] [**Defendants' Proposal**: assumed] the

---

*Flakt, Inc.*, 6 F.3d 770, 773 (Fed. Cir. 1993). Further, Plaintiffs have not alleged in this trial infringement based on sales or offers for sale. All previously alleged sales or offers for sale were of products not made during the enforceable term of the '970 patent.

[88] **Plaintiffs' Position**: Plaintiffs' language accurately reflects the fact that Harbour is a party to the hypothetical negotiation, as Defendants' own expert has conceded. Defendants' language appears to exclude Harbour and does not make sense when inserted into the surrounding language. In addition, Plaintiffs do not understand Defendants' position below.

**Defendants' Position**: Defendants' instruction ~~is necessary in view of Defendants' contention regarding~~makes clear who the parties contend would be the parties to the hypothetical negotiation ~~would be. Harbour has not moved for summary judgment or otherwise demonstrated that Defendants are not entitled to present this theory to the jury~~.

[89] **Plaintiffs' Position**: Plaintiffs' "you must assume that [all] parties to the hypothetical negotiation believed" language is identical to the instruction from *TOT Power Control, S.L. v. Apple, Inc.*, No. 1:21-cv-01302-MN, D.I. 464 at 14; (D. Del. June 30, 2025)*, TrackTime, LLC v. Amazon.com Servs. LLC*, No. 1:18-cv-01518-MN, D.I. 306 at 27 (D. Del. Sept. 19, 2023)*, VB Assets, LLC v. Amazon.com Servs. LLC*, No. 1:19-cv-01410-MN, D.I. 288 at 19 (D. Del. Nov. 8, 2023)*, and U.S. v. Gilead Sciences, Inc.*, No. 1:19-cv-02103-MN, D.I. 464 at 29 (D. Del. May 8, 2023), and is a standard jury instruction explaining what a royalty is. Defendants have not identified any jury instructions within this District that includes their proposed language. Furthermore, Defendants' language is vague, is duplicative, risks confusing the jury because this instruction already uses the word "assume" at the beginning of the sentence at issue and thus suggests an assumption of a further assumption. Defendants' language is legally incorrect. *Lucent* states that "[t]he hypothetical negotiation also assumes that the asserted patent claims *are* valid and infringed"—not that the hypothetical negotiation assumes that the parties to the hypothetical negotiation are in turn simply assuming validity and infringement. *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1325 (Fed. Cir. 2009) (emphasis added).

75**Error! Unknown document property name.**

patent was valid and infringed and that both sides were willing to enter into an agreement. The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred. Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty [**Defendants' Proposal**: only][90] to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation.[91] [**Defendants' Position**: Although evidence of the actual profits an alleged infringer made may be used to determine the anticipated profits at the time of the hypothetical negotiation, the royalty may not be limited or increased based on the actual profits the alleged infringer made.][92]

---

**Defendants' Position**:  Plaintiffs' proposal is legally incorrect.  At a hypothetical negotiation, the parties do not "believe" that a patent is valid and infringed because the hypothetical negotiation requires the parties to make that assumption, not that the parties must have a genuine belief in validity, infringement, and a willingness to enter into an agreement.  *See, e.g.*, *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1325 (Fed. Cir. 2009) ("The hypothetical negotiation also assumes that the asserted patent claims are valid and infringed.").

[90] **Plaintiffs' Position**: Plaintiffs' language is identical to the instruction from *TOT Power Control, S.L. v. Apple, Inc.*, No. 1:21-cv-01302-MN, D.I. 464 at 14; (D. Del. June 30, 2025).

**Defendants' Position**:  Defendants' proposed language is identical to the jury instructions cited in n.~~89~~49, *infra*.  Plaintiffs have offered no basis for excluding the word "only," and failing to include it risks misleading the jury into believing post-infringement conduct has other relevance to the hypothetical negotiation.

[91] Adapted from *Aqua Connect, Inc. v. TeamViewer US, Inc.*, C.A. No. 18-1572-MN, D.I. 267 at 18 (D. Del. Aug. 11, 2022); *TrustID, Inc. v. Next Caller Inc.*, C.A. No. 18-172-MN, D.I. 295 at 36 (D. Del. July 16, 2021); *Continuous Composites, Inc. v. Markforged, Inc.*, C.A. No. 21-998-MN, D.I. 309 at 26 (D. Del. Apr. 11, 2024); *Federal Circuit Bar Association Model Patent Jury Instructions*, § B.5.6 Reasonable Royalty – Definition (May 2020).

[92] **Plaintiffs' Position**: Defendants' language that "the royalty may not be limited or increased based on the actual profits the alleged infringer made" is legally incorrect.  To the contrary, "[a]mong the factors to be considered in determining a reasonable royalty is the infringer's anticipated profit from use of the patented invention, which can be determined from evidence of the infringer's actual profits."  *RCA Corp. v. Data Gen. Corp.*, No. CIV.A. 84-270-JJF, 1985 WL 6458, at *1 (D. Del. Oct. 28, 1985).  It also contradicts *Georgia-Pacific* factor 8—which expressly requires consideration of "[t]he established profitability of the product made under the patent; its commercial success; and its current popularity" *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970), *modified sub nom. Georgia-Pacific Corp. v. U.S. Plywood-*

In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began. No one fact is dispositive and you should consider the evidence that has been presented to you in this case. You may also consider any other factors that in your mind would have increased or decreased the royalty the alleged infringer would have been willing to pay and the patent holder would have been willing to accept, acting as normally prudent business people.[93]

---

*Champion Papers, Inc.,* 446 F.2d 295 (2d Cir. 1971). Defendants' language also is not a standard jury instruction in this District and does not appear in the instructions from *TOT Power Control, S.L. v. Apple, Inc.*, No. 1:21-cv-01302-MN, D.I. 464; (D. Del. June 30, 2025), *TrackTime, LLC v. Amazon.com Servs. LLC*, No. 1:18-cv-01518-MN, D.I. 306 (D. Del. Sept. 19, 2023), *VB Assets, LLC v. Amazon.com Servs. LLC*, No. 1:19-cv-01410-MN, D.I. 288 (D. Del. Nov. 8, 2023), *U.S. v. Gilead Sciences, Inc.*, No. 1:19-cv-02103-MN, D.I. 464 (D. Del. May 8, 2023), and *Continuous Composites, Inc. v. Markforged, Inc.*, No. 1:21-cv-00998-MN, D.I. 309 (D. Del. Apr. 11, 2024). Notably, Defendants' reliance on *ArcherDX* and *TrustID, Inc.* is misplaced. Those cases involved lost profits, so the instruction in that case appears intended to prevent lost profits from carrying over into the reasonable royalty. *ArcherDX v. Qiagen Sci., LLC*, C.A. No. 18-1019-MN, D.I. 462 at 47 (D. Del. Aug. 27, 2021), *TrustID, Inc. v. Next Caller Inc.*, C.A. No. 18-172-MN, D.I. 295 at 36 (D. Del. July 16, 2021).
**Defendants' Position**: Adapted from *ArcherDX v. Qiagen Sci., LLC*, C.A. No. 18-1019-MN, D.I. 462 at 47 (D. Del. Aug. 27, 2021). Defendants' proposal is an accurate statement of law and comes verbatim from the *ArcherDX* and *TrustID* instructions. *See ArcherDX v. Qiagen Sci., LLC*, C.A. No. 18-1019-MN, D.I. 462 at 47 (D. Del. Aug. 27, 2021); *TrustID, Inc. v. Next Caller Inc.*, C.A. No. 18-172-MN, D.I. 295 at 36 (D. Del. July 16, 2021). Contrary to Plaintiffs assertion, the fact that lost profits were also asserted in the *ArcherDX* and *TrustID* cases does not negate the importance and relevance of this language in the reasonable royalty instruction.
[93] Adapted from *TrustID, Inc. v. Next Caller Inc.*, C.A. No. 18-172-MN, D.I. 295 at 37 (D. Del. July 16, 2021).

77**Error! Unknown document property name.**

### 2.292.15   PATENT DAMAGES – REASONABLE ROYALTY – HYPOTHETICAL NEGOTIATION DATE

The hypothetical negotiation would have taken place at the time when the allegedly infringing activity first began. The ~~parties do not agree on that date. Harbour alleges the~~ hypothetical negotiation date is ~~in April 2016 if it is entitled to provisional rights. Otherwise, the hypothetical negotiation date is no earlier than May 24, 2016.[94]~~ October 2021. It is up to you to determine when the hypothetical negotiation would have occurred.

---

[94] ~~Adapted from *TOT Power Control, S.L. v. Apple Inc.*, C.A. No. 21-1302-MN, D.I. 464 at 15 (June 30, 2025).~~

### 2.302.16   PATENT DAMAGES – REASONABLE ROYALTY – FACTORS RELEVANT TO THE HYPOTHETICAL NEGOTIATION[95]

In determining the amount of a reasonable royalty, you may consider evidence of any of the following factors. This is not every possible factor, but it will give you an idea of the kinds of things to consider in setting a reasonable royalty.

1. Any royalties received by Harbour for the licensing of the Asserted PatentsPatent, to the extent those royalties prove or tend to prove an established royalty.

2. The rates paid by Teneobio to license other patents comparable to the Asserted PatentsPatent.

3. The nature and scope of the license, as exclusive or non-exclusive, or as restricted or non-restricted in terms of its territory or with respect to whom the manufactured product may be sold.

4. Harbour's established policy and marketing program to maintain its right to exclude others from using the patented invention by not licensing others to use the invention, or by granting licenses under special conditions designed to preserve that exclusivity.

5. The commercial relationship between Harbour and Teneobio, such as whether or not they are competitors in the same territory in the same line of business.

6. [**Plaintiffs' Proposal**: The effect of selling the patented method in promoting other sales of Defendants' products; the existing value of the inventions to Harbour as a generator of sales of its non-patented items; and the extent of such collateral sales.][96]

---

[95] *Source:* Adapted from *TOT Power Control, S.L. v. Apple, Inc.*, No. 1:21-cv-01302-MN, D.I. 464 at 15-16 (D. Del. June 30, 2025).

[96] **Plaintiffs' Position**: Plaintiffs' language is one of the well-known *Georgia-Pacific* factors for determining the reasonable royalty in a hypothetical negotiation analysis. *See, e.g., Georgia-Pacific Corp v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970). This language is also typically included in jury instructions in this District. *See, e.g., TOT Power*

6. The duration of the Asserted ~~Patents~~Patent and the term of the license.

7. The established profitability of any product made or used under ~~any of~~ the Asserted ~~Patents~~Patent; its commercial success; and its popularity.

8. The utility and advantages of the patented invention over the old modes or methods, if any, that had been used for achieving similar results.

9. The nature of the patented invention; the character of any commercial embodiment of it as owned and produced by or for the licensor; and the benefits to those who have used the invention.

10. The extent to which Teneobio has made use of the invention; and any evidence that shows the value of that use.

11. The portion of the profit that arises from the patented invention itself as opposed to

---

*Control, S.L. v. Apple, Inc.*, No. 1:21-cv-01302-MN, D.I. 464 at 15-16 (D. Del. June 30, 2025). And ~~both parties' damages experts address~~Plaintiffs' expert testified that he considered all of the Georgia-Pacific factors~~, including this~~. The removal of one factor from a list of 15 factors is unnecessary.

~~**Defendants' Position**: Plaintiffs' inclusion of this particular *Georgia-Pacific* factor is not relevant to the case. Any of Defendants' alleged "sales" of "the patented method" do not promote sales of any of Defendants' other products. As repeatedly noted by Defendants throughout this litigation, Defendants have no FDA-approved product generated or derived from UniRat. Consequently, there could be no "sales of Defendants' [other] products," generation of sales as a result of the sale of the patented method, or any collateral sales. Therefore, inclusion~~**Defendants' Position**: Inclusion of this *Georgia-Pacific* factor would be irrelevant to a jury and can prejudice the jury into believing Defendants' have sales of products affected by the patented method when there are none. The Court should only instruct the jury on *Georgia-Pacific* that are supported by the evidence. *See, e.g.*, *Ericsson, Inc. v. D-Link Sys.*, 773 F.3d 1201, 1231 (Fed. Cir. 2014) ("[T]he district court erred by instructing the jury on multiple *Georgia-Pacific* factors that are not relevant, or are misleading, on the record before it[.]") Moreover, both the AIPLA Model Instructions and Federal Circuit Bar Association Model Instructions expressly note that only factors relevant to the case should be listed. *See AIPLA Model Patent Jury Instructions*, § 10.2.5.3 (Aug. 18, 2025) ("List only those factors relevant in the case and properly supported by admitted evidence." (all caps removed)); *Federal Circuit Bar Association Model Patent Jury Instructions* at 67–68 (May 2020) (advising that if the *Georgia-Pacific* factors are used "the jury should be instructed only on the factors that are relevant to the evidence before the jury").

profit arising from unpatented features, such as the manufacturing process, business risks, or significant features or improvements added by the alleged infringer.

12. The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the inventions or analogous inventions.

13. The opinion testimony of qualified experts.

14. The amount that the negotiating parties would have agreed upon (at the time the alleged infringement began) if both sides had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention— would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a patentee who was willing to grant a license.

15. Any other economic factor that a normally prudent businessperson would, under similar circumstances, take into consideration in negotiating the hypothetical license.

No one factor is dispositive, and you can and should consider the evidence that has been presented to you in this case on each of the factors. You may also consider any other factors that in your mind would have increased or decreased the royalty Teneobio would have been willing to pay, and licensors would have been willing to accept, acting as normally prudent businesspeople.

[Plaintiffs' Proposal:

### 2.312.17   PATENT DAMAGES – REASONABLE ROYALTY – TIMING

Damages are not based on a hindsight evaluation of what happened, but on what Harbour and Defendants would have agreed upon at the time of the hypothetical negotiation. Nevertheless, evidence relevant to the negotiation is not necessarily limited to facts that occurred on or before the date of the hypothetical negotiation.  You may also consider information the parties would have foreseen or estimated during the hypothetical negotiation, which may under certain circumstances include evidence of usage after infringement started, license agreements entered into by the parties shortly after the date of the hypothetical negotiation, profits earned by the infringer, and non-infringing alternatives.][97].

---

[97] **Plaintiffs' Position**: This is a well-established jury instruction in this District.  *See, e.g., TOT Power Control, S.L. v. Apple, Inc.*, No. 1:21-cv-01302-MN, D.I. 464 at 17 (D. Del. June 30, 2025); *TrackTime, LLC v. Amazon.com Servs. LLC*, No. 1:18-cv-01518-MN, D.I. 306 at 30 (D. Del. Sept. 19, 2023); *U.S. v. Gilead Sciences, Inc.*, No. 1:19-cv-02103-MN, D.I. 464 at 33 (D. Del. May 8, 2023); *ArcherDX, LLC v. Qiagen Scis., LLC*, C.A. No. 18-1019, D.I. 462 at 52 (D. Del. Aug. 27, 2021); *Bioмériux, S.A. v. Hologic, Inc.*, C.A. No. 18-21 LPS, D.I. 428 at 47 (D. Del. Feb. 25, 2020); *AIPLA Model Patent Jury Instructions* at 55 (Aug. 18, 2025).  This instruction is also necessary for the jury to understand what facts it may consider in connection with the hypothetical negotiation and is not duplicative of any other jury instructions.
**Defendants' Position:** Plaintiffs' proposed instruction is unnecessary and duplicative of the other damages-related jury instructions, especially the instructions offered in Instruction 2.29 regarding the hypothetical negotiation.

### 2.322.18   PATENT DAMAGES – REASONABLE ROYALTY – COMPARABLE AGREEMENTS[98]

[**Plaintiffs' Proposal:** Comparable license agreements are one factor that may inform your decision as to the proper amount and form of a reasonable royalty award, similar to the way in which the value of a house is determined relative to comparable houses sold in the same neighborhood. [99] **[Plaintiffs' Proposal:** A party seeking to rely on a license agreement as evidence of the proper amount and form of the reasonable royalty award bears the burden of establishing that it is sufficiently comparable to the hypothetical license. A comparable license agreement must have both technological and economic comparability to the hypothetical license.][100]

[**Defendants' Proposal**: Comparable license agreements are one factor that may inform your decision as to the proper amount and form of a reasonable royalty award, similar to the way

---

[98]*Source:* Adapted from *VB Assets, LLC v. Amazon.com Servs. LLC*, No. 1:19-cv-01410-MN, D.I. 288 at 25 (D. Del. Nov. 8, 2023); *U.S. v. Gilead Sciences, Inc.*, No. 1:19-cv-02103-MN, D.I. 464 at 34 (D. Del. May 8, 2023); *TOT Power Control, S.L. v. Apple, Inc.*, No. 1:21-cv-01302-MN, D.I. 464 at 17 (D. Del. June 30, 2025); *AIPLA Model Patent Jury Instructions* at 56 (Aug. 18, 2025); *The Federal Circuit Bar Association Model Patent Jury Instructions* at 69 (May 2020); *Adasa Inc. v. Avery Dennison Corp.*, 55 F.4th 900, 915 (Fed. Cir. 2022); *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1211–12 (Fed. Cir. 2010); *10x Genomics, Inc. v. NanoString Techs., Inc.*, 690 F. Supp. 3d 449, 465 (D. Del. 2023); *Fundamental Innovation Sys. Int'l LLC v. Anker Innovations Ltd.*, No. 1:21-cv-00339-RGA, 2024 WL 2258127, at *3 (D. Del. May 17, 2024).

[99] Adapted from *Aqua Connect, Inc. v. TeamViewer US, Inc.*, C.A. No. 18-1572-MN, D.I. 267 at 21 (D. Del. Aug. 11, 2022); *TOT Power Control, S.L. v. Apple, Inc.*, C.A. No. 21- 1302-MN, D.I. 464 at 17 (D. Del. June 30, 2025); *Federal Circuit Bar Association Model Patent Jury Instructions,* § B.5.9 Damages – Comparable Agreements (May 2020).

[100] **Plaintiffs' Position:** Plaintiffs' language reflects well-established Federal Circuit law that "[t]he party proffering a license bears the burden of establishing it is sufficiently comparable" and that "[w]hen relying on allegedly comparable licenses, the proponent must account for differences in the technologies and economic circumstances of the contracting parties." *Adasa Inc. v. Avery Dennison Corp.*, 55 F.4th 900, 915 (Fed. Cir. 2022). Plaintiffs' language is not redundant of later language in this instruction.

**Defendants' Position**: Plaintiffs' proposal is redundant of later undisputed language in this same instruction. Plaintiffs offer no citation to any jury instruction in any court that that has provided this or similar language regarding burden (nor have Defendants been able to locate one on their own). As a compromise, however, Defendants would agree to having both Plaintiffs' and Defendants' proposals included with any duplicative language omitted.

in which the value of a house is determined relative to comparable houses sold in the same neighborhood.[101] [**Defendants' Proposal**: When determining a reasonable royalty, you may consider evidence concerning the amounts that have been paid for rights to similar technologies.][102]

Whether a license agreement is comparable to the hypothetical license scenario depends on many factors, such as whether they involve comparable technologies, comparable economic circumstances, comparable structure, and comparable scope. [**Defendants' Proposal**: A license agreement need not be perfectly comparable to a hypothetical license that would be negotiated between Plaintiffs and Teneobio in order for you to consider it.][103],[104] If you choose to rely upon

---

[101] Adapted from *Aqua Connect, Inc. v. TeamViewer US, Inc.*, C.A. No. 18-1572-MN, D.I. 267 at 21 (D. Del. Aug. 11, 2022); *TOT Power Control, S.L. v. Apple, Inc.*, C.A. No. 21- 1302-MN, D.I. 464 at 17 (D. Del. June 30, 2025); *Federal Circuit Bar Association Model Patent Jury Instructions*, § B.5.9 Damages—Comparable Agreements (May 2020).

[102] **Plaintiffs' Position**: Defendants' language is not typically included in jury instructions in this District. For example, this language is not included in the jury instructions from *TOT Power Control, S.L. v. Apple, Inc.*, No. 1:21-cv-01302-MN, D.I. 464 (D. Del. June 30, 2025), *VB Assets, LLC v. Amazon.com Servs. LLC*, No. 1:19-cv-01410-MN, D.I. 288 (D. Del. Nov. 8, 2023), and *U.S. v. Gilead Sciences, Inc.*, No. 1:19-cv-02103-MN, D.I. 464 (D. Del. May 8, 2023). In addition, Defendants' language is confusing because it replaces the appropriate legal concept of "comparable technologies" with the vague, non-legal concept of "similar technologies." Further, Defendants' language is duplicative of other language in this instruction, which uses the appropriate legal concept of "comparable technologies."
**Defendants' Position**: Defendants' proposal is an accurate statement of law and is adapted from *ArcherDX, LLC v. Qiagen Scis., LLC*, C.A. No. 18-1019, D.I. 462 at 54 (D. Del. Aug. 27, 2021). The question of comparability is a significant dispute between the parties and is deserving of clarification and explanation.

[103] Adapted from *ArcherDX, LLC v. Qiagen Scis., LLC*, C.A. No. 18-1019-MN, D.I. 462 at 54 (D. Del. Aug. 27, 2021); *AIPLA Model Patent Jury Instructions*, § 10.2.5.9 (Aug. 18, 2025).

[104] **Plaintiffs' Position**: Defendants' language is not typically included in jury instructions in this District and is not necessary here. For example, this language is not included in the jury instructions from *TOT Power Control, S.L. v. Apple, Inc.*, No. 1:21-cv-01302-MN, D.I. 464 (D. Del. June 30, 2025), *VB Assets, LLC v. Amazon.com Servs. LLC*, No. 1:19-cv-01410-MN, D.I. 288 (D. Del. Nov. 8, 2023), and *U.S. v. Gilead Sciences, Inc.*, No. 1:19-cv-02103-MN, D.I. 464 (D. Del. May 8, 2023).

---

84**Error! Unknown document property name.**

evidence from any license agreements when you make your reasonable royalty determination, you must account for any differences between those license agreements and the hypothetical license , in terms of the technologies and economic circumstances of the contracting parties, as well as the scope and structure of those license agreements.  If there are differences between a license agreement and the hypothetical license, you must take those into account when you make your reasonable royalty determination.[105]

The hypothetical license is deemed to be voluntary agreement.  When determining if a license agreement is comparable to the hypothetical license, you may consider whether the license agreement is between parties to a lawsuit and whether the license agreement was a settlement influenced by a desire to avoid further litigation.

---

~~**Defendants' Position**:  Defendants' proposed language is an accurate statement of law and is provided in this District either as part of a separate instruction on comparable licenses or in the factors for determining a reasonable royalty.  *See ArcherDX, LLC v. Qiagen Scis., LLC*, C.A. No. 18-1019-MN, D.I. 462 at 54 (D. Del. Aug. 27, 2021); *see also, e.g., CogniPower LLC v. Fantasia Trading LLC*, C.A. No. 19-2293-JLH, D.I. 475 at 30 (D. Del. Aug. 22, 2025); *CosmoKey Sol'ns GmbH & Co. KG v. Duo Security, Inc.*, C.A. No. 18-1477-JLH, D.I. 535 at 40 (D. Del. June 13, 2025); *Acceleration Bay LLC v. Amazon Web Servs., Inc.*, C.A. No. 22-904-RGA, D.I. 283 at 17 (D. Del. Sep. 27, 2024).~~

[105] TOT *Power Control, S.L. v. Apple, Inc.*, No. 1:21-cv-01302-MN, D.I. 464 at 17 (D. Del. June 30, 2025).

### 2.332.19   PATENT DAMAGES – REASONABLE ROYALTY – APPORTIONMENT[106]

The amount you decide to award as damages must be based on the value attributable to the patented features of the accused method and products made by the method, as distinct from unpatented features of the accused method and products made by the method or other factors such as marketing, advertising, or the parties' size or market positions. **[Defendants' Proposal**: A royalty compensating the patent holder for damages must reflect the value attributable to the infringing features of the method, and no more.[107] This is particularly true where the methods have multiple features and multiple components not covered by the patents or where the methods work in conjunction with other non-patented items.[108]**]**[109] The process of separating the value of the allegedly infringing features from the value of all other features is called apportionment.

When the accused infringing product or method has both patented and unpatented features, your award must be apportioned so that it is based only on the value of the patented features **[Defendants' Proposal**:, and no more.  The ultimate reasonable royalty award must be based on the incremental value that the patented inventions add to the end product. For that reason, you should award any damages based on a royalty rate or a lump sum that reflects the incremental

---

[106] ***Source:*** Adapted from *Acceleration Bay, LLC v. Amazon Web Servs., Inc.*, No. 1:22-cv-00904-RGA, D.I. 283 at 15 (D. Del. Sept. 27, 2024).

[107] Adapted from *Federal Circuit Bar Association Model Patent Jury Instructions*, § B.5.12 Damages – Apportionment (May 2020).

[108] Adapted from *TOT Power Control, S.L. v. Apple, Inc.*, C.A. No. 21- 1302-MN, D.I. 464 at 18 (D. Del. June 30, 2025).

[109] **Plaintiffs' Position**: Defendants' additional language is unnecessary and redundant of the first sentence above and the next paragraph, both of which addresses this very concept. This unnecessary repetition stating this concept three times in slightly different ways results in a jury instruction that lacks balance.

**Defendants' Position**:  Defendants' language is an accurate statement of law and is not redundant with the remaining instructions.  This proposal ensures that the jury does not award damages for unpatented features.

value.[110]   Any evidence unrelated to the claimed invention does not support compensation for

infringement but punishes beyond the reach of the Patent Laws.][111,112]

---

[110] Adapted from *Aqua Connect, Inc. v. TeamViewer US, Inc.*, C.A. No. 18-1572-MN, D.I. 267 at 22 (D. Del. Aug. 11, 2022); *Federal Circuit Bar Association Model Patent Jury Instructions*, § B.5.12 Damages – Apportionment (May 2020).

[111] Adapted from *TOT Power Control, S.L. v. Apple, Inc.*, C.A. No. 21- 1302-MN, D.I. 464 at 18 (D. Del. June 30, 2025).

[112] **Plaintiffs' Position**: Defendants' language is duplicative and includes language not typically included in jury instructions in this District.  This unnecessary repetition stating this concept three times in slightly different ways results in a jury instruction that lacks balance. In addition, Defendants' language—especially the last sentence—is overly argumentative and contributes to this lack of balance.

**Defendants' Position**:  Defendants' proposal is an accurate statement of law and ensures the jury remains focused on the issues pertinent to damages.

87**Error! Unknown document property name.**

**[Plaintiffs' Proposal:**

### 2.342.20   DAMAGES - DOUBTS RESOLVED AGAINST THE INFRINGER

Any doubts that you may have on the issue of damages due to ~~the Defendants'~~Teneobio's failure to keep proper records should be decided in favor of Harbour.  Any confusion or difficulties caused by ~~the Defendants'~~Teneobio's records or lack of records also should be held against ~~the Defendants~~Teneobio, not Harbour.][113]

**[Defendants' Proposal (if instruction given):** Where ~~the Defendants'~~Teneobio's recordkeeping makes the amount of damages difficult to determine, you may make a reasonable estimate of damages based on the evidence.  I am not suggesting that ~~Defendants~~Teneobio failed to keep proper records.  That would be an issue for you to decide. **[114]**]

---

[113] **Plaintiffs' Position**: This instruction, which is relevant to the parties' estimates of the number of HCAb expressions generated by Teneobio, is supported by model jury instructions and is an accurate statement of Federal Circuit case law. *See, e.g., AIPLA Model Patent Jury Instructions* at 56 (Aug. 18, 2025); *Sensonics, Inc. v. Aerosonic Corp.*, 81 F.3d 1566, 1572–73 (Fed. Cir. 1996); *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1065 (Fed. Cir. 1983). This instruction is necessary for resolving a live issue in this case—Defendants ~~challenge an estimate by Plaintiffs' expert, which Plaintiffs' expert made because Defendants did not have actual data for all of its HCAb expressions.~~ cross examined Plaintiffs' expert on whether the number of immunized animals was correct, and on redirect she confirmed the conflicting sources of information. [Day 2 Rough Tr. at 419:1-15, 422:5-14]. This instruction does not suggest that Defendants committed litigation misconduct but rather provides guidance on the issue of how to consider an estimate where the actual data does not exist. Harbour could potentially compromise with the following: "Where the Defendants' conduct or recordkeeping makes the amount of damages difficult to determine, you may make a reasonable estimate of damages based on the evidence."

**Defendants' Position**:  Plaintiff's instruction is unnecessary and unduly prejudicial to Defendants by suggesting that Defendants may have committed litigation misconduct.  Further, Plaintiffs' phrasing presupposes that their theory of a per-expression reasonable royalty analysis will prevail. If the Court is inclined to provide an instruction on this issue at all, Defendants respectfully request the Court adopt Defendants' alternative proposed language, which is a variation of Harbour's proposed compromise language from this same footnote and the jury instructions in *Google LLC v. Sonos, Inc.*, No. 20-cv-6754, D.I. 762 at 25 (N.D. Cal. May 19, 2023).

[114] Adapted from *Google LLC v. Sonos, Inc.*, No. 20-cv-6754, D.I. 762 at 25 (N.D. Cal. May 19, 2023).

## 2.352.21   PATENT DAMAGES – REASONABLE ROYALTY –
### AVAILABILITY OF NON-INFRINGING ALTERNATIVES[115]

[**Defendants' Proposal:** In determining a reasonable royalty, you may also consider evidence concerning the availability and cost of acceptable non-infringing substitutes to the patented invention.  An acceptable substitute must be a method that is licensed under the patent or that does not infringe the patent.][116]

---

[115] **Plaintiffs' Position**: Plaintiffs submit that this instruction is unnecessary and confusing in view of Defendants' admission that they are not offering a damages opinion based on non-infringing alternatives.  Indeed, Defendants' proposed constructionproposal tells the jury to consider the "cost" of non-infringing alternatives, but no expert in this case has provided an opinion about what the cost would be for any alternative.

**Defendants' Position**:  Plaintiffs are incorrect that Defendants are not offering a damages opinion based onhave and will provide evidence of non-infringing alternatives.  Defendants' experts Dr. Christopher Vellturo (damages) and Dr. Hidde Ploegh (technical) both opined on non-infringing alternatives available to Defendants, including using Teneobio's OmniFlic and such issues may be presented to the jury such that this instruction is necessary.performing UniRat work in Amgen's center for research discovery in Canada.

[116] **Plaintiffs' Position**: Defendants' language is an incomplete statement of law, omits key concepts relevant to the issue of non-infringing alternatives, and is confusing an misleading in the context of this case. For example, Defendants' language does not provide guidance as to (1) what a non-infringing alternative is, (2) what the criteria is for a non-infringing alternative to be available, (3) what the criteria is for a non-infringing alternative to be acceptable, (4) which party bears the burden of proof on the issue of non-infringing alternatives. In addition, Defendants' language fails to acknowledge that a non-infringing alternative is not a cap on damages.  Plaintiffs' language accurately sets forth the law.  Plaintiffs' first paragraph is supported by the jury instruction from *Aqua Connect, Inc. v. TeamViewer US, Inc.*, C.A. No. 18-1572-MN, D.I. 267 at 26 (D. Del. Aug. 11, 2022) and Plaintiffs' second paragraph is supported by the jury instruction in *W.R. Grace & Co.-Conn. v. Elysium Health, Inc.*, No. 1:20-cv-01098-GBW-JLH, D.I. 310 at 50 (D. Del. Aug. 25, 2023).

**Defendants' Position**:  Adapted from *ArcherDX, LLC v. Qiagen Scis., LLC*, C.A. No. 18-1019-MN, D.I. 462 at 53 (D. Del. Aug. 27, 2021); *PureWick Corp. v. Sage Prods., LLC*, C.A. No. 19-1508-MN, D.I. 314 at 50 (D. Del. Apr. 1, 2022); *AIPLA Model Patent Jury Instructions* at 56 (Aug. 18, 2025).

**Defendants' Position**:  Plaintiffs' additions are unnecessary and unsupported by other instructions given regarding non-infringing alternatives.  Defendants' proposal is the same two sentences that appear in the *ArcherDX*, *PureWick*, and the AIPLA model instructions.  Moreover, Plaintiffs' second paragraph is not present in many of the Court's instructions on non-infringing alternatives. *See, e.g.*, *PureWick Corp. v. Sage Prods., LLC*, C.A. No. 19-1508-MN, D.I. 314 at 50 (D. Del. Apr. 1, 2022); *Complete Genomics, Inc. v. Illumina, Inc.*, C.A. No. 19-970-MN, D.I. 404 at 38 (D. Del. May 5, 2022); *VB Assets, LLC v. Amazon.com Servs. LLC*, C.A. No. 19-1410-MN, D.I. 288

**[Plaintiffs' Proposal (in the event the Court is inclined to issue an instruction):** A non-infringing alternative is a way of providing the same or comparable functionality or achieving the same or a comparable result that does not require using the asserted ~~claims~~claim in the United States. That is, the substitute must not contain all of the features required by the asserted claims of the patent. To be an acceptable non-infringing alternative, it must also have been "available" throughout the period of the infringement. An alternative may be considered "available" as a potential substitute even if it was not actually on sale during the infringement period. You may consider whether a party had the necessary equipment, know-how, and experience to implement the alternative and the time and cost to the party of implementing the alternative. An acceptable alternative must also be licensed under the patent or not infringe the patent.[117] ~~Defendants bear~~Teneobio bears the burden of proving the existence of acceptable non-infringing alternatives.

Reasonable royalty damages are not capped at the cost of implementing the cheapest, available, acceptable non-infringing alternative.  To the contrary, an infringer may be liable for damages, including reasonable royalty damages, that exceed the amount that the infringer could have paid to avoid infringement. [118]][119]

---

at 26 (D. Del. Nov. 8, 2023); *Aqua Connect, Inc. v. TeamViewer US, LLC*, C.A. No. 18-1572-MN, D.I. 267 at 23 (D. Del. Aug. 11, 2022). Plaintiffs' proposal also contains portions that are misleading, confusing, or inapplicable to this case, including discussion of products rather than methods.

[117] Adapted from *ArcherDX, LLC v. Qiagen Scis., LLC*, C.A. No. 18-1019-MN, D.I. 462 at 53 (D. Del. Aug. 27, 2021); *AIPLA Model Patent Jury Instructions* at 56 (Aug. 18, 2025).

[118] *W.R. Grace & Co.-Conn. v. Elysium Health, Inc.*, No. 1:20-cv-01098-GBW-JLH, D.I. 310 at 50 (D. Del. Aug. 25, 2023).

[119] **Plaintiffs' Position:** Because Defendants are not offering a damages opinion based on noninfringing alternatives, Plaintiffs disagree that this instruction is relevant to the issues the jury will be deciding.  To the extent the Court allows an instruction on noninfringing alternatives, Defendants' proposed instruction is deficient and requires Plaintiffs' proposed additions. *See Aqua Connect, Inc. v. TeamViewer US, Inc.*, C.A. No. 18-1572-MN, D.I. 267 at 23 (D. Del. Aug. 11, 2022)

91**Error! Unknown document property name.**

## 2.36  PATENT DAMAGES – DATE OF COMMENCEMENT OF DAMAGES

In determining the amount of damages, you must determine when the damages began.

If you find that Harbour has proven that it is entitled to provisional damages based on the '057 publication, the date that damages would begin is no earlier than December 26, 2013.

If you find that Harbour has proven that Teneobio has infringed a valid claim of the '877 patent but is not entitled to provisional damages, the date that damages would begin is no earlier than May 24, 2016.

If you find that Harbour has proven that Teneobio has infringed a valid claim of the '179 patent but not the '877 patent, the date that damages would begin is no earlier than May 31, 2016.

If you find that Harbour has proven that Teneobio has infringed a valid claim of the '970 patent but not the '877 or '179 patents, the date that damages would begin is no earlier than February 2, 2021.

If you find that Harbour has proven that Teneobio has infringed a valid claim of the '420 patent but not the '877, '179, or '970 patents, the date that damages would begin is no earlier than May 4, 2021.[120]

---

[120] *Purewick Corp. v. Sage Prods., LLC*, C.A. No. 19-1508-MN, D.I. 314 at 51 (D. Del. Apr. 1, 2022).

## 3    DELIBERATIONS AND VERDICT

### 3.1    INTRODUCTION[121]

Now let me finish up by explaining some things about your deliberations in the jury room, and your possible verdicts.

Once you start deliberating, do not talk to the jury officer, or to me, or to anyone else except each other about the case. If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the jury officer. The officer will give them to me, and I will respond as soon as I can. I may have to talk to the lawyers about what you have asked, so it may take me some time to get back to you. Any questions or messages normally should be sent to me through your foreperson, who by custom of this Court is Juror No. 1.

One more thing about messages. Do not ever write down or tell anyone how you stand on your votes. For example, do not write down or tell anyone that you are split 4-4, or 6-2, or whatever your vote happens to be. That should stay secret until you are finished.

---

[121] *Source:* Adapted from *TOT Power Control, S.L. v. Apple, Inc.*, No. 1:21-cv-01302-MN, D.I. 464 at 18-19 (D. Del. June 30, 2025).

### 3.2  ~~UNIANIMOUS~~UNANIMOUS VERDICT[122]

Your verdict must represent the considered judgment of each juror. In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict. Your verdict must be unanimous for ~~each~~the Asserted Claim.

It is your duty, as jurors, to consult with one another and to deliberate with a view towards reaching an agreement, if you can do so consistent with your individual judgment. Each of you must decide the case for yourself but do so only after an impartial consideration of the evidence with your fellow jurors. You should not be influenced to vote a certain way, however, by the single fact that a majority of the jurors, or any of them, will vote in a certain way. In other words, you should not surrender your honest convictions concerning the effect or weight of the evidence for the mere purpose of returning a verdict, or solely because of the opinions of the other jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the purpose of returning a verdict. Remember at all times that you are not partisans. You are judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

A form of verdict has been prepared for you. I will review that document with you in a minute.

You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date and sign the form. You will then return to the courtroom and my deputy will read aloud your verdict.

Once again, I want to remind you that nothing about my instructions and nothing about the

---

[122] *Source:* Adapted from *TOT Power Control, S.L. v. Apple, Inc.*, No. 1:21-cv-01302-MN, D.I. 464 at 19-20 (D. Del. June 30, 2025).

form of verdict is intended to suggest or convey in any way or manner what I think your verdict should be. It is your sole and exclusive duty and responsibility to determine the verdict.

### 3.3   DUTY TO DELIBERATE[123]

Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room. In fact, it is your duty to talk with each other about the evidence, and to make every reasonable effort you can to reach unanimous agreement. Talk with each other, listen carefully and respectfully to each other's views, and keep an open mind as you listen to what your fellow jurors have to say. Try your best to work out your differences. Do not hesitate to change your mind if you are convinced that other jurors are right and that your original position was wrong.

But do not ever change your mind just because other jurors see things differently, or just to get the case over with. In the end, your vote must be exactly that—your own vote. It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say. So, you should all feel free to speak your minds.

Listen carefully to what the other jurors have to say, and then decide for yourself.

---

[123] *Source:* Adapted from *TOT Power Control, S.L. v. Apple, Inc.*, No. 1:21-cv-01302-MN, D.I. 464 at 20 (D. Del. June 30, 2025).

### 3.4    SOCIAL MEDIA[124]

During your deliberations, you must not communicate with or provide any information to about this case to anyone by any means. You may not use any electronic device or media, such as the telephone, a cell phone, smart phone, iPhone, BlackBerry or computer, the internet, any internet service, any text or instant messaging service, any internet chat room, blog, or website such as Facebook, Instagram, TikTok, WeChat, WhatsApp, Snapchat, MySpace, LinkedIn, YouTube, or X (formerly Twitter), to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict. In other words, you cannot talk to anyone on the phone, correspond with anyone, or electronically communicate with anyone about this case. You can only discuss the case in the jury room with your fellow jurors during deliberations.

---

[124] *Source:* Adapted from *TOT Power Control, S.L. v. Apple, Inc.*, No. 1:21-cv-01302-MN, D.I. 464 at 21 (D. Del. June 30, 2025).

### 3.5    COURT HAS NO OPINION[125]

Let me finish up by repeating something that I said to you earlier. Nothing that I have said or done during this trial was meant to influence your decision in any way. You must decide the case yourselves based on the evidence presented.

---

[125] **Source:** Adapted from *TOT Power Control, S.L. v. Apple, Inc.*, No. 1:21-cv-01302-MN, D.I. 464 at 21 (D. Del. June 30, 2025).